**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| IN RE: U.S. OFFICE OF PERSONNEL MANAGEMENT DATA SECURITY BREACH LITIGATION<br><br>This Document Relates To:<br><br>ALL CASES | Misc. Action No. 15-1394 (ABJ)<br>MDL Docket No. 2664 |

**JOINT STATEMENT OF COUNSEL AND PARTIES**
**PURSUANT TO INITIAL PRACTICE AND PROCEDURE ORDER**

Gary E. Mason
**WHITFIELD BRYSON & MASON LLP**
1625 Massachusetts Ave., NW, Suite 605
Washington, DC 20036
Telephone: (202) 429-2290
Facsimile:  (202) 429-2294
Email: gmason@wbmllp.com

Daniel Reilly
**REILLY POZNER LLP**
1900 Sixteenth Street, Suite 1700
Denver, CO 80202
Telephone: (303) 893-6100
Facsimile:  (303) 893-6110
Email: dreilly@rplaw.com

*Interim Liaison Counsel for Plaintiffs*
*and the Proposed Class*

PAUL G. FREEBORNE
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Tel: (202) 353-0543
Fax: (202) 616-8470
email:paul.freeborne@usdoj.gov

*Liaison Counsel for the Government*
*Defendants*

F. Joseph Warin
Jason J. Mendro
**GIBSON, DUNN CRUTCHER LLP**
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone:  (202) 955-8500
Facsimile:  (202) 530-9626
Email:  FWarin@gibsondunn.com
Email:  JMendro@gibsondunn.com

*Counsel to Defendant KeyPoint Government*
*Solutions, Inc.*

Pursuant to the Court's Initial Practice and Procedure Order of November 10, 2015 [Dkt. No. 19] (the "Order"), Plaintiffs' counsel met in person and by telephone in Washington, D.C. on November 17, 2015, and Interim Liaison Counsel for Plaintiffs and Interim Liaison Counsel for Defendants, along with other interested Plaintiffs' counsel, met and conferred telephonically on December 1, 2015 to discuss the matters set forth in the Order.  Based on the foregoing, the parties hereby submit a joint report, proposing a case management plan and setting forth the parties' respective positions on the issues identified in the Order.

Unless otherwise indicated, "Defendants" as used herein refers to all defendants collectively; "Government Defendants" refers to the Office of Personnel Management, the Department of Homeland Security, and the employees or former employees of these agencies sued in their official capacities.  "KeyPoint" refers to "KeyPoint Government Solutions, Inc." Unless otherwise indicated, "Plaintiffs" refers to all of the plaintiffs collectively, and "NTEU" refers to plaintiffs in *NTEU v. Cobert*, No. 15-cv-1808 (D.D.C.).

## I.    REPORT ON ISSUES FOR PLAINTIFFS' COUNSEL

As set forth below, Plaintiffs' counsel have reached a consensus on most of the issues identified in Paragraph 20 of the Order.

### A.    Consolidated Amended Complaint

Plaintiffs agree that, for all cases except *National Treasury Employees Union v. Archuleta*  (D.D.C. No. 15-1808) ("*NTEU*") – a non-class action case which raises a single, unique constitutional claim – a Consolidated Amended Complaint ("CAC") is appropriate and propose filing the CAC thirty (30) days after the appointment of Interim Lead Class Counsel. The CAC will both serve as the operative pleading and supersede the existing individual complaints for purposes of these pretrial proceedings.  To facilitate efficiency, Plaintiffs propose

that *NTEU*, though remaining separate from the CAC, follow the same briefing schedule as the CAC for Rule 12 motions and take part in coordinated discovery with the CAC Plaintiffs.[1]

### B.    *Lexecon* Waiver

Plaintiffs, in all cases but *NTEU*, consent to waive their rights under 28 U.S.C. § 1407 and *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998), to remand individual actions to their originating jurisdictions at the conclusion of pretrial proceedings.

### C.    Selection of Interim Class Counsel

Counsel for Plaintiffs have not been able to reach agreement regarding who should serve as Interim Lead Class Counsel and on Plaintiffs' Steering Committee.  Plaintiffs propose that the Court establish a briefing schedule for Interim Lead Class Counsel to be appointed pursuant to Fed. R. Civ. P. 23(g)(3), whereby all motions for the appointment of Interim Lead Class Counsel and the steering committee must be filed by December 22, 2015, and responses thereto are due on January 5, 2016.

