**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE: U.S. OFFICE OF PERSONNEL MANAGEMENT DATA SECURITY BREACH LITIGATION | Misc. Action No. 15-1394 (ABJ) <br> MDL Docket No. 2664 |
| This Document Relates To: <br><br> ALL CASES | |

**THE LABATON CLIENT GROUP'S APPLICATION AND MEMORANDUM OF LAW**
**FOR APPOINTMENT OF INTERIM LEAD AND LIAISON COUNSEL**

**PRELIMINARY STATEMENT**

Pursuant to this Court's order of December 15, 2015, Plaintiffs Nicole Waid, Edward Robbeloth, Edward Krippendorf, John Raber, Nicholas Cavis, Eric Edgar, and William Preston (together, the "Labaton Client Group"), by and through their undersigned counsel, submit this application for the appointment of Labaton Sucharow LLP ("Labaton") and Labaton partner Joel H. Bernstein ("Bernstein") as Interim Lead Counsel, and Sands Anderson P.C. ("Sands") and Sands partner J. Jonathan Schraub ("Schraub") as Liaison Counsel.

The members of the Labaton Client Group, which includes a former Assistant United States Attorney in this District and the Middle District of Florida (where she was Chief Assistant United States Attorney) whose current private legal practice specializes in advising corporate clients on, among other things, data breach prevention and management (Plaintiff Waid), have each reviewed the qualifications of their nominees, spent time in numerous consultations with them and have come to the conclusion that Labaton and Sands are uniquely qualified to manage and direct this highly complex litigation brought on behalf of more than 22 million current and former military and civilian employees of the United States, as well as current and former employees of contractors of the government and close family members and/or acquaintances of all of them.

In brief, the advantages that Labaton and Sands bring to this action include:

- *Plaintiff-Driven Litigation Approach*:  Labaton and Sands understand that there is more at stake in this litigation than simply monetary compensation.  The members of the Labaton Client Group themselves constitute a diverse group of individuals in current and former military, civilian and contractor employment, many of whose employment for the government were in the most sensitive positions of national security importance, and who are uniquely knowledgeable about the implications of the OPM data breach.  Labaton and Sands have put in place an organizational structure so that these highly-qualified plaintiffs will be in a position to ensure that the best interests of the victims of Defendants' conduct are at the forefront of this action.

- *Extensive Experience*:  Labaton is a recognized leader in managing complex class action litigation, with more than 50 years of experience, and over $10 billion in class recoveries.  Labaton's and Sands' reputations in the legal community provide the credibility required to successfully litigate against the federal government and top defense firms.  Just yesterday, Labaton was selected as one of *Law360*'s Class Action Practice Groups of the Year for 2015, and is the only applicant here to be so recognized.  Labaton has earned the highest ratings from the premier legal ranking organizations as well, including *Chambers USA*, *Benchmark Plaintiff*, and *The Legal 500*.  In addition, Labaton has been selected by *The National Law Journal* as one of the leading plaintiffs' class action firms in the country for nine consecutive years; and *Law360*'s Most Feared Plaintiffs' Firms.  Since 2010, when the first edition of *Best Law Firms in America* published, Sands has been consistently ranked a Tier 1 law firm for several practice areas, including Mass Tort Litigation/Class Actions.

- *Resources*:  Labaton appreciates that litigating against the federal government in a class action with more than 22 million class members will require substantial financial and personnel resources in order to prosecute this case to its conclusion in the best interests of the victims of the privacy invasion caused by Defendants' conduct.  Labaton is one of the few law firms in the country that has demonstrated the ability and willingness to commit the kind of resources necessary to lead these types of cases, when meritorious, on a contingent fee and expense basis, and will do so here if appointed by this Court.

