**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE: U.S. OFFICE OF PERSONNEL MAN-AGEMENT DATA SECURITY BREACH LITIGATION | Misc. Action No. 15-1394 (ABJ)<br>MDL Docket No. 2664 |
| This Document Relates To:<br><br>ALL CASES | |

**SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION TO DISMISS OF PERSPECTA RISK DECISION INC.**

## TABLE OF CONTENTS

Page

ARGUMENT ................................................................................................................................. 1

    I.      The Privacy Act Preempts Plaintiffs' State Law Claims Against Perspecta. .......... 1

    II.     Recent Case Law Confirms That Plaintiffs Fail To State A Claim. ....................... 8

CONCLUSION ............................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aetna Health Inc. v. Davila*,
    542 U.S. 200 (2004) ............................................................................................................. 4

*Aguilar v. RP MRP Washington Harbour, LLC*,
    98 A.3d 979 (D.C. 2014) ..................................................................................................... 9

*Attias v. CareFirst, Inc.*,
    365 F. Supp. 3d 1 (D.D.C. 2019) ............................................................................. 8, 10, 12

*Beaven v. DOJ*,
    622 F.3d 540 (6th Cir. 2010) ............................................................................................ 3, 4

*Boyle v. United Techs. Corp.*,
    487 U.S. 500 (1988) .......................................................................................................... 5, 6

*Campbell-Ewald Co. v. Gomez*,
    136 S. Ct. 663 (2016) ........................................................................................................... 5

*Crosby v. Nat'l Foreign Trade Council*,
    530 U.S. 363 (2000) .......................................................................................................... 6, 7

*Doe v. Chao*,
    540 U.S. 614 (2004) ............................................................................................................. 3

*Doe v. DiGenova*,
    779 F.2d 74 (D.C. Cir. 1985) ............................................................................................... 5

*Doe v. FBI*,
    936 F.2d 1346 (D.C. Cir. 1991) ........................................................................................... 7

*In re Duramax Diesel Litig.*,
    2018 WL 3647047 (E.D. Mich. Aug. 1, 2018) .................................................................. 11

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
    362 F. Supp. 3d 1295 (N.D. Ga. 2019) .............................................................................. 10

*FAA v. Cooper*,
    566 U.S. 284 (2012) .......................................................................................................... 2, 3

*Fort Hall Landowners Alliance, Inc. v. BIA*,
    No. 4:99-cv-52 (D. Idaho Mar. 28, 2001) ............................................................................ 4

*Fox v. Iowa Health Sys.*,
    399 F. Supp. 3d 780 (W.D. Wis. 2019) ......................................................................... 11, 12

# TABLE OF AUTHORITIES
# (continued)

Page(s)

*Galaria v. Nationwide Mut. Ins. Co.*,
  2017 WL 4987663 (S.D. Ohio Aug. 16, 2017) ......................................................................... 11

*Hall v. C&P Tel. Co.*,
  809 F.2d 924 (D.C. Cir. 1987) ................................................................................................... 4

*Jacobs v. Bureau of Prisons*,
  2012 WL 6603085 (D.C. Cir. Dec. 17, 2012) ........................................................................... 2

*Liff v. Office of Inspector Gen. for U.S. DOL*,
  881 F.3d 912 (D.C. Cir. 2018) ............................................................................................. 2, 7

*Lynn v. Lappin*,
  593 F. Supp. 2d 104 (D.D.C. 2009) .......................................................................................... 4

*Martinez v. Bureau of Prisons*,
  444 F.3d 620 (D.C. Cir. 2006) .................................................................................................. 3

*Matson v. State ex rel. Roberts*,
  399 P.3d 879 (Kan. Ct. App. 2017) ......................................................................................... 12

*Maydak v. United States*,
  630 F.3d 166 (D.C. Cir. 2010) .................................................................................................. 3

*McMillan v. Douglas*,
  913 N.W.2d 336 (Mich. App. 2017) ....................................................................................... 12

*Miango v. Democratic Republic of the Congo*,
  243 F. Supp. 3d 113 (D.D.C. 2017) ...................................................................................... 8, 9

*Mittleman v. U.S. Treasury*,
  773 F. Supp. 442 (D.D.C. 1991) ............................................................................................... 4

*Oneok, Inc. v. Learjet, Inc.*,
  135 S. Ct. 1591 (2015) .............................................................................................................. 6

