**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN RE: U.S. OFFICE OF PERSONNEL
MANAGEMENT DATA SECURITY
BREACH LITIGATION

Misc. Action No. 15-1394 (ABJ)
MDL Docket No. 2664

This Document Relates To:

ALL CASES

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

### I.    EXPLANATION OF AGREEMENT

This is a class action, *In re: U.S. Office of Personnel Management Data Security Breach Litigation*, No. 15-1394 (D.D.C.) (as amended, "the Case"), brought by Plaintiffs against the United States of America, the United States Office of Personnel Management ("OPM"), and Peraton Risk Decision Inc. ("Peraton") (formerly KeyPoint Government Solutions, Inc.) (collectively "the Defendants"), under the Privacy Act, 5 U.S.C. § 552a *et seq.*, the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, and state statutory and common law causes of action concerning the 2014 and 2015 cyberattacks on OPM's electronic information systems and the 2013 and 2014 cyberattacks on Peraton's electronic information systems.  In the interest of resolving the dispute between the Parties without the expense, delay, and inconvenience of further litigation of the issues raised in this action, and in reliance upon the representations, mutual promises, covenants, and obligations set out in this Settlement Agreement, and for good cause and valuable consideration also set out in this Settlement Agreement, the Parties, through their undersigned counsel of record, hereby stipulate and agree as follows:

1

## II.      GENERAL PROVISIONS

### A.      Recitals

1.      On March 14, 2016, Plaintiffs filed a Consolidated Amended Complaint against the United States, OPM, and Peraton alleging that the Defendants failed to adequately safeguard their electronic information systems from cyberbreaches.  ECF No. 63.

2.      Defendants each moved to dismiss on May 13, 2016 (ECF Nos. 70, 72), and the Court heard argument on those motions on October 31 and November 10, 2016.

3.      On September 19, 2017, the Court dismissed Plaintiffs' claims for, *inter alia*, lack of Article III standing.  *See In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1 (D.D.C. 2017).  The Court also held that derivative sovereign immunity barred Plaintiffs' state-law claims against Peraton. *Id.* at 48-50.

4.      Plaintiffs appealed, and on June 21, 2019, the D.C. Circuit reversed and reinstated claims against both Defendants.  *See In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42 (D.C. Cir. 2019).  The Case was thereafter remanded to the District Court.

5.      On January 17, 2020, Peraton filed a supplemental brief in support of its Motion to Dismiss, arguing that the Privacy Act preempts Plaintiffs' state law claims against Peraton and renewing each of its previously asserted arguments that Plaintiffs failed to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  ECF No. 148.  Plaintiffs filed a response in opposition to Peraton's supplemental brief on February 7 (ECF No. 156), and Peraton filed a reply on March 24 (ECF Nos. 158, 161).  Peraton's motion remains pending.

6.      On January 27, 2020, the Court referred the Parties to private mediation supervised by retired District Court Judge Lawrence F. Stengel.  The Court initially set the referral to end April 27, 2020, and subsequently granted the Parties' periodic requests to extend the referral to allow the Parties to continue their negotiations.  The referral expired on March 19, 2021.  At the

Parties' request, the Court on September 27, 2021, referred the Parties to Senior District Court Judge John D. Bates for an evaluation of certain issues on which the Parties were stalemated.  The referral to Judge Bates expired on November 30, 2021.

       **7.**       In order to bring the Case to a close, the Parties have agreed to a settlement on behalf of the amended class, as defined in Section II.B.2 ("Class").

       **8.**       The Parties believe that the terms of this Settlement Agreement are fair, reasonable, and adequate and that this Settlement Agreement provides substantial benefits to the proposed Class and the Class Members.  Plaintiffs believe that the Settlement is in the best interests of the proposed Class and the Class Members.

       **9.**       The Defendants expressly deny any wrongdoing, as alleged in the Case or otherwise, and do not admit or concede any actual or potential fault, wrongdoing, or liability in connection with any facts or claims that have been or could have been alleged in the Case. Defendants similarly deny that the Plaintiffs have standing or that, in litigation, Plaintiffs would satisfy the criteria of Rule 23 of the Federal Rules of Civil Procedure.  Nonetheless, the Defendants consider it desirable to enter into a settlement on the terms set forth in this Settlement Agreement because it will avoid the substantial expense, burdens, and uncertainties associated with litigation of the Case.

       **10.**       Accordingly, the purpose of this Settlement Agreement is to make a full, complete and final resolution of all claims and causes of action that have been or could have been asserted against the Defendants by the proposed Class and the Class Members in the Case arising out of the conduct alleged therein.

       **11.**       Therefore, in reliance on the mutual promises, covenants, releases, and obligations as set out in this Settlement Agreement, and for good and valuable consideration, the

Parties hereby stipulate and agree to resolve all claims that were or could have been at issue in the Case.

**B.      Definitions**

The defined terms set forth below, and as otherwise defined herein, will have the meanings ascribed to them for the purposes of this Settlement Agreement.

**1.      Claimant.**  "Claimant" is any individual who submits a claim and/or seeks an award under this Settlement Agreement.

**2.      Class; Class Member.**  "Class" means all U.S. citizens and permanent residents whose personal information was compromised as a result of the breaches of the U.S. Office of Personnel Management's electronic information systems in 2014 and 2015 or the breach of Peraton's electronic information systems in 2013 and 2014, and who, after May 7, 2014, suffered out-of-pocket expense or loss of compensable time: (1) to purchase a credit monitoring product, credit or identity theft protection product, or other product or service designed to identify or remediate the data breaches at issue in this case; (2) to access, freeze, or unfreeze a credit report with a credit reporting agency; or (3) as a result of an identity theft incident or to mitigate an identity theft incident.  A member of the Class is a "Class Member."  Excluded from the Class are: Class Counsel and their employees; any judicial officers to whom this case is assigned and their respective staffs; mediators and their respective staffs; and attorneys from the Department of Justice and OPM, and their respective staffs, who worked directly and personally on this matter.