### D.    Selection of Liaison Counsel

Pursuant to Paragraph 23 of the Order, Plaintiffs have conferred concerning the designation of liaison counsel for the Initial Scheduling and Case Management Conference.  Five attorneys have expressed interest in serving as liaison counsel for purposes of the initial conference: Gary E. Mason, Daniel Reilly, David Thompson, Jonathon Schraub and Hassan Zaveareii. Counsel will continue to confer to limit the number of attorneys seeking designation as liaison counsel for purposes of the Initial Scheduling and Case Management Conference.

---

[1]  Plaintiffs are also open to including *NTEU* in the CAC for administrative purposes, while still recognizing the existing complaint as the operative substantive pleading, should the Court determine that increased efficiency warrants such an approach.  NTEU would still proceed with separate Rule 12 briefing on the same schedule as the class action matters.

2

Counsel agree that appointment of Interim Liaison Class Counsel following the initial conference should be decided by motion in the same manner as selection of Interim Lead Class Counsel.

## II.   REPORT ON PARAGRAPH 21 TOPICS

Counsel for all parties have conferred regarding the topics outlined in Paragraph 21 of the Order and provide the following report.

### A.   Whether there is a realistic possibility of settling the case without judicial action

The parties do not believe that, at this juncture, there is a realistic possibility of settlement without judicial action.

### B.   Whether the case could benefit from the Court's alternative dispute resolution (ADR) procedures or some other form of ADR, such as referral to a magistrate judge for purposes of facilitating settlement discussions, and if so, when

Plaintiffs' Position – Plaintiffs believe that the case could benefit from referral to a magistrate judge (or mediator) to supervise settlement negotiations.  Plaintiffs believe that the optimal time to begin negotiations under the supervision of a mediator is after the filing of the CAC and after Plaintiffs have been able to conduct initial discovery.

Defendants' Position – At this time, Defendants do not believe that the case would benefit from ADR or a similar procedure.

### C.   Appropriate procedures and timetables for dealing with Rule 23 proceedings, including whether those proceedings should await the outcome of dispositive motions; whether discovery will be necessary; whether the Court should designate interim counsel to act on behalf of the putative class; and, in the event a class is certified, procedures for considering appointment of class counsel

The parties agree that proceedings under Rule 23 should await resolution of Defendants' anticipated motions to dismiss.

Plaintiffs' Position – Plaintiffs submit that proceedings under FED. R. CIV. P. 23 should await resolution of any dispositive motions under FED. R. CIV. P. 12, as well as discovery to ensure that the Rule 23 analysis can proceed on a sufficiently developed record.  Plaintiffs anticipate that development of the record will be needed to define the scope of the class, evaluate typicality and adequacy, and determine whether the relief sought is susceptible to class treatment under Rule 23(b).  Plaintiffs further believe that in the event a class is certified the Court should designate Class Counsel pursuant to Rule 23(g) giving appropriate consideration to whether Interim Class Counsel should continue to serve as Class Counsel.

Defendants' Position – The Court should establish procedures for managing Rule 23 proceedings, if such proceedings are necessary at all, after resolution of Defendants' anticipated motions to dismiss.  Unless and until the Court and parties know which, if any, claims will survive the motions to dismiss, it would be premature to establish class certification procedures. Accordingly, if the motion to dismiss is denied in whole or in part, Defendants suggest that the parties promptly meet and confer at that time over an appropriate class certification schedule. For similar reasons, the Court should stay discovery pending resolution of the motions to dismiss, as is discussed more fully at Paragraph II.G. below.

**D.      The possibility of filing a consolidated amended complaint and the timing thereof**

Plaintiffs' Position – As set forth in I.A., above, Plaintiffs intend to file the CAC and propose that it be due thirty (30) days after the appointment of Interim Lead Class Counsel.