In short, Labaton and Sands have a proven track record of efficiently and successfully managing complex class actions such as this one, and are uniquely positioned to serve as sole lead and liaison counsel, respectively, in this case.  Labaton has served as sole lead counsel in many recent high-profile class actions and is well-positioned to do so here.  *See*, *e.g.*, *In re American International Group, Inc. Securities Litigation*, 04 Civ. 8141 (DAB) (S.D.N.Y.) (sole Lead Counsel on behalf of Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio, and Ohio Police and Fire Pension Fund, and more than $1 billion recovered for the class); *In re Countrywide Financial Corporation Securities Litigation*, 07 Civ. 5295 (MRP) (C.D. Cal.) (sole Lead Counsel on behalf of New York State Common Retirement Fund and the New York State and Local Retirement Systems, and $624 million recovered for the class).  Should the Court determine that a joint leadership structure is appropriate, however, Labaton has worked cooperatively, efficiently and successfully with other firms applying for

leadership positions here in numerous cases, and would be happy to do so again.[1]  Similarly, Sands is capable of acting as Liaison Counsel without assistance.  The Sands firm has 75 lawyers, 8 of whom are located in Tyson's corner, and therefore in the event that Schraub is unavailable for some reason there should be no difficulty in having another Sands attorney step-in to ensure that there are no unnecessary delays.  However, should the court determine that more than one Liaison Counsel is appropriate, Labaton and Sands would be happy to work with Mr. Mason, who has proven effective in his role as interim liaison counsel, or whomever the Court should deem most appropriate for the role.

## FACTUAL BACKGROUND

This class action arises from the most serious data security breach in our nation's history, possibly perpetrated by a non-friendly foreign government or its agents, during which the most sensitive personal identifying information ("PII") of approximately 22 million current and former employees and contractors of the federal government was taken from the information systems of the Office of Personnel Management ("OPM").  The breach was the direct result of a pattern of reckless conduct by the OPM, and its background investigation vendor KeyPoint, that willfully allowed the sensitive data it was charged with guarding to be stolen because of the OPM's failure to implement simple, necessary security measures, despite warning after warning that such failure would result in a data breach.  Because of OPM's conduct, the victims of the data breach, including members of the Labaton Client Group and others, have had their identities misappropriated through the misuse of their compromised PII and have suffered damages as a

---

[1] *See, e.g., In re Satyam Computer Services Ltd. Securities Litigation*, No. 09-md-2027 (S.D.N.Y.) (co-lead with Kessler Topaz Meltzer & Check LLP; obtained $150 million recovery for the class); *In re Wal-Mart Stores, Inc. Delaware Derivative Litig.*, C.A. No. 7455-CB (Del. Ch.) (co-lead counsel with Girard Gibbs LLP); *In re Sears Holdings Corp. Stockholder and Derivative Litig.*, C.A. No. 11081-VCL (Del. Ch.) (same).

result of time and money spent trying to protect themselves and their families from the criminals that now control their PII.

Seventeen class action lawsuits have been filed against the OPM in eight different District Courts around the nation. Four of those cases were filed by Labaton and Sands on behalf of the seven members of the Labaton Client Group, each of which was filed in this District and assigned directly to this Court:

- *Krippendorf v. United States of America, Office of Personnel Management, et al.*, 15 Civ. 1321 (ABJ) (filed August 14, 2015)

- *Robbeloth, et al. v. United States of America, Office of Personnel Management*, et al., 15 Civ. 1449 (ABJ) (filed September 4, 2015)

- *Waid v. United States of America, Office of Personnel Management, et al.*, 15 Civ. 1653 (ABJ) (filed October 8, 2015)

- *Cavis, et al. v. United States of America, Office of Personnel Management, et al.*, 15 Civ. 1810 (ABJ) (filed October 26, 2015)

By Order dated October 9, 2015 the Judicial Panel on Multi-District Litigation created a multi-district litigation ("MDL") for all cases related to the OPM data breach, pursuant to which each of the cases filed in other Districts were subsequently transferred to this Court. On December 15, 2015, this Court held a hearing and ordered plaintiffs' counsel to submit applications for appointment of interim lead and liaison counsel positions by December 22, 2015.

## **ARGUMENT**

The Labaton Client Group respectfully submits that Labaton and Sands are uniquely and most highly qualified and positioned to prosecute this case in the best interests of the large and diverse class of victims of the OPM data breach for the following reasons.