*In re OPM Data Sec. Breach Litig.*,
  928 F.3d 42 (D.C. Cir. 2019) ....................................................................................... 1, 3, 5, 6, 7

*Pisciotta v. Old Nat'l Bancorp*,
  499 F.3d 629 (7th Cir. 2007) ................................................................................................... 10

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Randolph v. ING Life Ins. & Annuity Co.*,
 973 A.2d 702 (D.C. 2009) .................................................................................................10

*Razuik v. Caliber Home Loans, Inc.*,
 2018 WL 6018361 (S.D. Cal. Nov. 15, 2018) ....................................................................12

*Saul v. United States*,
 928 F.2d 829 (9th Cir. 1991) ................................................................................................7

*Sickle v. Torres Advanced Enter. Sols., LLC*,
 884 F.3d 338 (D.C. Cir. 2018) ...............................................................................1, 2, 4, 6

*Sloan v. Urban Title Servs., Inc.*,
 689 F. Supp. 123 (D.D.C. 2010) ........................................................................................10

*In re SuperValu, Inc., Customer Data Sec. Breach Litig.*,
 2018 WL 1189327 (D. Minn. Mar. 7, 2018) ......................................................................11

*Tingler v. Graystone Homes, Inc.*,
 834 S.E.2d 244 (Va. 2019)..................................................................................................10

*Walker v. Oglethorpe Power Corp.*,
 802 S.E.2d 643 (Ga. App. 2017).........................................................................................12

*William Loveland Coll. v. Distance Educ. Accreditation Comm'n*,
 347 F. Supp. 3d 1 (D.D.C. 2018) .........................................................................................9

*Wilson v. Libby*,
 498 F. Supp. 2d 74 (D.D.C. 2007) .......................................................................................7

*Wilson v. Libby*,
 535 F.3d 697 (D.C. Cir. 2008)....................................................................................2, 4, 5

*Wis. Dep't of Indus., Labor & Human Relations v. Gould Inc.*,
 475 U.S. 282 (1986).........................................................................................................6, 7

**Statutes**

5 U.S.C. § 552a(a)........................................................................................................................4

5 U.S.C. § 552a(b)........................................................................................................................2

5 U.S.C. § 552a(e)........................................................................................................................2

# TABLE OF AUTHORITIES
## (continued)

Page(s)

5 U.S.C. § 552a(g) ............................................................................................................2, 3, 4, 6

5 U.S.C. § 552a(i) .................................................................................................................2, 3, 4

5 U.S.C. § 552a(m) ...............................................................................................................2, 3, 4

15 U.S.C. § 1681b(a) ...................................................................................................................11

28 U.S.C. § 2679(d)(4) ..................................................................................................................7

Cal. Civ. Code § 1798.82(b) ........................................................................................................12

Ga. Code § 10-1-912(a) ...............................................................................................................12

Pub. L. No. 93-579, § 2(a), 88 Stat. 1896 ......................................................................................4

Pub. L. No. 93-579, § 2(b), 88 Stat. 1896 ......................................................................................2

**Regulations**

48 C.F.R. § 52.224-2(b) .................................................................................................................3

**Other Authorities**

120 Cong. Rec. 40,405 (1974) .......................................................................................................3

Pursuant to the Court's December 3, 2019 minute order, Perspecta Risk Decision Inc. ("Perspecta")—formerly KeyPoint Government Solutions, Inc.—respectfully submits this supplemental brief in support of its motion to dismiss the Consolidated Amended Complaint ("CAC"). *See* Dkt. 70 ("Mot."); Dkt. 86 ("Reply"). Perspecta renews each of its pending arguments that Plaintiffs fail to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure (Mot. 22-44; Reply 17-35, and Dkt. 95 Exs. 4, 5), and seeks dismissal for the additional reasons below.

## ARGUMENT

**I.     The Privacy Act Preempts Plaintiffs' State-Law Claims Against Perspecta.**

Plaintiffs' claims arise entirely out of activities that the Privacy Act comprehensively regulates: the maintenance and use of federal databases. Not surprisingly, their claim against the government is expressly based on the Privacy Act, *see* CAC ¶¶ 181-85, and their attempt to avoid Perspecta's immunity relies on purported violations of the Privacy Act, *id.* ¶ 75. As Judge Williams correctly observed, the D.C. Circuit's recent decision leaves open a "plausible argument for preemption" based on the Privacy Act's "detailed statutory scheme." *In re OPM Data Sec. Breach Litig.*, 928 F.3d 42, 80-81 (D.C. Cir. 2019). As explained below, both field and conflict preemption principles compel the conclusion that the Privacy Act preempts Plaintiffs' state-law claims against Perspecta.