**3.      Class Counsel.**  "Class Counsel" means Interim Lead Class Counsel Daniel C. Girard, Girard Sharp, LLP, 601 California Street, Suite 1400, San Francisco, California 94108; Plaintiffs' Steering Committee: David H. Thompson, Cooper & Kirk, PLLC, 1523 New Hampshire Avenue NW, Washington, D.C. 20036, Tina Wolfson, Ahdoot & Wolfson, PC, 2600 West Olive Ave., Suite 500, Burbank, California 91505, and John Yanchunis, Morgan & Morgan Complex

4

Litigation Group, 201 N. Franklin Street, 7th Floor, Tampa, Florida 33602; Liaison Counsel Gary E. Mason, Mason LLP, 5101 Wisconsin Avenue NW, Suite 305, Washington, D.C. 20016; and additional counsel Norman E. Siegel, Stueve Siegel Hanson LLP, 460 Nichols Road, Suite 200, Kansas City, Missouri 64112.

4.      **Class Representatives.**  "Class Representatives" means and includes: Travis Arnold, Tony Bachtell, Gardell Branch, Myrna Brown, Lilian Colon-McKnight, Paul Daly, Jon Decker (formerly John Doe III), Jane Doe, Jane Doe II, John Doe II, Kelly Flynn, Alia Fuli, Johnny Gonzalez, Orin Griffith, Jennifer Gum, Michael Hanagan, Deborah Hoffman, Cynthia King-Meyers, Todd Kupferer (formerly John Doe), Ryan Lozar, Teresa J. McGarry, Charlene Oliver, Mario Sampedro, Zachary Sharper, Robert Slater, Nancy Wheatley, and Kimberly Winsor.

5.      **Defendants.**  "Defendants" means the United States of America, the United States Office of Personnel Management and Peraton Risk Decision Inc.

6.      **District Court and Court.**  "District Court" and "Court" mean the U.S. District Court for the District of Columbia, unless the context says otherwise.

7.      **Effective Date.**  "Effective Date" is the date upon which, if the Settlement Agreement is not voided under Section III.A, IX.C.2, or XII.E, the Final Approval Order and Judgment becomes non-appealable, or, in the event of any appeals, the date of final resolution of said appeals, provided that such resolution has not modified, amended or reversed the Judgment in any way.  When this Settlement Agreement refers to the date on which the Settlement Agreement became "Effective," such date is the Effective Date.

8.      **Execution Date.**  "Execution Date" is the date on which this Settlement Agreement has been signed by or on behalf of all the Parties.

9.      **Fairness Hearing.**  "Fairness Hearing" means the hearing on Plaintiffs' Motion for Final Approval of Class Action Settlement.

10.     **Final Approval.**  "Final Approval" means the occurrence of the following:

a.      Following the Fairness Hearing, the Court has entered the Final Approval Order and Judgment; and

b.      the judgment has become "Final."  "Final" means the later of:

i.      the time for seeking rehearing or reconsideration and/or appellate review has expired or there is no one with standing to seek such review; or

ii.      if rehearing, reconsideration or appellate review is sought, after any and all avenues of rehearing, reconsideration and appellate review have been exhausted and no further rehearing, reconsideration or appellate review is permitted, or the time for seeking such review has expired and the Judgment has not been modified, amended or reversed in any way.

11.     **Final Approval Order and Judgment.**  "Final Approval Order and Judgment" means an order granting final approval of this Settlement Agreement and entering judgment of dismissal, substantially in the form of Exhibit 4 hereto.

12.     **Implementation Costs.**  "Implementation Costs" are the administrative costs associated with implementing this Settlement Agreement, including the fees and costs associated with the work of the Claims Administrator and the costs necessary to provide notice of this Settlement Agreement to the Class.  OPM will be responsible for the payment of Implementation Costs.  Implementation Costs do not include reasonable attorney fees and other litigation costs and expenses reasonably incurred by Class Counsel.  Peraton will have no responsibilities, obligations, or liability whatsoever with respect to Implementation Costs.

13.     **Includes; Including.**  The words "includes" or "including" mean includes or including without limitation.

14.     **Named Plaintiffs.**  "Named Plaintiffs" means and includes the Class Representatives and Ryan Bonner, Monty Bos, Heather Burnett-Rick, Michael Ebert, Maryann Hibbs, Michael Johnson, Timothy Sebert, Darren Strickland, and Peter Uliano.

15.     **Notice Plan.**  "Notice Plan" refers to the plan for disseminating notice of the Settlement to the Class, attached as Exhibit 5 hereto.

16.     **Parties.**  "Parties" means and refers to Named Plaintiffs and Defendants.

17.     **Preliminary Approval.**  "Preliminary Approval" means the date of entry of the Preliminary Approval Order.

18.     **Preliminary Approval Order**.  "Preliminary Approval Order" means the Order entered by the Court preliminarily approving the terms and conditions of this Agreement, including the manner and timing of providing notice to the Class, the time period for objections and the date, time and location for the Fairness Hearing, substantially in the form attached hereto as Exhibit 3.

19.     **Reasonably Documented.**  "Reasonably Documented" means the submitted Claim includes documentation sufficient to establish (a) the amount of loss suffered by the Claimant, and (b) that the loss is Reasonably Attributable, as described in Sections V.C.5 and V.C.6 below, to the 2014 and 2015 cyberattacks of OPM's electronic information systems and/or the 2013 and 2014 cyberattacks of Peraton's electronic information systems that are the subject of this Case. Such documentation, in the case of out-of-pocket expenditures, may include credit card or bank statements, emails, invoices, receipts, or telephone records, including photographs of the same; and, in the case of Compensable Time, may include pay stubs, invoices, other billing records, or emails or other communications or records reflecting time taken off work.  Personal certifications, declarations, or affidavits from the Claimant do not constitute reasonable documentation but may be used to provide clarification, context or support for other documentation submitted in support of a claim.