NTEU proposes—and Plaintiffs agree—that NTEU should be excluded from the CAC because it raises a single constitutional claim that is not encompassed by any of the other cases, does not seek to certify a class, and does not seek damages.  NTEU believes no material efficiency would be gained for purposes of Rule 12 motions practice through *NTEU*'s inclusion

4

in the CAC: NTEU has already agreed to proceed with Rule 12 briefing on the same schedule as the class action matters, and the Court will still have to render pretrial rulings as to *NTEU*'s unique constitutional claim, regardless of whether it is included in the CAC. The same is true for any future discovery by Plaintiffs: though *NTEU* would exist separate from the CAC, it would take part in coordinated discovery with the CAC Plaintiffs and conduct discovery on the same schedule, thus minimizing any burden on Defendants or the Court. Finally, *NTEU*'s exclusion from the CAC raises no potential for inconsistent pretrial rulings. The constitutional claim is, as noted above, unique to the *NTEU* complaint and will need to be addressed separately. And the legal question of whether NTEU, in its representative capacity, can properly bring its constitutional claim on behalf of its membership is a wholly different question from the class certification questions applicable to the other lawsuits.

Defendants' Position – Defendants agree that the filing of a CAC is appropriate. However, Defendants disagree that the *NTEU* complaint should proceed separately from the CAC, as Plaintiffs propose in Paragraph I.A., because of the multitude of overlapping factual and legal issues between the *NTEU* complaint and the remaining pleadings. As a threshold matter, the Plaintiff in *Cox v. OPM*, No. 15-cv-1930 (D.D.C.), has also brought a constitutional claim. The claim is therefore not "unique" to NTEU. Nor is NTEU the only Plaintiff with claims outside of the Privacy Act and the APA. Additionally, each complaint, including the *NTEU* complaint, makes nearly identical factual allegations. Efficient resolution of Rule 12 motions regarding these allegations, as well as any potential discovery, warrant a single consolidated pleading. The fact that NTEU brings a constitutional claim, as opposed to statutory or common law claims, does not require separate treatment. Several overlapping legal issues among NTEU and the remaining plaintiffs will persist regardless of the nature of the legal claims, including

5

whether any plaintiff can allege facts plausibly showing that he or she has sustained an actual, concrete, and imminent injury necessary to establish Article III standing.  Similarly, NTEU's status as a three-Plaintiff suit, rather than a class action, is irrelevant.  Though not styled as a claim on behalf of a class, NTEU has brought its suit on behalf of 150,000 members of NTEU, and there is a likelihood that these members will also be part of the putative classes articulated in the other complaints.  A single consolidated complaint addressing the claims of these individuals will create consistency and conserve resources.

Defendants propose that the Consolidated Amended Complaint be filed 30 days after the appointment of Interim Lead Counsel pursuant to paragraph (L) below.

### E. Whether the defendants intend to file motions under Fed. Rule of Civil Procedure 12(b)(1), Rule 12(b)(6), or any other provision, and if so, a schedule for briefing of those motions

Defendants intend to file dispositive motions under Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 9(g).  The parties propose that Defendants file any motions to dismiss within 60 days of service of the Consolidated Amended Complaint, that Plaintiffs file their opposition within 45 days of service of Defendants' motions, and that Defendants file their reply within 30 days of service of Plaintiffs' opposition.

### F. Whether some or all of the factual or legal issues can be agreed upon or narrowed

After the Court decides the Rule 12 motions, the parties contemplate that there will be opportunities to narrow certain factual and legal issues, and will work together to identify issues that can be appropriately narrowed to aid in the speedy resolution of this litigation.

G.      **Whether planning for discovery should await the resolution of anticipated dispositive motions, taking into consideration the fact that these actions involve both claims for which discovery would be authorized and claims that may only be decided based upon an administrative record**

Plaintiffs' Position – Plaintiffs contend that discovery should proceed as provided in the Federal Rules prior to the resolution of dispositive motions.  Courts have declined similar motions to stay discovery in several recent data breach and data theft cases.  *See, e.g., In Re Anthem, Inc. Data Breach Litig.*, NO. 15-MD-02617-LHK (N.D. Cal. Sept. 11, 2015) (Koh, J.) ("The Court will not stay discovery against any defendants"); *In Re: Target Corp. Customer Data Security Breach Litig.*, No. 0:14-md-02522 (D. Minn. Jul. 24, 2014) ("a stay would "only serve to delay the expeditious prosecution of this action"); *Galaria v. Nationwide Mut. Ins. Co.*, 2013 WL 6578730, at *3 (S.D. Ohio Dec. 16, 2013) (denying discovery stay in class action under Fair Credit Reporting Act arising from data breach); Minutes of Scheduling Conference, *Corona v. Sony Pictures Entertainment, Inc.*, No. 2:14-cv-09600-RGK-E, (C.D. Cal. May 4, 2015), ECF No. 70.  Defendants have not met their burden of showing why this case should proceed differently.