### I.  Labaton's Plaintiff-Driven Approach to Class Action Litigation

In any class action it is important that the decisions made throughout the course of the litigation are made in the best interests of all class members.  That concern is particularly paramount in a case such as this, where the harm is not just monetary, and the victims come from so many different agencies and contractors.  In determining who should lead the litigation, Courts typically look at, among other factors: (a) which plaintiff or group of plaintiffs is most knowledgeable concerning the subject matter of the litigation, and (b) which plaintiff or group of plaintiffs has the greatest interest in the outcome of the litigation.[2]

The Labaton Client Group is unique among the plaintiffs that have filed cases in this MDL because of the specialized knowledge that these plaintiffs have concerning data breaches.  Plaintiff Waid is a former Senior Assistant United States Attorney for the District of Columbia and former Chief Assistant United States Attorney for the Middle District of Florida, who is currently a partner at the Washington D.C. law firm of Fisher Broyles LLP, where her practice focuses primarily on representing and advising corporate clients on data security and data breach issues.  *See* Waid Declaration.  For example, Plaintiff Waid recently spoke at the DRI Data Breach and Privacy Law Seminar about evaluating and mitigating data security risks when working with vendors – a topic directly related to the OPM's use of KeyPoint in this action.  Together with the other members of the Labaton Client Group, she intends and is well-positioned to stay fully informed about the intricacies of the litigation and consult with Labaton and Sands concerning the best interests of the class.

---

[2] *See, e.g.*, *Diduck v. Kaszycki & Sons Contractors, Inc.*, 149 F.R.D. 55, 60 (S.D.N.Y. 1993) ("Class representatives who are interested and knowledgeable about the action fulfill a fiduciary role, thereby protecting the interests of the class."); *c.f In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 431 (S.D. Tex. 2000) (describing preference under the PSLRA to appoint as class representatives "investors, preferably institutional, that have the greatest financial interest in the recovery sought by the class and are capable of adequately representing the class and monitoring counsel throughout this litigation.").

With respect to the plaintiffs' interest in the outcome of the litigation, in a case such as this, individuals that have higher-level security clearance, such as the individuals in the Labaton Client Group, have a greater interest in the outcome for at least two reasons. First, they were generally required to submit more extensive and now compromised personal information in order to obtain their security clearances and therefore the harm they have suffered is more severe. Second, individuals with higher levels of security clearance, by definition, were in positions with access to more sensitive information, and are therefore at greater risk of being the targets of espionage and or other criminal conduct.

Each of the seven members of the Labaton Client Group has been granted a security clearance, and together they constitute a diverse group of individuals in current and former military, civilian and contractor employment, some of whose employment for the government were in the most sensitive positions, including four of the Labaton Client Group who held Top Secret level security clearance for access to Top Secret/Sensitive Compartmented Information ("TS/SCI").[3] Specifically, the Labaton Client Group includes a former Lieutenant Colonel in the Air Force (*see* Robbeloth Declaration), a former intelligence officer who worked for the National Security Agency, Signals Intelligence (SIGINT) and the Defense Threat Reduction Agency (*see* Edgar Declaration), a software engineer that has worked for federal contractors such as Northrup Grumman Aerospace Systems (*see* Raber Declaration), a retired Department of Defense civilian employee and private contractor (*see* Krippendorf Declaration), a current civilian employee of the Department of Defense (*see* Cavis Declaration), and a veteran of the U.S. Navy who also worked at the Department of the Interior (*see* Preston Declaration).

---

[3] *See* Waid Decl. ¶ 3; Robbeloth Decl. ¶ 5; Edgar Decl. ¶ 2; Raber Decl. ¶ 2. Due to the sensitivity and nature of some of these plaintiffs former positions they will not provide full details here but are willing to provide the Court with *in camera* information, and, will provide further information to all parties upon the entry of an appropriate protective order.