**A. Field Preemption**: Congress impliedly preempts state regulation in "an area of [the] law" (a) when it passes "a framework of regulation" that is "so pervasive" that it "leaves no space" for supplements through state law, or (b) "where the federal interest is so dominant that the existence of a federal scheme can be assumed to preclude enforcement of state laws on the same subject." *Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338, 347 (D.C. Cir. 2018) (quotation marks omitted). Under both of these standards, Congress occupied the field of regulating the maintenance and use of federal databases and preempted state-law claims based on those activities.

**1**. Pervasive Federal Regulation:  The Privacy Act's "pervasive" regulation of federal databases leaves no room for state laws regulating that subject.  *Sickle*, 884 F.3d at 347.  The Privacy Act is "comprehensive and detailed" legislation, *FAA v. Cooper*, 566 U.S. 284, 287 (2012), that regulates the collection, storage, maintenance, inspection, access, accuracy, security, and disclosure of federal records in federal databases pertaining to federal employees, contractors, and other individuals.  5 U.S.C. § 552a(b)-(e), (i), (m).  It delegates responsibility for safeguarding those records as follows:  Agencies "that maintai[n] a system of records" set the "rules of conduct for persons" who "operat[e]" the database and the "appropriate administrative, technical, and physical safeguards" to protect the records.  *Id*. § 552a(e)(9)-(10).  Employees must obey agency rules, and may not disclose any record without authorization.  *Id*. § 552a(i)(1).  And each agency, by contract, must "cause the requirements of [the Act] to be applied" to any "system of records" operated by its contractor.  *Id.* § 552a(m)(1).  Because the Act's stated purpose includes ensuring that these "safeguards" are "*adequate* … to prevent misuse of such information,"  Pub. L. No. 93-579, § 2(b)(4), 88 Stat. 1896, 1896 (1974) (emphasis added), it thus "leaves no space" for state law to impose additional or different safeguards, *Sickle*, 884 F.3d at 347.

The Privacy Act likewise leaves no room for state-law remedies arising from allegedly improper usage or safeguarding of federal databases, because the Act's comprehensive requirements are backed by "a comprehensive [remedial] scheme."  *Liff v. Office of Inspector Gen. for U.S. DOL*, 881 F.3d 912, 924 (D.C. Cir. 2018); *Wilson v. Libby*, 535 F.3d 697, 705 (D.C. Cir. 2008); *see also* Dkt. 142 at 23-24.  Congress concentrated civil liability on the government by providing for "a civil action against [any] agency" that "fails to comply with any [Privacy Act] provision."  5 U.S.C. § 552a(g)(1)(D).  It provided no civil remedy against any employee or contractor of such an agency.  *See id.* § 552a(g); *see also Jacobs v. Bureau of Prisons*, 2012 WL

2

6603085, at *1 (D.C. Cir. Dec. 17, 2012); *Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) (per curiam). Congress left enforcement against employees and contractors to the Executive Branch, which can: (1) seek "criminal penalties" against either, 5 U.S.C. §§ 552a(i), 552a(m)(1); 48 C.F.R. § 52.224-2(b); (2) terminate employees; (3) seek contract remedies against contractors, *see supra* at 2; or (4) rescind or decline to renew contracts with contractors. The Act thus holds agencies accountable to the public, and holds employees and contractors accountable to the agency.

Congress further narrowed the Privacy Act's civil remedies in two ways, limiting relief to: (1) "actual damages" for (2) "intentional or willful" conduct. 5 U.S.C. § 552a(g)(4). These limitations were deliberate. An earlier bill would have allowed "actual and general damages," but Congress "delet[ed] … general damages" to "eliminat[e] … any possibility of imputing harm and awarding presumed damages." *Doe v. Chao*, 540 U.S. 614, 622-23 (2004) (quotation marks omitted). "[B]y deliberately refusing to authorize general damages, Congress intended to cabin relief." *Cooper*, 566 U.S. at 303. Congress likewise "select[ed] 'intentional or willful' conduct … instead of … the more lenient negligence standard proposed by the Senate." *Beaven v. DOJ*, 622 F.3d 540, 560 (6th Cir. 2010) (citing 120 Cong. Rec. 40,405, 40,406 (1974)). It thereby ensured that the Act "'does not make the Government strictly liable for every affirmative or negligent action that might be said technically to violate the Privacy Ac[t],'" but instead imposes liability only for acts "so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful." *Maydak v. United States*, 630 F.3d 166, 179 (D.C. Cir. 2010) (quotation marks omitted). These "remedial provisions" reflect a careful "balance" between "privacy and competing interests." *In re OPM*, 928 F.3d at 73-74. Whatever State interest there may be in regulating data privacy generally, Congress's "policy choices reflected in the inclusion of certain remedies and