20.     **Recovery Period.**  "Recovery Period" means the period from May 7, 2014, through January 31, 2022.

21.     **Settlement Account.**  "Settlement Account" means: (1) an interest-bearing account that is a qualified settlement fund under federal tax law, established or maintained by the Claims Administrator for the purpose of effectuating this Settlement, into which the Settlement Claims Amount will be deposited and from which the Settlement Distributions will be paid; and (2) the funds in an account established or maintained by the U.S. Department of the Treasury that are allocated solely for the purpose of paying claims under this Agreement.  The Claims Administrator will provide the necessary account information to Defendants as needed to support deposit of the Settlement Claims Amount.

22.     **Settlement Agreement.**  "Settlement Agreement" refers to this document, and all accompanying attachments.

23.     **Settlement Claims Amount.**  "Settlement Claims Amount" means the total consideration required to be paid by or on behalf of Defendants into the Settlement Account pursuant to Sections III.A-B.

24.     **Settlement Distributions.**  "Settlement Distributions" means Valid Claims paid to Claimants, and any incentive awards paid to Named Plaintiffs.

25.     **Unknown Claims.**  "Unknown Claims" means any and all claims that any Class Representative or Class Member does not know or suspect to exist in his or her favor as of the Effective Date and which, if known by him or her, might have affected his or her decision(s) with respect to the Settlement, including all claims for which any Class Representative or Class Member would receive any provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or otherwise, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE
CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO
EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE
RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE
MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE
DEBTOR OR RELEASED PARTY.**

26.     **Valid Claims.**  "Valid Claims" means the claims submitted by Claimants and determined to qualify for payment as Recoverable Losses as set forth in Sections V.C.3-6 of this Settlement Agreement.

## III.     FUNDING OF SETTLEMENT ACCOUNT.

A.     **OPM Contribution.**  Within seven (7) days after the Final Approval of this Settlement Agreement, OPM, through its counsel, will provide the U.S. Department of Treasury, Bureau of Fiscal Service Judgment Fund ("Judgment Fund") with all necessary forms and documentation to allocate $60,000,000.00 into the Settlement Account.  After receiving such information, it is anticipated that the Judgment Fund will allocate that amount into the Settlement Account.  This amount is contingent upon approval of allocation by the Judgment Fund of the United States (which shall include an acknowledgment that the Settlement meets the criteria set out for payment by the Judgment Fund).  If such approval does not occur, this Settlement Agreement will be void and the Case will proceed as if no settlement had been attempted.

B.     **Peraton Contribution.**  Within fourteen (14) days after the Judgment Fund has allocated OPM's payment to the Settlement Account, Peraton will pay or cause to be paid on its behalf into the Settlement Account, as defined in Section II.B.21(1), $3,000,000.00, by wire or by check in its discretion, which will be the first $3,000,000.00 from which Incentive Awards, if any, and Valid Claims will be paid.  This payment will be Peraton's only payment obligation with respect

to the Settlement Agreement.  Peraton will have no responsibilities, obligations, or liability whatsoever with respect to attorneys' fees, costs, or expenses, Implementation Costs, or other payments of any kind.

## IV.   RELEASES AND RELATED MATTERS

**A.      No Additional Litigation.**  This Settlement Agreement is in lieu of and discharges any obligations of Defendants to the Named Plaintiffs and the Class related to or stemming from the 2014 and 2015 cyberattacks of OPM's electronic information systems and the 2013 and 2014 cyberattacks of Peraton's electronic information systems which are the subject of this Case.  The Named Plaintiffs, Class Representatives on behalf of the Class, and each individual Class Member, agree that they will not commence or prosecute, either as a group or individually, any action on behalf of themselves or any other person, asserting claims against Defendants related to or stemming from the 2014 and 2015 cyberattacks of OPM's electronic information systems or the 2013 and 2014 cyberattacks of Peraton's electronic information systems that are the subject of this Case.

**B.      Release of Claims.**

**1.      Full Release of All Class Claims.**  By operation of the entry of Final Approval Order and Judgment, Named Plaintiffs, Class Representatives, individually and on behalf of the Class, Class Counsel, and each individual Class Member forever and fully release Defendants, their successors, assigns, agents, officers, employees, representatives, insurers, reinsurers, and attorneys, and all persons acting by, through, under or in concert with any of them, including any party that was or could have been named as a defendant in the Case (collectively, the "Releasees") from any and all past and present matters, claims, demands, and causes of action of any kind whatsoever, federal or state, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, including all known claims and Unknown Claims, that were or could have

been asserted in the Case.  Named Plaintiffs, Class Representatives and Class Counsel acknowledge, and each Class Member by operation of law will be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a key element of the Settlement Agreement.  Upon Final Approval, this release will bind Class Members who do not timely opt out of the Class.

      **2.**      **Defendants' Release.**  By operation of the entry of the Final Approval Order and Judgment, the Defendants mutually release each other, their successors, assigns, agents, officers, employees, representatives, insurers, and attorneys, and all persons acting by, through, under or in concert with any of them, including any party that was or could have been named as a cross-claim defendant in the Case from any and all past and present matters, claims, demands, and causes of action of any kind whatsoever, federal or state, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, which any Named Plaintiff or Class Member has or might have, known or unknown, of any kind whatsoever, including Unknown Claims, growing out of or in any way relating to the events underlying the Case, namely the 2014 and 2015 cyberattacks of OPM's electronic information systems and the 2013 and 2014 cyberattacks of Peraton's electronic information systems that are the subject of the Case.