Defendants claim discovery should be stayed because they will raise winning arguments on their motions to dismiss.  Having spent tens of millions to offer "identity theft" protections to individuals affected by the data breach, however, Defendants can hardly claim class members are not at risk of imminent harm.  *Remijas v. Neiman Marcus Group, LLC*, 794 F. 3d 688 (7th Cir. 2015); *In re Adobe Systems Privacy Litigation*, 66 F.Supp.3d 1197, 1213 (N.D. Cal. 2014). Defendants' sovereign immunity defense is also doomed to fail since the Privacy Act contains an express waiver of the federal government's immunity from suit,   *F.A.A. v. Cooper*, 132 S. Ct. 1441, 1453 (2012) ("the Privacy Act waives the Federal Government's sovereign immunity," if only for actual damages), the APA contains such a waiver applicable to claims for injunctive

7

relief. *Dep't of Army v. Blue Fox, Inc.,* 525 U.S. 255, 260–61 (1999) (§ 702 "waives the Government's immunity from actions seeking relief 'other than money damages'"). Sovereign immunity is of no use to KeyPoint, a government contractor, alleged to have negligently performed its duties. *In re Fort Totten Metrorail Cases Arising Out of Events of June 22, 2009*, 895 F. Supp. 2d 48, 75 (D.D.C. 2012).

Defendants claim discovery could lead to assertions of various types of privilege. That there may be assertions of privilege or other objections asserted in response to discovery is no reason to stop *any* discovery from occurring. *Compare General Steel Domestic Sales v. Steelwise, LLC*, 2008 WL 5101341, at *6 (D. Colo. Nov. 26, 2008) ("it is foreseeable that the … Defendants will consider some of the requests overreaching, overbroad and protected by certain privileges…a complete  stay of discovery is not the only, or even the proper, vehicle to" limit discovery, as "Defendants should respond to each interrogatory or request for documents in the manner they deem legally prudent and proper, the parties should confer over any disagreements and attempt amicable resolution and, if necessary, then file appropriate motions with the court"); *Galaria*, 2013 WL 6578730, at *3 (court "can best understand the relevance of discovery requests and the burden of responding to them when confronted with specific discovery requests/ deposition requests").

Plaintiffs believe the parties should hold the discovery conference contemplated under Rule 26(f) following appointment of Interim Lead Class Counsel.  Plaintiffs intend to deliver their proposed Rule 34 requests in advance of the discovery conference under the provisions of Rule 26(d)(2), as amended effective December 1, 2015, with the requests being deemed served as of the date of the initial discovery conference.  Should the parties be unable to resolve any objections to discovery, the Court will be able to evaluate the parties' positions in relation to

specific requests, rather than in the abstract.  Any limitations on discovery should be considered after the parties have completed the collaborative process contemplated under Rule 26.

Defendants' Position – Discovery should await the resolution of Defendants' anticipated motions to dismiss.  Courts have broad discretion to control the nature and timing of discovery, and "should not hesitate to exercise appropriate control over the discovery process."  *Herbert v. Lando*, 441 U.S. 153, 177 (1979).  Consistent with this discretion, courts routinely stay discovery pending dispositive motions.  *See Sai v. Dep't of Homeland Sec.*, 99 F. Supp. 3d 50, 58 (D.D.C. 2015) (staying discovery pending resolution of the defendants' motion to dismiss and plaintiff's motion for partial summary judgment); *Chavous v. District of Columbia Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001) ("A stay of discovery pending the determination of a dispositive motion 'is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources.'"); *Anderson v. United States Attorney's Office*, No. 91-cv-2262, 1992 WL 159186, at *1 (D.D.C. June 19, 1992) ("[I]t is well settled that discovery is generally considered inappropriate while a motion that would be thoroughly dispositive of the claims in the Complaint is pending."); *see also Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987) ("A trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined.").  A stay of discovery pending dispositive motions is also consistent with the approach taken in cases arising out of alleged data thefts or breaches.  *See In re Science Applications Int'l Corp. Backup Tape Litig.*, MDL No. 2360, No. 12-mc-374, Order dated Aug. 30, 2012, Dkt. No. 14 ¶ C (D.D.C.); *In re Hannaford Bros. Co. Customer Data Security Breach Litig.*, MDL No. 2:08-md-1954, Order dated July 25, 2008, Dkt. No. 22 ¶ C.8 (D. Me.); *In re*