6

Labaton and Sands have organized the Labaton Client Group to be the largest and most diverse cross-section of plaintiffs in this MDL, comprised of individuals who are committed to working with Labaton and Sands throughout this litigation to ensure that the best interests of the class are at the forefront of the case.  Together, these individuals will be able to keep Labaton and Sands well-informed at all times about the effect of the data breach, and/or the impact of potential remedies, on all of the individual class members and their families.

Plaintiff standing is another important factor that Courts also consider in choosing a class representative and their counsel because they may be subject to unique defenses.  *See Steamfitters Local 449 Pension Fund v. Central European Distribution Corp.*, Nos. 11-6247, 11-70852012 WL 3638629, at *13 (D.N.J. Aug. 22, 2012) (rejecting presumptive lead plaintiff as class representative in part on standing grounds, because "[t]he Court must ensure that the lead plaintiff will not prejudice the class by subjecting the class to the delay, expense, and uncertainty of litigating unique defenses.").  That is especially true in data breach cases where standing is frequently raised as a threshold issue.  *See* Miles L. Galbraith, *Identity Crisis: Seeking a Unified Approach to Plaintiff Standing for Data Security Breaches of Sensitive Personal Information,* 62 Am. U. L. Rev. 1365, 1369 (2013) ("Frequently, the victims of data security breaches are denied standing to pursue a claim.").  It is worth noting, therefore, that at least two members of the Labaton Client Group have already suffered from actual misuse of their or a family members' identity under circumstances that are clearly linked to the OPM Data Breach at issue here.  *See* Waid Decl. ¶ 6; Cavis Decl. ¶ 4.

Finally, the members of the Labaton Client Group have each expressed a concern should the litigation be led solely by attorneys representing labor organizations, and/or union members chosen as plaintiffs and potential class representatives by labor organizations.  For one, class

members with Top Secret and higher security ratings are generally in positions in which they would not be permitted to join a labor organization. Members of the military are absolutely prohibited from doing so, nor are many of the private contractor class members eligible to join a union of federal employees. The legitimate concern is that labor organizations and their attorneys may have interests and agendas that, although appropriate for individuals in a collective bargaining environment, may include considerations that are not relevant to many prospective class members who have no such interests. The members of the Labaton Client Group, therefore, believe it would be inappropriate for such organizations, their members and/or their attorneys to represent the entire class without other non-union class members having an equal seat at the table.

## II.     Labaton and Sands are Uniquely Qualified to Represent the Class

The members of the Labaton Client Group recognize the 50-plus year history of Labaton and Bernstein in recovering billions of dollars through the prosecution and management of highly complex class action litigation such as this case including in the fields of securities, anti-trust, privacy and consumer litigation. While the members of the Labaton Client Group understand that there has never been a litigation quite like this one, on behalf of millions of individuals charged with guarding the government's secrets only to have their own personal information left entirely unsecured by the government, the Labaton Client Group believes that the innovative legal skills of Labaton and Bernstein offer the best chance of success for themselves and all Class members.

Labaton and Bernstein have recovered billions of dollars for aggrieved victims of wrongful conduct, and have been recognized for their superlative abilities in the class action arena. For example, Labaton is the ***only*** firm in this MDL to be selected as one of *Law360*'s

Class Action Practice Groups of the Year for 2015.  Labaton has earned the highest ratings from the premier legal ranking organizations as well, including *Chambers USA*, *Benchmark Plaintiff*, and *The Legal 500*.  In addition, Labaton has been selected by *The National Law Journal* as one of the leading plaintiffs' class action firms in the country for nine consecutive years, and by *Law360* as one of the nation's "Most Feared Plaintiffs' Firms."  A more complete list of accomplishments and relevant experiences are set forth in the resumes attached as Exhibit A (Bernstein resume) and Exhibit B (Labaton resume) to the Declaration of Joel H. Bernstein submitted in support of this application.