the exclusion of others … would be completely undermined if [plaintiffs] were free to obtain remedies under state law that Congress rejected" in the statute. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208-09 (2004) (quotation marks omitted); *see also*, *e.g.*, *Beaven*, 622 F.3d at 560.

A "comprehensive [federal] scheme" like the one imposed by the Privacy Act preempts "common-law tort remedies" for injuries falling within that scheme. *Hall v. C&P Tel. Co.*, 809 F.2d 924, 926 (D.C. Cir. 1987). This Court has repeatedly described the Privacy Act as the "exclusive remedy" for claims falling "within [its] remedial scheme." *Lynn v. Lappin*, 593 F. Supp. 2d 104, 105-06 (D.D.C. 2009) (quotation marks omitted); *see also Mittleman v. U.S. Treasury*, 773 F. Supp. 442, 451 (D.D.C. 1991) ("exclusive remedies"); *Fort Hall Landowners Alliance, Inc. v. BIA*, No. 4:99-cv-52, Dkt. 166, at 16 (Mem. Decision) (D. Idaho Mar. 28, 2001) ("[T]he alleged breach of a duty not to disclose personal information [to a third-party] is preempted by the Privacy Act."). It covers both civil and criminal liability, for agencies, employees, and contractors. 5 U.S.C. § 552a(g), (i), (m)(1). That Congress imposed "limit[s]" on these exclusive remedies as part of a "'careful balancing'" of interests does not make them any less comprehensive. *Davila*, 542 U.S. at 215. The Act's limits are "not inadvertent," and the "intentional omission" of certain remedies "requires [this Court] to deny … additional remedies." *Wilson*, 535 F.3d at 708.

**2**. <u>Dominant Federal Interest</u>:  For several reasons, "the federal interest" here also is "so dominant" that it precludes "enforcement of state laws on the same subject." *Sickle*, 884 F.3d at 347 (quotation marks omitted).

*First*, the Privacy Act applies to the maintenance of *federal* records *by or for federal* agencies. *See* 5 U.S.C. § 552a(a)(1), (4) (defining covered "agenc[ies]" and "record[s]"). The Act recognizes that maintaining this information is both "essential to the efficient operations of the Government" and Congress's duty to protect—not the States'. Pub. L. No. 93-579, § 2(a)(2), (5),

4

88 Stat. at 1896.  The Act thus "balance[s]" privacy rights against the federal interest "in agency uses of information."  *Doe v. DiGenova*, 779 F.2d 74, 84 (D.C. Cir. 1985) (quotation marks omitted).  State regulation of how federal databases are maintained or used could impede database access or conflict with federal security protocols.

*Second*, litigation over how federal records are secured or accessed is likely to "require judicial intrusion into matters of national security and sensitive intelligence information."  *Wilson*, 535 F.3d at 710.  This case is a prime example:  The government has represented that "the merits of the litigation is likely to involve classified information, and possible state secret privilege assertions," because the breach "involves sensitive national security and foreign policy implications."  Dkt. 140 at 9.  By limiting civil relief to claims of actual damages for intentional or willful misconduct rather than harmless or merely technical violations, Congress protected the government from this intrusive discovery.  But those protections are lost if they can be sidestepped by suing a government contractor.  Further litigation against Perspecta would require similar merits discovery from the government even if the government ultimately is found immune from liability.

*Third*, the claims against Perspecta concern the performance of a federal contract regulated by the Privacy Act.  CAC ¶ 75.  Indeed, to overcome Perspecta's immunity, Plaintiffs have argued that Perspecta breached its federal contract by violating the Privacy Act terms it includes.  *Id.*; *In re OPM*, 928 F.3d at 68.  "[C]ivil liabilities arising out of the performance of federal … contracts" implicate the "uniquely federal interests" in "getting the Government's work done."  *Boyle v. United Techs. Corp.*, 487 U.S. 500, 505-06 (1988).  Contractors facing liability may "shy away from government work," *Campbell-Ewald Co. v. Gomez,* 136 S. Ct. 663, 673 (2016), or "raise

5

their prices to cover, or to insure against, contingent liability," *Boyle*, 487 U.S. at 511-12.[1] Furthermore, it would make no sense for Congress to *limit* the government's liability under the Privacy Act to "actual damages" for "intentional or willful" conduct, 5 U.S.C. § 552a(g)(4), while leaving the government exposed to costs arising from *unlimited* state-law liabilities that would be passed on to it from contractors doing the government's work.