      **C.**      **No Assignment.**  Class Counsel and Plaintiffs, on behalf of the Class and each Named Plaintiff and Class Member, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Case, or any related action.

      **D.**      **Non-Admission of Liability.**  By entering into this Settlement Agreement, Plaintiffs in no way concede the validity of any defense raised by Defendants; nor do Defendants in any way admit any violation of law or any liability whatsoever to Plaintiffs and the Class, individually

or collectively, all such liability being expressly denied.  Rather the Parties enter into this Settlement Agreement to avoid further protracted litigation and to resolve and settle all disputes relating to the Case.  The Parties understand and agree that neither this Settlement Agreement, nor the negotiations that preceded it, will be used as evidence with respect to the claims asserted in the Case, the propriety of a class action, or in any other proceeding or dispute.

      **E.**    **Resolution of All Disputes.**  This Settlement Agreement resolves any and all disputes, liabilities, claims, rights, suits, and causes of action, of any kind whatsoever, whether known or unknown, between and among the Parties relating to the prosecution, defense, or settlement of the Case, except for the Parties' respective rights and obligations under the terms of this Settlement Agreement, which shall remain fully enforceable, by execution of this Settlement Agreement.

## V.    SETTLEMENT PAYMENT PROCEDURES

      **A.**    **Claims Administrator.**  Class Counsel and OPM will utilize the services of an independent non-party (the "Claims Administrator") that is mutually agreeable to Class Counsel and OPM to facilitate administrative matters and distribution of the Amount Payable for each Valid Claim in accordance with the terms and conditions of this Settlement Agreement.  The Preliminary Approval Order will direct Class Counsel and OPM to retain Epiq Class Action & Claims Solutions, Inc. ("EPIQ") to provide the services set forth in this Section, as well as the Notice services as set forth in Section IX.B.  Class Counsel and OPM agree to cooperate as to all aspects of this Settlement Agreement in order to minimize the costs of any such Claims Administrator.  The fees of the Claims Administrator are to be deemed part of the Implementation Costs.  All payments to the Claims Administrator must be for reasonable and necessary services in accordance with detailed invoices provided to counsel for Plaintiffs and OPM.  As quickly as possible after the Execution Date, and no later than four weeks after the Execution Date, OPM agrees to pay $3.5 million to

Class Counsel for deposit in a segregated account for payment of the Implementation Costs. OPM agrees to promptly make payment of additional funds if necessary to fully effectuate this Settlement Agreement. Any excess funds, after settling any outstanding balance, will be returned to OPM at the earlier of (a) a denial of the motion for preliminary approval; (b) a denial of the motion for final approval; or (c) the conclusion of the notice and claims administration activities set out in the Settlement Agreement. OPM shall hold Class Counsel harmless for claims arising from the performance of the Claims Administrator.

       **B.**    **Payment of Claims.** The Amount Payable for each Valid Claim and the claims process for doing so will be in accordance with the terms as set forth below. The Parties will have no role in, nor will they be held liable in any way for, the determination of monetary relief to be accorded each Claimant, and Peraton will have no role in, nor any liability for, any aspect of the monetary awards process. Moreover, except as explicitly set forth in this Agreement, the Parties will have no further role in determining the distribution methodology.

       **C.**    **Settlement Distribution**. The Claims Administrator will arrange for Settlement Distributions in accordance with the following process.

          **1.**    **Claims Period.** Any Class Member seeking recovery hereunder must submit a claim form, attached hereto as Exhibit 2, no later than 200 days after Preliminary Approval (the "Claims Period").

          **2.**    **Payment Date.** Payment for each claim determined by the Claims Administrator to be valid will be made at the same time, but in no event shall any claims be paid until the Effective Date has occurred. The Claims Administrator will use reasonable efforts to make the required payments in a timely manner and may request such information from Claimants as is necessary to effectuate payments in accordance with applicable laws and regulations.

3.      **Valid Claims.**  A claim will be determined to be valid when a Claimant has submitted a Claim Form for Recoverable Losses that is in proper form, complete and Reasonably Documented.  To be valid, the initial submission must also be timely (*i.e.*, submitted before the expiration of the Claims Period).  If, however, a timely submitted Claim Form is incomplete or lacks sufficient documentation, the Claimant shall be informed of the deficiencies by the Claims Administrator and shall have a reasonable opportunity to cure any deficiency associated with the Claim or the supporting documentation.

4.      **Recoverable Losses.**

a.      "Recoverable Losses" means and includes: (i) Reasonably Documented, unreimbursed out-of-pocket expenditures incurred by a Class Member during the Recovery Period for reasonable costs incurred in connection with the 2014 and 2015 cyberattacks of OPM's electronic information systems and/or the 2013 and 2014 cyberattacks of Peraton's electronic information systems that are the subject of this Case; or (ii) Reasonably Documented Compensable Time as described in Section V.C.4.c below.

b.      Out-of-pocket expenditures may include, without limitation:

i.      Out-of-pocket costs, expenses, losses or charges incurred during the Recovery Period as a result of identity theft or identity fraud, including unauthorized account openings and falsified tax returns, or other alleged misuse of a Class Member's personal information;

ii.      Out-of-pocket costs, incurred during the Recovery Period, associated with placing or removing a credit freeze on a Class Member's credit file with any credit reporting agency;

iii.      Out-of-pocket credit monitoring costs, credit or identity theft protection costs, or the costs of other products or services designed to identify identity theft or

14

remediate the effects of the data breach in this Case that were incurred during the Recovery Period; and

        **iv.**    other miscellaneous expenses incurred during the Recovery Period related to any out-of-pocket loss such as payments for notary or fax service, postage, copying, mileage, or long-distance telephone service.