*Dep't of Veterans Affairs (VA) DataTheft Litig.*, No. 1:06-mc-506, Scheduling Order dated Feb. 28, 2007, Dkt. No. 12 (D.D.C.).

A stay of discovery is particularly appropriate where, as here, Defendants' motions to dismiss will challenge, among other things, Plaintiffs' standing to proceed, as well as the waiver of sovereign immunity, challenges that go to the very existence of Article III jurisdiction or raise other dispositive issues such as immunity.  "Without jurisdiction the court cannot proceed at all." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  Discovery should thus be deferred pending the resolution of threshold jurisdictional issues.  *See United Presbyterian Church v. Reagan*, 738 F.2d 1375, 1382-83 (D.C. Cir. 1984) (upholding stay of discovery during pendency of motion to dismiss on jurisdictional grounds); *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 600 (D. Nev. 2011) (noting that a stay may be appropriate where the motion to dismiss raises preliminary issues of jurisdiction, venue or immunity); *DSM Desotech Inc. v. 3D Sys. Corp.*, 08-cv-1531, 2008 WL 4812440 *2 (N.D. Ill. Oct. 28, 2008) ("Stays are often deemed appropriate where the motion to dismiss can resolve a threshold issue such as jurisdiction, standing, or qualified immunity[.]").  Furthermore, it is well settled that immunity defenses must be fully addressed at the earliest possible stages of litigation because immunity is not merely "a defense to liability," but also an "entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  The fact that the claims implicate immunity doctrines provides further, strong support for a stay of discovery.

Moreover, a stay of discovery pending resolution of the threshold dispositive motions is appropriate because their resolution will likely define the scope of discovery, if any.  *See Sai*, 99 F. Supp. 3d at 58.  Permitting discovery pending motions to dismiss may result in unnecessary burden, expense and confusion for the Court and parties.  The Supreme Court has reiterated, on

multiple occasions, that plaintiffs should not be permitted to embark on expensive and burdensome discovery based on unsubstantiated allegations that are vulnerable to attack on a Rule 12 motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).[2]

Finally, should this case proceed beyond the issues presented in the motions to dismiss, it is possible that issues directly relevant to the merits of the claims may involve law enforcement protected information and classified national security information subject to the state secrets privilege. This Court should exercise its inherent powers to structure and order proceedings to resolve threshold issues before addressing privilege issues or embarking on discovery that could lead to privilege assertions. *See United States v. Reynolds*, 345 U.S. 1, 7-8, 10-11 (1953); *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 390 (2004) (encouraging courts "whenever possible" to "explore other avenues" to avoid forcing an assertion of Executive privilege that may not be necessary); *Freeman v. Seligson*, 405 F.2d 1326, 1338 (D.C. Cir. 1968) (matters of privilege can "appropriately be deferred"). A stay of discovery is thus appropriate for this additional reason.

### H.      If discovery is to be postponed, what steps should be taken to ensure that the relevant documents are gathered and preserved

Plaintiffs' Position – The named Plaintiffs in the respective actions have been advised of their document preservation obligations. Plaintiffs have offered to participate in a cooperative discussion of preservation scope with Defendants.