On the recommendation of Bernstein, the members of the Labaton Client Group believe that Schraub, the managing partner of the Tyson's Corner office of one of Virginia's largest law firms as well as a noted trial lawyer in this Court and throughout the Beltway, will serve the Class well as Liaison Counsel.[4]  Since 2010, when the first edition of *Best Law Firms in America* published, Sands has been consistently ranked a Tier 1 law firm for several practice areas, including Mass Tort Litigation/Class Actions.  A more complete list of accomplishments and relevant experiences are set forth in the resumes attached as Exhibit A (Schraub resume) and Exhibit B (Sands resume) to the Declaration of J. Jonathan Schraub submitted in support of this application.  Bernstein and Schraub have worked successfully together in complex litigation in the past, and are prepared to do so again here.

### III. Labaton and Sands Will Commit the Necessary Resources in Representing the Best Interests of the Class

Lastly, Courts examine the resources of counsel seeking appointment as interim lead counsel, particularly when the defendants are large corporations or the federal government that

---

[4] As the Court is aware, SandsAnderson currently serves as co-counsel for plaintiff in a high profile non-class action case involving allegations of violation of the Privacy Act, *Kelley v. Federal Bureau of Investigation*, 13 Civ. 0825 (ABJ).

have "substantial financial and legal resources." *In re Muni. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186-87 (S.D.N.Y. 2008). This Court must satisfy itself that interim lead counsel will "commit sufficient attorney time and financial resources to vigorously prosecute the putative class's claims." *Smith v. State Farm Mut. Auto. Ins. Co.*, 301 F.R.D. 284, 289 (N.D. Ill. 2014).

Labaton and Sands are prepared to commit the considerable financial and personnel resources necessary to effectively prosecute this litigation on behalf of the proposed Class. With respect to financial resources, they have access to substantial financing that they can call upon easily and readily if needed. The best proof of their resources and capabilities is in their track record: in the decades that they have been prosecuting complex actions that have required tremendous financial resources, they have consistently advanced litigation costs in other matters of equal or greater size than the present case, and in doing so, have successfully litigated matters through settlements, trials, and appeals. With respect to personnel resources, Labaton and Sands have the necessary attorneys and professional staffs to effectively and efficiently prosecute the action.

Finally, and importantly, Labaton and Sands will strictly manage the time spent and the costs incurred in litigating this matter. If appointed Interim Lead and Liaison Counsel, Labaton and Sands will immediately draft guidelines as to time and expenses for all counsel working on the matter, and regularly monitor such time and expenses to ensure the case is being litigated efficiently. In doing so, they recognize that they have a duty to efficiently and cost-effectively manage the case, thus ultimately maximizing the potential recovery for the Class.

Dated: December 22, 2015

Respectfully submitted,

LABATON SUCHAROW LLP

*[signature]*

Joel H. Bernstein (*Pro Hac Vice*)
Garrett Bradley (*Pro Hac Vice*)
Corban S. Rhodes (*Pro Hac Vice*)
140 Broadway
New York, NY 10005
(212) 907-0700
(212) 818-0477 (facsimile)
jbernstein@labaton.com
gbradley@labaton.com
crhodes@labaton.com

*Counsel for the Labaton Client Group*

SANDS ANDERSON PC

*[signature]*

J. Jonathan Schraub    (DC Bar No. 950816)
Paige Levy Smith       (DC Bar No. 453535)
1497 Chain Bridge Road
Suite 202
McLean, VA 22101
(703) 893-3600
(703) 893-8484 (facsimile)
plevy@sandsanderson.com
jjschraub@sandsanderson.com

*Counsel for the Labaton Client Group*

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2015, I caused the following documents to be filed with the Clerk of the Court using the ECF system which will send notification of such filings to ECF-registered counsel.

- The Labaton Client Group's Application and Memorandum of Law for Appointment of Interim Lead and Liaison Counsel

- Declaration of Joel H. Bernstein, with Exhibits

- Declaration of J. Jonathan Schraub, with Exhibits

- Declaration of Nicole Waid

- Declaration of Edward Robbeloth

- Declaration of Eric W. Edgar

- Declaration of William Preston

- Declaration of Nicholas Cavis

- Declaration of Edward Krippendorf

- Declaration of John Raber

Corban S. Rhodes