*Fourth*, this action concerns records of "current, former, and prospective employees of the *federal* government" resulting from "*federal* background and security clearance investigations." CAC ¶ 1 (emphases added). If procurement is an area of "uniquely federal interests" sufficient to preempt state law, *In re OPM*, 928 F.3d at 80 (Williams, J., concurring in part and dissenting in part) (quoting *Boyle,* 487 U.S. at 504), surely the "hiring, vetting, and protecting of federal employees [and contractors], and the balancing of costs keeping the relevant data secure against the costs of error or neglect in providing that security" also is "a fundamental federal issue," *id*. at 81.

**B. Conflict Preemption**: Plaintiffs' claims also are precluded by conflict preemption, which applies when "state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Sickle*, 884 F.3d at 347 (quoting *Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591, 1595 (2015)). Conflict preemption "is designed to prevent conflict in its broadest sense with the complex and interrelated federal scheme of law, remedy, and administration." *Wis. Dep't of Indus., Labor & Human Relations v. Gould Inc.*, 475 U.S. 282, 286 (1986) (quotation marks omitted). The fact that compliance with both federal and state standards "may" be possible, "does not mean that the state [law] is not at odds with achievement" of federal objectives. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 380 (2000). Rather, "conflict is

---

[1] *Boyle* does not control here; statutory preemption precedent does. *Boyle* established a test for whether a federal *procurement contract* preempts design defect claims. Here, by contrast, field preemption is rooted in a reticulated *statutory scheme* that regulates the maintenance and use of federal records by federal agencies and their contractors, as well as their related liabilities.

6

imminent" when "two separate remedies are brought to bear on the same activity." *Id.* (quoting *Gould,* 475 U.S. at 286). The "inconsistency of sanctions" under federal and state regimes "undermines" federal policy-making and results in preemption of state law. *Id.*

"Allowing 50 states to pile on and impose liability on contractors" for actions governed by the Privacy Act, *In re OPM*, 928 F.3d at 81 (Williams, J., concurring in part and dissenting in part), will create significant conflicts with the Privacy Act's careful scheme. It will directly undermine Congress's decisions to omit civil liability for government employees and contractors, funnel limited liability upward to agencies, and leave enforcement against employees and contractors to the government. *See supra* at 2-3. And it will embroil the government in discovery into sensitive topics, even in cases involving harmless and technical violations for which Congress chose to eliminate civil liability. Indeed, if the Privacy Act does not preempt state-law claims, Plaintiffs could sue the individual federal employees responsible for OPM's alleged security lapses, with the government bearing the cost under the Federal Tort Claims Act, 28 U.S.C. § 2679(d)(4)—all free from the Privacy Act's "actual damages" and "intentional or willful" misconduct requirements.[2]

Further, state-imposed security protocols could impede federal agency, employee, and contractor access to federal databases, or conflict with federal security protocols. And as Perspecta has established, Mot. 29-32, Plaintiffs' state-law data-breach notification claims also would trigger conflict preemption because adhering to state-law notification requirements is impossible to do without violating federal requirements. Plaintiffs' state law claims are therefore preempted.

---

[2] The D.C. Circuit has consistently rejected similar "end-run[s] around the Privacy Act's specific remedial provisions" under federal law, whether asserted as "an entirely separate remedy arising directly under" other substantive provisions of the Act, *Doe v. FBI*, 936 F.2d 1346, 1360 (D.C. Cir. 1991), or by "artful pleading" as a *Bivens* claim, *Wilson v. Libby*, 498 F. Supp. 2d 74, 89 (D.D.C. 2007), *aff'd*, 535 F.3d at 701; *see also Liff*, 881 F.3d at 924. The same "comprehensive and exclusive" features of a statute that can preclude relief under other federal statutes and *Bivens* are evidence "that Congress intended to oust state tort law" from an area of federal concern. *Saul v. United States*, 928 F.2d 829, 842-43 (9th Cir. 1991) (discussing Civil Service Reform Act).