        **c.**    "Compensable Time" means reasonable time spent in connection with: (1) the purchase of a credit monitoring or credit or identity theft protection product or other product or service designed to identify or remediate the effects of the data breaches at issue in this Case; (2) accessing, freezing or unfreezing a credit report with a credit reporting agency; or (3) an identity theft incident or responding to such an incident.  Such time may be claimed as Recoverable Loss; provided, however, that reasonable time spent related to mitigating the breach is only compensable if the time spent resulted in quantifiable pecuniary damage during the Recovery Period, such as taking take time off from hourly work or using paid time off from salaried work. Claims for compensable time must be Reasonably Documented and will be paid at a rate of $25.00 per hour, except that if the total value of a claim that includes Compensable Time exceeds $700, the Class Member must submit documentation demonstrating a specific hourly rate.

        **5.**    **Reasonably Attributable to the Cyber Breaches**.  In assessing what qualifies as a "Reasonably Attributable" to the cyber breaches, the Claims Administrator will consider:

        **a.**    the timing of the loss, including whether credit freezes or unfreezes, credit monitoring costs, credit or identity theft protection costs, or other products or services designed to identify identity theft or remediate the effects of the data breach were incurred before or after the cyber breaches became public;

**b.**     whether the loss involved misuse of the type of personal information accessed in the cyber breaches, including, without limitation, the Claimant's name, Social Security number, date and place of birth, and current and former addresses;

**c.**     the Class Member's explanation of how the loss may have resulted from the cyber breaches;

**d.**     the nature of the loss and whether the Class Member acted reasonably under the circumstances; and

**e.**     any other factor that the Claims Administrator finds relevant.

6.     **Self-Protection Costs.** Notwithstanding the preceding provision, out-of-pocket losses associated with placing or removing credit freezes on credit files or purchasing credit monitoring services will be deemed Reasonably Attributable to the cyber breaches if:

**a.**     they were incurred on or after April 22, 2015, through January 1, 2016; and

**b.**     the Class Member attests that they incurred such out-of-pocket losses in response to the cyber breaches and not as a result of any other compromise of their personal information.

7.     **Valid Claims; Amount Payable.** Claims determined by the Claims Administrator to be Reasonably Documented, and that establish Recoverable Losses Reasonably Attributable to the cyber breaches, as described in Sections II.B.19 and V.C.4-6, above, are "Valid Claims." Each Valid Claim will be valued and paid at $700, or in the actual amount of the documented pecuniary or economic loss for such Valid Claim, if it is larger than $700, but in no event will any Valid Claim paid exceed $10,000. Valid Claims will be paid out of the Peraton Contribution until it is exhausted, and then out of the OPM Contribution. Each Claim Form submitted by a Class Member must include all claims of Recoverable Losses by that Class Member.

If more than one of a Class Member's multiple claims is determined to be valid, but the aggregate amount of such claims is less than $700, the claims will be treated as one Valid Claim.

8.      **Possible Reduction of Amount Payable for Each Valid Claim.**  If the balance in the Settlement Account is not sufficient, at the time of payment, to fully pay each Valid Claim, then each Valid Claim will be reduced *pro rata* before being paid.

9.      **Disposition of Unclaimed Funds.**  If any of the Settlement Claims Amount remains in the Settlement Account after the payment of all Valid Claims, and the Court finds that the Notice Plan has been implemented in accordance with the Preliminary Approval Order and that Class Members have had an opportunity to submit claims and participate in distributions of the Settlement Claims Amount under this Agreement, any portion of the Settlement Claims Amount remaining will be returned to the United States Treasury.  Subject to Court approval, the return of any remaining Settlement Claims Amount will occur either thirty (30) days after the Claims Administrator has resolved any Disputed Claims, as described below in Section V.D, or, if there are no Disputed Claims, thirty (30) days after the Payment Date described above in Section V.C.2, whichever is earlier.  No portion of the Peraton Contribution will revert to Peraton.

D.      **Disputed Claims.**  The determination of the validity of Claims and the proper amount of the payment to a Claimant for a Recoverable Loss is the sole responsibility of the Claims Administrator.  No Party to this Settlement Agreement will be deemed in default of its obligations due to a dispute between a Claimant and the Claims Administrator, including a dispute over the amount of a payment or the return of a payment as a result of the death or unavailability of a Class Member.  If a Class Member believes that a determination made by the Claims Administrator requires correction, the Class Member may seek correction pursuant to the following process:

1.      A Claimant who objects to the Claims Administrator's determination of his or her claim must so notify the Claims Administrator within thirty (30) days after the date that the

Claims Administrator mailed or emailed the determination to the Claimant.  The Claimant must provide a written and signed statement setting forth the basis for his or her disputed claim.  Any disputed claim that is not postmarked or emailed within that thirty (30) day period will be waived.

        **2.**      Upon the timely submission of a disputed claim, the Claims Administrator, and the objecting Claimant, will have thirty (30) days to attempt to resolve the disputed claim by agreement.  At the end of this thirty (30) day period, the Claims Administrator will provide the Claimant with its written notice of its decision regarding the disputed claim.  The decision of the Claims Administrator will be binding and not subject to further review or appeal.

        **3.**      No person will have any claim against the Parties or their counsel or the Claims Administrator, or any other person designated by Class Counsel, based on conduct or communications substantially in accordance with this Settlement Agreement or further order(s) of the Court.

    **E.**      **Report on Claims.**  At the conclusion of the claims procedure, and from time to time as requested by Class Counsel or Defendants, the Claims Administrator will provide to Class Counsel and Defendants a written report that specifies: (1) the number of claims submitted; (2) the number of claims determined to be valid; and (3) the total amount of Valid Claims.