Defendants' Position – Defendants have already taken extensive measures to preserve documents and other materials, including electronically stored information, that would

---

[2]  KeyPoint submits that immunity is available to government contractors, despite Plaintiffs' assertion to the contrary. *See, e.g.*, *Filarsky v. Delia*, 132 S. Ct. 1657, 1667-68 (2012); *Yearsley v. W.A. Ross Constr. Co*., 309 U.S. 18, 20-21 (1940).

potentially be relevant to this litigation.  Specifically, Defendants have issued litigation holds to the appropriate custodians and have worked closely with IT professionals so that systems containing potentially relevant information are properly handled for the purposes of preservation. Going forward, Defendants will issue litigation hold updates to the appropriate personnel to remind them of their ongoing preservation obligations, and will continue to monitor their systems and take steps necessary to retain potentially relevant information.

**I.      If discovery is to begin, whether the parties should stipulate to dispense with the initial disclosures required by Rule 26(a)(1) of the Federal Rules of Civil Procedure, and, if not, what, if any, changes should be made in the scope, form, or timing of those disclosures**

Plaintiffs' Position – Plaintiffs contend that initial disclosures are appropriate and should be provided in accordance with FED. R. CIV. P. 26(a)(1)(C) and Local Civil Rule 26.2(a). Specifically, initial disclosures should be provided by each party within fourteen (14) days of the filing of the CAC.

Defendants' Position – Defendants contend that initial disclosures should be dispensed with in this litigation.  As explained in Paragraph (G) above, all discovery should be stayed pending the disposition of threshold motions pursuant to Rule 12.  *See Sai*, 99 F. Supp. 3d at 54 (staying discovery, including initial disclosures, pending defendant's motion to dismiss).

**J.      The anticipated extent of discovery, how long discovery should take, what limits should be placed on discovery, and whether a protective order is appropriate**

The parties intend to abide by the maximum number of written discovery requests and depositions as set forth in the Federal Rules of Civil Procedure, with the understanding that any party may seek leave of Court for additional discovery requests or depositions, as set forth in the applicable Rule.

The parties further agree that a protective order is appropriate.  *See* Manual for Complex Litigation (4th) § 11.432.

Plaintiffs' Position – Plaintiffs submit that twelve (12) months are necessary to complete fact discovery in this matter.

Defendants' Position – It is premature to propose a specific discovery schedule at this time, as Defendants propose staying discovery pending the resolution of the motions to dismiss. Once the parties know what claims remain in the case, if any, they can better propose scheduling and limitations tailored to the claim(s) at issue.  Defendants anticipate that, if any discovery is necessary, a protective order should be entered before any discovery commences and the parties will prepare and circulate drafts of such order in advance of that date.

**K.      Whether the case is likely to involve expert testimony, and whether the requirement of exchange of expert witness reports and information pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure should be modified**

The parties agree that if the case proceeds to discovery it is likely to involve expert testimony.  The parties also agree that, subject to developments in the case, the provisions of Rule 26 relating to the expert witness reports and information should apply.

**L.      A proposed schedule and procedure for the selection of Lead counsel**

Plaintiffs' Position – As described in I.C. & I.D., above, Plaintiffs propose a briefing schedule, whereby all motions under Fed. R. Civ. P. 23(g)(3) for the appointment of Interim Lead Class Counsel and the steering committee must be filed by December 22, 2015, with responses thereto due on January 5, 2016.

Defendants' Position –Defendants agree with Plaintiffs' proposal, but further propose that: (1) given the upcoming holidays, Defendants' responses to all motions for the appointment of interim lead counsel be due on January 12, 2016; and (2) the interim liaison counsel for

13

Defendants identified in Paragraph 18 of the Court's Order be appointed lead counsel for this litigation.  Defendants do not believe that this matter is appropriate for class certification and, thus, submit that interim lead counsel need not be designated as "interim class counsel."

      **M.**       **Suggestions for additional items to be included on the agenda for the Initial Scheduling and Case Management Conference**

      **N.**       **Any other matters that the parties believe may be appropriate for inclusion in the Scheduling Order and Case Management Plan**

The parties do not have any suggested additional items to include in the agenda for the Initial Scheduling and Case Management Conference or the Scheduling Order and Case Management Plan.

      **O.**       **Arrangements for any telephone-conferencing service that will be needed for the Initial Scheduling and Case Management Conference**

Counsel for the parties will attend the Initial Scheduling and Case Management Conference in person.