7

**II.     Recent Case Law Confirms That Plaintiffs Fail To State A Claim.**

**A. Negligence**: The parties agree that D.C. choice-of-law rules govern the common-law claims here, including negligence. Mot. 35 n.30; Dkt. 82 ("Opp.") 62. Those rules apply D.C. substantive law in this case. Mot. 35 n.30; Reply 17-19; Dkt. 142 at 19 n.6.[3] Recent authorities confirm that Plaintiffs have failed to state a claim under that law. *See* Mot. 35-40; Reply 19-23.

1. Duty of Care: Under D.C. law, Perspecta had no duty of care to implement Plaintiffs' preferred security measures. Mot. 36-37; Reply 19-22. As recently confirmed, D.C. law does not recognize a "common law duty to provide data security." *Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 20 (D.D.C. 2019) (dismissing claims). While D.C. law recognizes "a general duty to refrain from acts that cause others harm, this usually does not extend to an obligation to act affirmatively." *Id.* Therefore, absent a "special relationship" between the parties, "negligence" is a "misplaced legal theor[y] on which to pursue recovery for [a] data breach." *Id.* at 24.

Plaintiffs disavowed any claim of a special relationship with Perspecta by conceding at oral argument before this Court that none of their data was taken from Perspecta's systems; in fact, "no individual plaintiff alleges that they gave [Perspecta] their information directly." Dkt. 98, at 96:2-8; Dkt. 104, at 51:15-17, 57:1-2. Indeed, Plaintiffs do not even allege Perspecta had their information in its possession or control. *See* Mot. 32. As a result, there is no "special" or "fiduciary"-like relationship between the parties, *Attias*, 365 F. Supp. 3d at 20; there is no relationship at all.[4]

Further, Perspecta had no duty to defend against "intervening criminal acts" of third parties unless they were "'foreseeable.'" *Miango v. Democratic Republic of the Congo*, 243 F. Supp. 3d

---

[3]  Should this Court instead accept Plaintiffs' position that multiple States' laws apply, Opp. 63-64, Perspecta is prepared to address those States' laws—or a representative sample thereof—at that time, *see* Dkt. 86-1, at 1.

[4]  This concession likewise defeats Plaintiffs' negligent misrepresentation and privacy tort claims, which also fail for the reasons previously stated by Perspecta. *See* Mot. 40-43.

8

113, 139 (D.D.C. 2017) (A. Jackson, J.) (quotation marks omitted).  Plaintiffs do not plead a "heightened showing of foreseeability" as required to state a negligence claim in this context. *Id.* (quotation marks omitted).  At best, they offer only the sort of "generic" allegations that Perspecta operates "in a criminally active environment" that this Court found inadequate to state a claim in *Miango*. *Id.* (quotation marks omitted).  There is no allegation that Perspecta could have anticipated the "particular criminal act" alleged here—the use of an unlawfully obtained Perspecta credential to steal personal information not from Perspecta itself, but from OPM. *Id.* at 140.

    2. <u>Economic Loss Rule</u>:  Plaintiffs' negligence claims likewise fail under the economic loss rule.  Mot. 39-40; Reply 22-23.  Negligence is an improper tool for "pecuniary injury" that is "not connected with any injury to one's body or property." *Aguilar v. RP MRP Washington Harbour, LLC*, 98 A.3d 979, 982-83 (D.C. 2014).  A "plaintiff who suffers only pecuniary injury as a result of the conduct of another cannot recover those losses in tort" absent a "special relationship" with the defendant—a "limited exception to the economic loss doctrine." *William Loveland Coll. v. Distance Educ. Accreditation Comm'n*, 347 F. Supp. 3d 1, 19 (D.D.C. 2018) (A. Jackson, J.) (quotation marks omitted).  Recent case law confirms that this exception has no application where, as here, Plaintiffs do not claim Perspecta "had an obligation" to "care for [their] economic well-being" or an "obligation that implicated [their] economic expectancies." *Id.* at 20.  With "no allegation that [Perspecta] was obligated to [Plaintiffs] in any economic capacity"—and indeed "no direct connection between" the parties—there is "no special relationship." *Id.* at 20-21 (quotation marks omitted); *see supra* at 8.