## VI.    ATTORNEYS' FEES, COST REIMBURSEMENT, AND INCENTIVE AWARDS.

    **A.**      **Fees, Costs, and Expenses.** At a time set by the Court pursuant to Rule 23(h), Fed. R. Civ. P., as set forth in Section IX.A.1.f, Plaintiffs will file a petition for fair and reasonable attorneys' fees and reimbursement of litigation costs and expenses, for approval by the Court. Plaintiffs reserve the right to apply for fees and costs for compensable time and expense incurred after any award made pursuant to Section IX.A.1.f, and Defendants reserve the right to oppose any such application.  OPM agrees to submit to the Judgment Fund, for payment, attorneys' fees, costs, and expenses as awarded by the Court after final judgment, including any appeals, separate from the

Settlement Claims Amount.  Peraton will have no responsibilities, obligations, or liability whatsoever with respect to an award of attorneys' fees, costs, and expenses.

      **B.**     **Incentive Awards.** Class Counsel, on behalf of Named Plaintiffs, may petition the Court for incentive awards from the Peraton Contribution as defined in Section III.B.  Defendants reserve their right to oppose such motion or petition.

      **C.**     **Limitation of Effect.** Any Order or proceedings relating solely to the application for Attorneys' Fees, Cost Reimbursement, and Incentive Awards, any appeal solely from an award of Attorneys' Fees, Cost Reimbursement, or Incentive Awards, and any reversal or modification of such an award will not operate to terminate or cancel this Settlement Agreement and will not affect or delay the Effective Date.

## VII.   TAXABILITY OF SETTLEMENT DISTRIBUTIONS.

      **A.**     **No Tax Advice.**  Plaintiffs, on behalf of the Class and each individual member of the Class, acknowledge and agree that they have not relied upon any advice from Defendants as to any provision of this Agreement, or as to the taxability, whether pursuant to Federal, State or local income tax statutes or regulations or otherwise, of the payments made, action taken, or consideration transferred hereunder.  Compliance with all applicable federal, state and local tax requirements will be the sole responsibility of Claimants who receive monetary relief pursuant to this Settlement Agreement.  The Claims Administrator will be responsible for complying with all applicable tax requirements concerning its management or oversight of the Settlement Account.

      **B.**     **Tax and Offset Reporting.**  The Claims Administrator will be responsible for withholding and paying, as applicable, appropriate amounts from awards for purposes of satisfying the employer share of employment taxes, such as FICA or Medicare, as well as reporting to the taxing authorities all Settlement Distributions as appropriate.  The awards will also be subject to Treasury Offset Program reporting, as required by federal law.  Notwithstanding the above, each

recipient of an award will be ultimately responsible for making payment to the appropriate taxing authorities, federal, state, and local, if any, for any additional employee tax liability on distributions, including liability resulting from any underpayment of taxes from the calculations performed by the Claims Administrator, or for seeking refund of any overpayment of taxes.

**VIII.   NO FURTHER OBLIGATION.**  The Parties agree and acknowledge that payment of (A) the Settlement Claims Amount, (B) attorneys' fees, costs, and expenses and incentive awards, to the extent approved by the Court, and (C) Implementation Costs represents the Defendants' maximum financial obligation under this Settlement Agreement.  The Parties further agree and acknowledge that Defendants have no further monetary obligation whatsoever, including, but not limited to, any monetary obligations with respect to the Class Representatives, the Class, Class Counsel, the Claims Administrator, or the Case.

**IX.   APPROVAL AND CLASS NOTICE**

    **A.   Preliminary Approval by the Court.**

        **1.**     By May 4, 2022, Plaintiffs will submit a stipulation of the Parties authorizing amendment of Plaintiffs' Consolidated Amended Complaint, including to conform the class definition to the terms of this Agreement.  Upon the filing of such an amendment, Plaintiffs will submit this Settlement Agreement and its Exhibits to the District Court along with a motion for its preliminary approval ("Motion for Preliminary Approval").  The Motion for Preliminary Approval will specifically request that the Court set a hearing on the motion and will be accompanied by, among other documents, this Settlement Agreement and its incorporated exhibits.  The Motion for Preliminary Approval will specifically request that the Court:

        **a.**     Preliminarily find that it will be likely to certify the Class, for settlement purposes only, pursuant to Rule 23(b)(3), Fed. R. Civ. P.;

**b.**     Appoint Class Counsel and the Class Representatives, as defined in Section II.B.3 and II.B.4 of this Settlement Agreement, respectively, to represent the Class;

**c.**     Grant preliminary approval to the Settlement Agreement and its attachments and authorize issuance of the notice so attached;

**d.**     Approve Class Counsel's and OPM's selection of EPIQ to serve as Claims Administrator, and direct the Class Counsel and OPM to retain EPIQ to perform the duties of the Claims Administrator set forth in and within the cost limitations set out in this Settlement Agreement;

**e.**     Approve the Parties' plan for dissemination of notice of this Settlement Agreement pursuant to Rule 23(e)(1), Fed. R. Civ. P.;

**f.**     Set a date by which Plaintiffs must file their motion for attorneys' fees, reimbursement of litigation costs and expenses, and incentive awards for the Named Plaintiffs under Rule 23(h), Fed. R. Civ. P., which date shall allow sufficient time in advance of the Fairness Hearing for Class Members to object to or comment on that motion;

**g.**     Set a date and procedure by which objections from Class Members must be filed in accordance with this Settlement Agreement;

**h.**     Set a date for the Fairness Hearing that is no sooner than 110 days after Preliminary Approval, at which time the Court will determine whether the Settlement Agreement should be finally approved under Rule 23(e), Fed. R. Civ. P.;

**i.**     Authorize the Defendants to fund the Settlement Account, as provided in Sections III.A-B of this Settlement Agreement, and order that the expenditure of such funds for purposes of this Settlement Agreement is a proper and consistent use of the funds, and that Defendants will not be liable in any other context or proceeding for these funds in the event that the Settlement Agreement becomes void or voidable.