**III.   PROPOSED SCHEDULING ORDER**

Plaintiffs propose the following schedule for major case events:

| Date | Event / Filing or Service Due Date |
|---|---|
| 12/22/15 | Motions for Interim Lead Class Counsel and Steering Committee Appointments |
| 1/5/16 | Responses to Motions for Interim Lead Class Counsel and Steering Committee Appointments |
| 30 days from Appointment of Interim Lead Counsel | Consolidated Amended Complaint |
| 60 days from filing of CAC | Rule 12 Motion(s) |
| 45 days from filing Rule 12 Motions | Opposition to Rule 12 Motion(s) |

| Date | Event / Filing or Service Due Date |
| --- | --- |
| 21 days from filing of Opposition | Reply on Rule 12 Motion(s) |
| Six months from filing CAC | Rule 23 Motion |
| 21 days from filing Rule 23 Motion | Opposition to Rule 23 Motion |
| 14 days from filing Opposition | Reply on Rule 23 Motion |
| 12 months from filing of CAC | Fact Discovery Cutoff |
| 1 month after close of discovery | Expert Reports |
| 21 days after filing of Expert Reports | Expert Rebuttal Reports |
| 14 days after Rebuttal Reports | Expert Discovery Cutoff |
| 14 days after Expert Discovery Cutoff | Dispositive/*Daubert* Motions |
| 21 days after Dispositive/*Daubert* Motions | Oppositions to Dispositive/*Daubert* Motions |
| 14 days after Dispositive/*Daubert* Motions | Replies on Dispositive/*Daubert* Motions |
|  | Trial |

Defendants propose the following schedule for major case events:

| Date | Event / Filing or Service Due Date |
| --- | --- |
| 12/22/15 | Motions for Interim Lead Counsel and Steering Committee Appointments |
| 1/12/16 | Responses to Motions for Interim Lead Counsel and Steering Committee Appointments |
| 30 days from Appointment of Lead Counsel | Consolidated Amended Complaint |

15

| Date | Event / Filing or Service Due Date |
| --- | --- |
| 60 days from filing of CAC | Rule 12 Motion(s) |
| 45 days from filing Rule 12 Motions | Opposition to Rule 12 Motion(s) |
| 30 days from filing of Opposition | Reply on Rule 12 Motion(s) |
| As noted in ¶¶ II.C. and II.G., Defendants propose that schedules for Rule 23 and other proceedings await the resolution of the Rule 12 motions, which may refine the issues in dispute and inform the most appropriate sequencing of further proceedings. | |

## IV.    INFORMATION REGARDING PUBLICLY TRADED DEFENDANT ENTITIES

Pursuant to Paragraph 22 of the Court's Order, Defendant KeyPoint Government Solutions, Inc. states that it does not have outstanding securities in the hands of the public, nor does it have a parent or subsidiary entity with outstanding securities in the hands of the public. Two entities affiliated with KeyPoint Government Solutions, Inc., Truven Health Analytics Inc. and CPI International, Inc., have issued bonds, but not stock, that are in the hands of the public.

DATED: December 8, 2015                       Respectfully submitted,


By: /s/ *Gary E. Mason*

Gary E. Mason
**WHITFIELD BRYSON & MASON LLP**
1625 Massachusetts Ave., NW, Suite 605
Washington, DC 20036
Telephone: (202) 429-2290
Facsimile:  (202) 429-2294
Email: gmason@wbmllp.com

Daniel Reilly
**REILLY POZNER LLP**
1900 Sixteenth Street, Suite 1700
Denver, CO 80202
Telephone: (303) 893-6100
Facsimile:  (303) 893-6110

16

Email: dreilly@rplaw.com

*Interim Liaison Counsel for Plaintiffs and the Proposed Class*


 /s/ *Paul G. Freeborne*

PAUL G. FREEBORNE
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Tel: (202) 353-0543
Fax: (202) 616-8470
Email: paul.freeborne@usdoj.gov

*Liaison Counsel for the Government Defendants*

 /s/ *F. Joseph Warin*
F. Joseph Warin
Jason J. Mendro
**GIBSON, DUNN CRUTCHER LLP**
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone:  (202) 955-8500
Facsimile:  (202) 530-9626
Email:  FWarin@gibsondunn.com
Email:  JMendro@gibsondunn.com

*Counsel to Defendant KeyPoint Government Solutions, Inc.*