    3. <u>Actual Damages</u>: *Attias* also compels dismissal of negligence claims by plaintiffs who do not allege that hackers actually used their stolen information to, for instance, make unauthorized

9

credit card charges or cause similar injury.[5]  D.C. law recognizes that actual injury is an essential element of negligence claims independent from the requirement to prove "actual damages" in claims under the Privacy Act.  *Attias*, 365 F. Supp. 3d at 9-10; *see also* Dkt. 142 at 17-18.  In *Randolph v. ING Life Insurance & Annuity Co.*, 973 A.2d 702 (D.C. 2009), therefore, the D.C. Court of Appeals dismissed negligence claims of plaintiffs who failed to allege actual misuse of their data, instead alleging only a risk of future misuse and "expenses" incurred for "credit monitoring."  *Id*. at 708.  These injuries were not actionable because they were "not the result of any present injury, but rather the result of the anticipation of future injury that has not materialized."  *Id*.  *Attias* holds that under *Randolph*, consistent with the law in other states, *e.g.*, *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 639 (7th Cir. 2007), the types of "injuries" many Plaintiffs assert here (the "risk of future identity theft" or other "misuse" of data; "time and money spent protecting against" that risk, and "emotional distress") are insufficient to state a claim absent "actual misuse" of their data, 365 F. Supp. 3d at 10-17.

In sum, under D.C. law, negligence claims generally must arise from actual personal injury or property damage.  Neither potential injuries nor purely economic losses are sufficient absent a special relationship between the parties.  Here, no Plaintiff claims to have suffered injury to their person or property, and none plausibly alleges a special relationship—or any relationship—with Perspecta.  The parties are strangers, and Plaintiffs variously plead purely economic loss, hypothetical injury, or no injury at all.  These allegations are insufficient to sustain a negligence claim.[6]

---

[5]  *E.g.*, plaintiffs Bonner, Brown, Crawford, Jane Doe II, John Doe II, Ebert, Gum, Hanagan, Hibbs, Hoffman, Johnson, McGarry, Peters, Sampedro, Sebert, Slater, Strickland, and Uliano.

[6]  Notably, Virginia law recognizes the same limitations on negligence claims.  *See, e.g.*, *Attias*, 365 F. Supp. 3d  at 10 (quoting *Sloan v. Urban Title Servs., Inc.*, 689 F. Supp. 2d 123 (D.D.C. 2010)).  Virginia also follows the economic loss rule, precluding negligence claims absent injury to "person" or "property."  *Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244, 265 (Va. 2019).

**B. FCRA**:  Courts continue to reject the premise of Plaintiffs' FCRA claim, CAC ¶¶ 77, 249-50 (quoting 15 U.S.C. § 1681b(a))—that a defendant "furnish[es]" information under FCRA when it becomes the victim of a criminal data breach.  Mot. 23-24; Reply 27-29; *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1312 (N.D. Ga. 2019); *Galaria v. Nationwide Mut. Ins. Co.*, 2017 WL 4987663, at *4 (S.D. Ohio Aug. 16, 2017).  Any claim that Perspecta "furnished" Plaintiffs' information also fails because they concede none of their data was taken from Perspecta's systems.  *See supra* at 8; Dkt. 104 at 59:21-60:16 (The Court:  "[Y]ou [are] saying that they furnished the data that was stolen *from the OPM*[.]… How could they furnish that?") (emphasis added).

**C. State Consumer Protection Statutes**:  Recent case law also confirms that Plaintiffs' claims under state consumer protection statutes must fail.  Mot. 25-29; Reply 29-32.[7]  Courts continue to recognize that these statutes protect only *consumers* from unfair, deceptive, or fraudulent practices.  *In re Duramax Diesel Litig.*, 2018 WL 3647047, at *8 (E.D. Mich. Aug. 1, 2018) ("[T]o have standing under the Idaho Consumer Protection Act … , the aggrieved party must have been in a contractual relationship with the party alleged to have acted unfairly or deceptively.").  Yet no Plaintiff alleges *any* relationship with Perspecta, let alone a contractual relationship.  *See* CAC ¶ 256.  Further, statutes aimed at enjoining "misleading trade practices"—such as Illinois's Uniform Deceptive Trade Practices Act—have no bearing where "the plaintiff is unlikely to be deceived by defendant's misstatements again in the future," *Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 799 (W.D. Wis. 2019), or where plaintiffs fail to allege a "likelihood of a future data breach," *In re SuperValu, Inc., Customer Data Sec. Breach Litig.*, 2018 WL 1189327, at *15 (D. Minn. Mar. 7, 2018), *aff'd* 925 F.3d 955 (8th Cir. 2019).