21

B.       **Class Notice.**

1.        OPM will take the measures required to ensure that an amount sufficient to fund the Notice campaign is disbursed to the Claims Administrator as soon as possible after Preliminary Approval.  Notice shall be provided to the Class by the Claims Administrator in accordance with the Notice Plan and as approved by the Court.  The form of the Long Form Notice and Claim Form are attached as Exhibits 1 and 2.  Notice will be sent in accordance with Fed. R. Civ. P. 23(c) in the manner approved by the Court in its Preliminary Approval Order.  The Claims Administrator shall also establish a case-specific Settlement Website (described below) at which copies of the Long Form Notice shall be available for download and through which a potential Class Member may request hard copies of the Notice.

2.        The Claims Administrator shall create and maintain a website that will be activated within seven (7) days after Preliminary Approval (the "Settlement Website").  The Settlement Website will post the Settlement Agreement, the Long Form Notice, the Claim Form, the Preliminary Approval Order as entered, any other court order setting a date and time for the Fairness Hearing, the proposed Final Approval Order and Judgment, and any other information required by the Court or agreed to by the Parties.  The Settlement Website shall have the standalone domain www.opmdatabreach.com (or a substantially similar standalone domain). The Settlement Website will include a portal through which a Class Member can submit a completed Claim Form.

C.       **Class Member Opt-Out Opportunity.**

1.        The deadline for Class Members to opt out of the Class will be thirty-five (35) days before the Fairness Hearing.  In order to properly opt out, Class Members must submit a written request for exclusion to the Claims Administrator and provide information sufficient for the Claims Administrator to determine Class membership. The Claims Administrator will create a process accessible to Class Members for confidential submission of exclusion requests and

information for proof of Class membership.  The request for exclusion must be received no later than thirty-five (35) days before the Fairness Hearing and must include the individual's full name, address, and a statement of the individual's intention to opt-out of the settlement.  The Claims Administrator will compile a list of valid opt-outs for submission to the Court.

       2.       In the event that the threshold of seventy-five (75) or more Class Members elect to properly opt out, Defendants may, in their sole discretion, void this Settlement Agreement, which will have no further effect upon the filing with the Court of a Notice of Withdrawal from Settlement by Defendants' Counsel.  In no event will Defendants file such a Notice of Withdrawal later than seven (7) days before the Fairness Hearing.  If the Defendants file such a Notice of Withdrawal, the Case will proceed as if no settlement had been attempted.  In that event, Defendants retain the right to contest whether this Case should be maintained as a class action.

       **D.**       **CAFA Notice.**  Peraton will serve the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, no later than ten (10) days after this Settlement Agreement is filed with the Court.

       **E.**       **Objections.**

       1.       Any Class Member who wishes to object to the fairness, reasonableness or adequacy of this Settlement Agreement or the settlement contemplated hereby, or the request for attorneys' fees, reimbursement of litigation costs and expenses, and incentive awards for the Named Plaintiffs, must file with the Clerk of the Court and serve all counsel, no later than thirty-five (35) days before the Fairness Hearing, a statement of the objection setting forth the specific reason(s), if any, for the objection, including any legal support that the Class Member wishes to bring to the Court's attention, any evidence that the Class Member wishes to introduce in support of the objection, whether it applies only to the objector, to a specific subset of the Class, or to the entire Class, and whether the Class Member intends to appear at the Fairness Hearing.  Class Members

may so act either on their own or through any attorney hired at their own expense.  For an objection

to be valid, Class membership must be established through submission of a signed statement and by

providing information sufficient for the Claims Administrator to determine Class membership. The

Claims Administrator will create a process accessible to Class Members for confidential submission

of proof of Class membership for purposes of submitting objections.

        **2.**      Any Class Member who files and serves a written objection in accordance

with Section IX.E.1 may appear at the Fairness Hearing to object to any aspect of the fairness,

reasonableness or adequacy of this Settlement Agreement or the settlement contemplated hereby;

provided, however, that a Class Member who does not timely file and serve such a written objection

will not be heard at the Fairness Hearing.

        **3.**      Subject to the Court's discretion, any Class Member (or his or her attorney)

who has not complied with the provisions of this Section IX.E.1, and who also has not opted out of

the Class as provided in Section IX.C.1, will waive and forfeit any and all rights the Class Member

may have to appear separately, or to object or opt out, and will be bound by all the terms of the

Settlement Agreement and by all proceedings, order and judgments in the Case.

      **F.**      **Motion for Final Approval, the Fairness Hearing, and Entry of Judgment.**

        **1.**      On the date set by the Court in the Preliminary Approval Order, Plaintiffs

will file a motion for Final Approval requesting that the Court, among other things, (a) affirm the

certification of the Class for settlement purposes, (b) approve the Settlement Agreement as final,

fair, reasonable, adequate and binding on all Class Members who have not timely and validly opted

out pursuant to Section IX.C.1, (c) approve payment of reasonable attorneys' fees and

reimbursement of litigation costs and expenses for Class Counsel in an amount determined by the

Court pursuant to Section VI.A, (d) approve payment of incentive awards for the Named Plaintiffs

pursuant to Section VI.B, (e) order the Claims Administrator to process and pay all Valid Claims, (g)

order the release of all Named Plaintiffs and Class Members' claims pursuant to Section IV.B, and

(f) enter a final judgment dismissing this action with prejudice pursuant to Rules 41(a)(1) and Rule

23(e), Fed. R. Civ. P.

       **2.**     Any party may respond to any timely filed objections no later than fourteen

(14) days before the scheduled date of the Fairness Hearing.

       **G.**     **Effect of Failure to Grant Final Approval.**  In the event the Court does not enter

Judgment in accordance with this Settlement Agreement, or the Settlement Agreement does not

receive Final Approval as defined herein, the Parties will proceed as follows:

       **1.**     The Case will resume unless the Parties jointly agree to: (a) seek

reconsideration or appellate review of the decision denying entry of Judgment, or (b) attempt to

renegotiate the Settlement Agreement and seek Court approval of a renegotiated settlement.