---

[7] For the Court's convenience, Perspecta attaches (as Exhibit A) an updated version of its earlier table, Dkt. 70-1, matching Plaintiffs' state statutory claims to the relevant briefing.

11

**D. State Data Breach Notification Statutes**:  Case law also continues to support dismissal of Plaintiffs' state data breach notification claims.  CAC ¶ 262; Mot. 32-34; Reply 32-35.  The relevant statutes only apply to an entity whose database is breached, *e.g.*, Cal. Civ. Code § 1798.82(b); Ga. Code § 10-1-912(a), but Plaintiffs conceded that their personal information was not taken in any breach of Perspecta's systems, *see supra* at 8.  Further, the claims under Georgia, Kansas, Michigan, and Wisconsin law should be dismissed because those statutes lack or foreclose a private cause of action.  *See Walker v. Oglethorpe Power Corp.*, 802 S.E.2d 643, 656 (Ga. App. 2017); *Matson v. State ex rel. Roberts*, 399 P.3d 879 (Kan. Ct. App. 2017); *McMillan v. Douglas*, 913 N.W.2d 336, 338 (Mich. App. 2017); *Fox*, 399 F. Supp. 3d at 800.  Nor have Plaintiffs plausibly alleged that the purported *delay* in notification caused particular injury distinct from the alleged breach itself, as required to show injury and causation under California's statute.  *E.g.*, *Razuik v. Caliber Home Loans, Inc.*, 2018 WL 6018361, at *2 (S.D. Cal. Nov. 15, 2018).

**E. Breach of Contract**:  In addition to the reasons Perspecta has already given for dismissing all of Plaintiffs' breach of contract claims, *e.g.*, Mot. 43-44; Reply 26-27, *Attias* compels dismissal of breach of contract claims by plaintiffs who do not allege actual data misuse and resulting financial harm, for the same reason the negligence claims of those plaintiffs must be dismissed.  *See supra* at 9-10.  Plaintiffs seek damages, not specific performance.  CAC ¶¶ 267-75.  But in a data-breach case, without an instance of actual data misuse, the risk of future misuse, mitigation costs, lost time, and/or emotional distress does not meet D.C. law's requirement of "actual damages," which applies to contract claims for damages.  *Attias*, 365 F. Supp. 3d at 9-17.

## CONCLUSION

The Court should dismiss all of Plaintiffs' claims with prejudice.

Dated:  January 17, 2020

Respectfully submitted,

 /s/ Jason J. Mendro
F. Joseph Warin (D.C. Bar No. 235978)
Jason J. Mendro (D.C. Bar No. 482040)
Matthew S. Rozen (D.C. Bar No. 1023209)
Jeremy M. Christiansen (D.C. Bar No. 1044816)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
Telephone:  (202) 955-8500
Facsimile:  (202) 530-9626
fwarin@gibsondunn.com
jmendro@gibsondunn.com
mrozen@gibsondunn.com
jchristiansen@gibsondunn.com

Alexander H. Southwell (N.Y. Bar No. 2923415)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Telephone:  (212) 351-3981
Facsimile:  (212) 351-6281
asouthwell@gibsondunn.com

*Counsel for Defendant Perspecta Risk Decision Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of January, 2020, I caused the foregoing to be filed and served via the Court's CM/ECF filing system. Copies of the foregoing will also be sent via first class mail to:

David Pastor, Esq.
Pastor Law Office, LLP
63 Atlantic Avenue, 3rd Floor
Boston, MA  02110

Preston W. Leonard, Esq.
Leonard Law Office, PC
63 Atlantic Avenue, 3d Floor
Boston, MA  02110
*Counsel for Plaintiff Derrick Sims*

Adedeji Shamonda
P.O. Box 881773
San Francisco, CA  94188-1773
*Pro Se Plaintiff*

Adebiyi K. Shamonda
3120 Shelter Creek Lane
San Bruno, CA  94066
*Pro Se Plaintiff*

Dennis A. Mastando, Esq.
Eric J. Artrip, Esq.
Mastando & Artrip LLC
301 Washington Street
Suite 302
Huntsville, AL  35801

Richard P. Rouco, Esq.
Quinn Connor Weaver Davies &
Rouco LLP
2-20 Street North
Suite 930
Birmingham, AL  35203
*Counsel for Plaintiffs David A. Golden, Ronnie Golden, and Liliana Golden*


/s/ Jason J. Mendro
Jason J. Mendro (D.C. Bar No. 482040)