       **2.**     In the event any reconsideration or appellate review contemplated by Section

IX.G.1 above is denied, the Parties will have no further rights or obligations under this Settlement

Agreement.

       **3.**     If the Settlement Agreement is not approved, the Case will proceed as if no

settlement has been attempted.  In that event, the class certified for purposes of settlement will be

decertified, and Defendants retain the right to contest whether this action should be maintained as a

class action and to contest the merits of the claims being asserted by Plaintiffs in this Case.

**X.**    **NOTICES**

       **A.**     **Notices.**  Copies of all notices, documents or filings required under this Settlement

Agreement will be served by registered U.S. mail and electronic mail on the Parties as follows:

      Daniel C. Girard
      Girard Sharp LLP
      601 California Street, Suite 1400
      San Francisco, CA 94108
      DGirard@girardsharp.com

Elizabeth J. Shapiro
United States Department of Justice
1100 L St., NW
Room 12100
Washington, D.C. 20005
Elizabeth.Shapiro@usdoj.gov

Jason J. Mendro
Gibson, Dunn & Crutcher LLP
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
JMendro@gibsondunn.com

**XI.    AUDIT OF CLAIMS.**  In addition to other measures within the claims process designed to protect against fraud, the Claims Administrator may refer suspicious claims submitted pursuant to this Settlement Agreement to OPM or a third-party contractor of OPM for audit.

**XII.    MISCELLANEOUS**

    **A.    Cooperation Among the Parties; Further Acts.**  The Parties will cooperate fully with each other and use their best efforts to obtain the Court's approval of this Settlement Agreement and all of its terms.  Each of the Parties, upon the request of any other Party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Settlement Agreement.

    **B.    Entire Agreement.**  This Settlement Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and no prior statement, representation, agreement or understanding, oral or written, that is not contained herein, will have any force or effect.

    **C.    Binding Effect.**  This Settlement Agreement is binding upon and will inure to the benefit of the Parties, and as applicable, their successors and permitted assigns.

**D.      No Third-Party Beneficiaries.**  This Settlement Agreement cannot be construed to create rights in, or to grant remedies to or to delegate any duty, obligation or undertaking established herein to any third party as a beneficiary of this Settlement Agreement.

**E.      Arm's Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Settlement Agreement at arm's length.  All terms and conditions of this Settlement Agreement have been relied on by the Parties in entering into this Settlement Agreement.  If any Class Member petitions the Court for a modification of, addition to, or alteration of any material term or condition of this Settlement Agreement, and if the Court on such request or *sua sponte* does modify, add to or alter any of the material terms or conditions of this Settlement Agreement, this Settlement Agreement will become voidable.  In that event a Party may void the Agreement by filing with the Court a Notice of Withdrawal from settlement within five (5) days after receipt of any order or final statement of the Court modifying, adding to or altering any of the material terms or conditions of this Settlement Agreement.

**F.      Headings.**  The headings in this Settlement Agreement are for convenience only and do not limit, expand, modify, or aid in the interpretation or construction of this Settlement Agreement.

**G.      Construction and Choice of Law.**  The determination of the terms and conditions of this Settlement Agreement has been by mutual negotiation and agreement of the Parties.  Each Party participated jointly in the drafting of this Settlement Agreement, and therefore the terms and conditions of this Settlement Agreement are not intended to be, and will not be, construed against any party by virtue of draftsmanship.  The terms and conditions of this Settlement Agreement are governed by the law of the District of Columbia.

**H.      Waivers, etc. in Writing.**  No waiver, modification or amendment of the terms of this Settlement Agreement, whether purportedly made before or after the Court's approval of this

Settlement Agreement, is valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Settlement Agreement will not be deemed a waiver of any of the other provisions of this Settlement Agreement, and such Party, notwithstanding such failure, has the right thereafter to insist upon the specific performance of any and all of the provisions of this Settlement Agreement.

I.      **Severability.**  Should any non-material provision of this Settlement Agreement be found by a court to be invalid or unenforceable, then (1) the validity of the other provisions of this Settlement Agreement will not be affected or impaired, and (2) such provisions will be enforced to the maximum extent possible.

J.      **When Agreement Becomes Effective; Counterparts.**  This Settlement Agreement becomes binding on the Parties upon the Execution Date.  The Parties may execute this Settlement Agreement in counterparts, and execution in counterparts will have the same force and effect as if Plaintiffs and Defendants had signed the same instrument.

K.      **Duty to Defend.**  The Parties to this Settlement Agreement will defend against any challenges to it in any forum.

L.      **Facsimile or Email Signatures.**  Any Party may execute this Settlement Agreement by causing its counsel to sign on the designated signature block below and transmitting that page via facsimile or email for the purpose of executing this Settlement Agreement will be deemed an original signature for purposes of this Settlement Agreement and will be binding upon the Party whose counsel transmits the signature page by facsimile or email.

**M.     Calculation of Time.** For purposes of this Settlement Agreement, the term "days" means calendar days, and whenever a deadline for an event lands on a Saturday, Sunday, or observed federal holiday, the deadline will be extended to the following business day.

Dated: May 5, 2022

AGREED TO ON BEHALF OF
NAMED PLAINTIFFS, CLASS
MEMBERS AND CLASS COUNSEL

Daniel C. Girard
GIRARD SHARP LLP

Dated: May 5, 2022

AGREED TO ON BEHALF OF
DEFENDANT U.S. OFFICE OF
PERSONNEL MANAGEMENT

Elizabeth J. Shapiro
U.S. Department of Justice

Dated:   May 5, 2022

AGREED TO ON BEHALF OF
DEFENDANT PERATON RISK DECISION
INC.

Jason J. Mendro
Gibson, Dunn & Crutcher LLP

29