**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE: U.S. OFFICE OF PERSONNEL MANAGEMENT DATA SECURITY BREACH LITIGATION _____ This Document Relates To: ALL CASES | Misc. Action No. 15-1394 (ABJ) MDL Docket No. 2664 |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

## <u>TABLE OF CONTENTS</u>

INTRODUCTION.................................................................................................................1

BACKGROUND.................................................................................................................2

ARGUMENT.....................................................................................................................3

    I.     The Parties' Agreement on Attorneys' Fees, Costs, and Expenses is Fair and
         Reasonable and Should Be Approved.....................................................................3

    II.    The Government Cannot Support Incentive Awards In This Case...........................6

        A.    Courts that consider the rationale for incentive awards have expressed
              skepticism toward the awards' propriety.............................................................7

        B.    Incentive awards are not necessary to incentivize suit in this Privacy Act case;
              where Congress has already provided appropriate incentives for suit..................8

        C.    Incentive awards are inappropriate based on the facts presented in this case........9

    III.   Even if This Court Determines That Incentive Awards Are Appropriate In Some
         Form, It Should Not Award Them As Requested...................................................13

        A.    Incentive awards of $5,000 per plaintiff is too high ..........................................14

        B.    Incentive awards to non-class members are not reasonable ...............................14

        C.    Incentive awards to class members proceeding under a pseudonym are not
              reasonable.........................................................................................................17

    IV.   The Structure of the Settlement Agreement Avoids Any Potential Conflict That
         Would Implicate Final Approval of the Settlement Agreement..............................18

CONCLUSION................................................................................................................19

## INTRODUCTION

The Parties report that they have reached agreement on Plaintiffs' claims for reasonable attorneys' fees, costs, and expenses that would resolve those claims now, and in the future, except for costs incurred in the event of an appeal. Under the parties' agreement, the Government will pay approximately $6.98 million of attorney fees, and approximately $133,000 for costs and expenses. That amount was determined through application of a fee matrix to determine a reasonable hourly rate, and applies the rate applicable at the time the work was incurred. Courts in this Circuit routinely apply this methodology, and counsel for the Government have reviewed the Plaintiffs' detailed billing records to confirm that the government is only paying for work reasonably incurred. The compromise value is fair and reasonable, and this Court should approve it pursuant to Federal Rule of Civil Procedure 23(h).

The Government cannot agree, however, to the request for incentive awards of $5,000 for each of the thirty-six Named Plaintiffs. The Government has an obligation to preserve the public fisc—particularly given that any incentive awards reduce the payments to class members or the funds that would be returned to the Treasury after all Valid Claims are paid—and, accordingly, it must oppose Plaintiffs' request for such an award.

This Court should not award any incentive awards in this case. While the Government acknowledges that incentive awards are often reflexively awarded, courts that have considered the rationales for such awards have expressed concern that such awards are improper because they represent a bounty that plaintiffs may expect simply for bringing suit, or serve as an incentive that could create a conflict of interest. Moreover, while such awards have sometimes been defended as a way of incentivizing class members to serve as "private attorneys general," in the Privacy Act context such a rationale is unwarranted, where Congress has already provided a high statutory

minimum and a fee-shifting provision to incentivize suits. And while courts have sometimes provided awards to compensate for personal or reputational risk, financial expenses, or significant time spent prosecuting the case, none of those criteria has been demonstrated here.

Even if this Court does deem some incentive awards appropriate, it should not award them as requested, in three respects. First, $5,000 per plaintiff is too high, given the lack of formal discovery and lack of an articulated risk caused by being a class representative. Second, the plaintiffs who are not class members cannot collect in any respect. The legal basis for incentive awards is premised upon a common fund to which all class members have a claim; non-class members, by definition, have no claim to such funds. Finally, the three plaintiffs who are proceeding under a pseudonym should not receive an incentive award; one of the primary rationales for an award is the reputational risk of proceeding publicly, a risk necessarily not present for a Doe plaintiff.

## BACKGROUND

The Settlement Agreement resolving the merits of this case provides that at a time set by the Court, "Plaintiffs will file a petition for fair and reasonable attorneys' fees and reimbursement of litigation costs and expenses, for approval by the Court." Settlement Agreement ¶ VI(A), ECF No. 188-2, at 18. The Government "agrees to submit to the Judgment Fund, for payment, attorneys' fees, costs, and expenses as awarded by the Court after final judgment, including any appeals, separate from the Settlement Claims Amount." *Id.* "Consistent with the Court's recommendation that the parties explore resolution of the attorneys' fee application, Plaintiffs provided the Government with detailed time entries and support for their expense reimbursement requests." Girard Decl. ¶ 64, ECF No. 198. The Parties have reached an agreement to resolve

fees, costs, and expenses.  *See* Agreement, attached hereto.  The Court must approve this agreement pursuant to Federal Rule of Civil Procedure 23(h).

The Settlement Agreement also provides Plaintiffs the procedural right to move the Court to grant them incentive awards, but it makes no substantive representations regarding their entitlement to such an award.  *See* Settlement Agreement ⁋ VI(B), ECF No. 188-2, at 19.  Any such awards will be paid from Peraton's contribution of $3 million, "which will be the first $3,000,000 from which Incentive Awards, if any, and Valid Claims will be paid."  *Id.* ⁋⁋ III(B), VI(B), ECF No. 188-2, at 9, 19.  Defendants explicitly "reserve[d] their right to oppose such motion or petition."  *Id.* ⁋ VI(B), ECF No. 188-2, at 19.

Plaintiffs moved for incentive awards of $5,000 per plaintiff, to be awarded to each of the twenty-seven Class Representatives, plus the additional nine Named Plaintiffs (who are not class members).  *See* ECF No. 197-1, at 43-46.  Lead Counsel justifies these awards by stating:

> All of the Named Plaintiffs made significant contributions to the litigation and settlement and took a risk by standing up to serve the class after the breach of their sensitive information.  Each Plaintiff retained counsel, communicated with Class Counsel over the course of the litigation, searched for and preserved their records, provided information and documents related to the breach, reviewed and approved the pleadings, were kept apprised of case progress and the negotiations, and approved the settlement.  Each Plaintiff also assisted with the mediation efforts by providing detailed information in follow-up interviews with Class Counsel and in written questionaries in response to OPM's information requests.

Girard Dec. ⁋ 6, ECF No. 198, at 24.

## **ARGUMENT**

## I.    **THE PARTIES' AGREEMENT ON ATTORNEYS' FEES, COSTS, AND EXPENSES IS FAIR AND REASONABLE AND SHOULD BE APPROVED.**

Counsel for the Plaintiffs and Counsel for the Government have reached an agreement to resolve Plaintiffs' claims for attorneys' fees, costs, and expenses expended to date or in the future, with the exception of any fees, costs, and expenses incurred in connection with a possible appellate

proceeding.  As reflected in the attached agreement, the parties have agreed upon an award of attorneys' fees of $6,977,347.55 and an award of $133,333.06 for costs and expenses.  Because this compromise amount is "fair and reasonable," as required by the Settlement Agreement and this Circuit's case-law, *see* Settlement Agreement ⸿ VI(A); *Bricklayers & Trowel Trades Int'l Pension Fund v. Masonry Contracting Corp.*, No. 19-cv-02412 (APM) (D.D.C. Jan. 9, 2020), the parties respectfully request that this Court approve this award pursuant to Federal Rule of Civil Procedure 23(h).

Plaintiffs are entitled to "reasonable" attorney fees under the Privacy Act, 5 U.S.C. § 552a(g)(2)(B), and the Settlement Agreement permits them to file a petition for such fees.  The Supreme Court has held that "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious [fee-shifting] case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).  That fee is calculated via the lodestar method, *see id.*, "which is the number of hours reasonably expended multiplied by a reasonable hourly rate," *Murray v. Weinberger*, 741 F.2d 1423, 1427 (D.C. Cir. 1984).  As explained below, the compromise figure reached by the parties is fair and reasonable under these criteria, and also satisfies the Government's obligation to protect the public fisc.

*First*, the compromise figure is based on the application of a fee matrix.  "Courts in this Circuit often consider fee matrices to determine reasonable rates." *Nasreen v. Capitol Petroleum, Group, LLC*, No. 20-cv-1867 (TJK/GMH), 2022 WL 2119672, at *8 (citing *Eley v. Dist. of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015)).  These matrices provide an objective measure of reasonable peer rates in comparable complex litigation, and do so using a methodology routinely applied in this Circuit.

*Second*, the application of historic rates (as opposed to current) billing rates is reasonable under these circumstances.  The D.C. Circuit has cautioned that there are no bright line rules or strictly necessary factors that justify applying contemporary rates.  *See West v. Potter*, 717 F.3d 1030, 1034 (D.C. Cir. 2013).  Nonetheless, "[w]hile 'the D.C. Circuit has sanctioned the application of current prevailing rates—as opposed to the rates in effect when the work was performed—as a means of compensating the party seeking attorney's fees for the delay in receiving payment,' it has only done so in circumstances where the delay in payment is attributable to the government."  *See Vollmann v. Dep't of Justice*, No. 12-cv-0939 (FYP), 2022 WL 1124814, at *7 (D.D.C. Apr. 14, 2022) (quoting *Tridico v. Dist. of Columbia*, 235 F. Supp. 3d 100, 107 (D.D.C. 2017) and collecting cases).  *But see West v. Potter*, No. 05-cv-1339 (BJR), 2014 WL 12619780, at *2 (D.D.C. Mar. 24, 2014) (applying a rate modification to current rates "despite the absence of any dilatory tactics on the part of [defendant] or his counsel."), *aff'd in part, rev'd in part on other grounds*, 843 F.3d 517 (D.C. Cir. 2016).  Here, while this case has taken years to resolve, that delay is not attributable to dilatory conduct on the part of the Government, but to the delays inherent in a successful motion to dismiss, a successful appeal, and the time required to negotiate a complicated agreement, with the intervening pandemic.

*Third*, the Plaintiffs provided detailed time records, and the Government reviewed them to ensure that the time spent was reasonable, that the government was not double billed, and that billing records did not include block entries for multiple tasks.  Counsel for the Government also reviewed the submitted expenses to ensure that they were reasonable.

*Fourth*, this compromise is the product of arms-length negotiation that occurred only after the Court granted preliminary approval to the Settlement Agreement.  There are thus no concerns that the substantive agreement was in any way compromised based on any collateral fee

negotiations. Nor will any fees, costs, or expenses implicate class members' recovery in any way. Instead, they will be paid separately by the Judgment Fund. *See* Settlement Agreement ⁋ VI(A), ECF No. 188-2, at 18

*Finally*, the negotiated award will provide certainty by resolving fees, costs, and expenses—now and in the future, excepting the possibility of an appeal. That will provide certainty and finality to the parties, and conserve judicial resources, while being faithful to the Supreme Court's admonition that a "request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

## II.   THE GOVERNMENT CANNOT SUPPORT INCENTIVE AWARDS IN THIS CASE.

Incentive awards, sometimes termed "service awards" or "case contribution awards," *see* Newberg & Rubenstein on Class Actions § 17:1, are "not uncommon in common-fund-type class actions," *Radosti v. Envision EMI, LLC*, 760 F. Supp. 2d 73, 79 (D.D.C. 2011). Such awards are "used to compensate plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Id.*; *see also* Newberg & Rubenstein on Class Actions § 17:1 ("[Incentive awards] aim to compensate class representatives for their service to the class and simultaneously serve to incentivize them to perform this function."). While not diminishing the role of the plaintiffs in this lawsuit, the Government cannot support incentive awards in this case.[1]

---

[1] The Settlement Agreement provides that any incentive awards shall be paid from Peraton's contribution of $3 million, which shall be the first $3 million "from which Incentive Awards, if any, and Valid Claims will be paid." Settlement Agreement ⁋ III(B), ECF No. 188-2, at 9; *see also id.* ⁋ VI(B), ECF No. 188-2, at 19. The Government has standing to object to these awards because the agreement provides that any excess funds remaining "after the payment of all Valid Claims . . . will be returned to the United States Treasury." *Id.* ⁋ V(C)(9), ECF No. 188-2, at 17. Incentive awards reduce the amount of money that would be returned to the Treasury in the event of a reverter. *See, e.g.*, *Clements v. LSI Title Agency, Inc.*, 779 F.3d 1269, 1273 (11th Cir. 2015) (allegation that party would otherwise have received funds absent challenged action is sufficient for standing).

### A. Courts that consider the rationale for incentive awards have expressed skepticism toward the awards' propriety.

While incentive awards may be frequently awarded, at least with respect to private litigation, the rationale and justification for these awards are often relatively unexplored. Accordingly, "to the extent that incentive awards are common, they are like dandelions on an unmowed lawn—present more by inattention than by design." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013). Those courts that have examined such awards in depth have often expressed skepticism over their propriety.

Some courts articulate the "fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003); *see also Staton v. Boeing Co.*, 327 F.3d 938, 976 (9th Cir. 2003) ("Generally, when a person 'joins in bringing an action as a class action . . . he has disclaimed any right to a preferred position in a settlement.' Were that not the case, there would be considerable danger of individuals bringing cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations.") (quoting *Officers of Justice v. Civil Service Com'n of City & Cnty. of San Francisco*, 688 F.2d 615, 632 (9th Cir. 1982)). Indeed, the Eleventh Circuit has held that incentive awards are *categorically* unavailable, holding that they are akin to a salary and a bounty, and thus precluded by the Supreme Court's decisions in *Trustees v. Greenough*, 105 U.S. 527 (1882) and *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885). *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244, 1255-62 (11th Cir. 2020); *see also id.* at 1260 ("[W]e hold that *Greenough* and *Pettus* prohibit the type of incentive award that the district court approved here— one that compensates a class representative for his time and rewards him for bringing a lawsuit.").

Furthermore, Rule 23(e)(2)(D) requires this court to consider whether "the proposal treats class members equitably relative to each other," an issue that is, at a minimum, implicated by incentive awards that give significant advantages to certain class members over others (or even, as here, to certain *non-class* members over class members). *See e.g.*, *Johnson*, 975 F.3d at 1259 n.9 ("We can't see why paying an incentive award isn't tantamount to giving a 'preferred position' to a class representative 'simply by reason of his status.'") (quoting *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 506 n.5 (5th Cir. 1981)).

The Government recognizes that the D.C. Circuit has affirmed the use of incentive awards, at least under some circumstances. *See Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015) ("incentive awards have often been used to compensate a class representative for incurring expenses or taking on financial risk"). Accordingly, it does not argue that incentive awards are categorically precluded in this case. It does, however, urge the Court to view the request for such awards with skepticism, in light of the concerns articulated above, and to reject them in this case.

**B. Incentive awards are not necessary to incentivize suit in this Privacy Act case; where Congress has already provided appropriate incentives for suit.**

One rationale that is used to justify incentive awards is the plaintiffs' role as a "private attorney general," or to otherwise incentivize suit. *See, e.g.*, Newberg & Rubenstein on Class Actions § 17:3. This rationale is inapplicable here.

First, the Privacy Act itself provides incentives for individuals to bring suit to vindicate their own rights. Individuals are entitled to recover their actual damages, or $1,000, whichever is more, if they prevail in a suit for damages. 5 U.S.C. § 552a(g)(4)(A). They are also entitled to recover "the costs of the action together with reasonable attorney fees." *Id.* § 552a(g)(4)(B). In other words, Congress specifically provided both an incentive to sue (a high statutory minimum even for nominal damages) *and* a fee-and-cost shifting provision to ensure that plaintiffs'

8

reasonable expenses would be recovered.  This is not the type of case where plaintiffs would only recover a small payout with no promise that their costs or expenses would be compensated even if they won, where a private attorney general rationale may apply.  Indeed, the fact that so many plaintiffs brought so many lawsuits suggests that there is no concern that a plaintiff could not be found to bring a lawsuit absent the promise of an incentive award.

Second, the private attorney general rationale is particularly inappropriate here, where Congress specifically defined the cause of action, and the waiver of sovereign immunity, and "made a deliberate selection of enforcement mechanisms."  *Robles v. Brake Masters Sys., Inc,.* No. 10-cv-0135 (JB/WPL), 2011 WL 9717448, at *17 (D.N.M. Jan. 31, 2011).  "The courts must be careful not to second guess Congress' selection through incentive awards, thereby illegitimately transforming the underling substantive law from a compensatory model to a bounty hunter model." *Id.*; *see also id.* ("The Court is also concerned that, because incentive awards have the potential to transform the underlying substantive law through a procedural device, they may lack a sound legal and constitutional footing and violate the Rules Enabling Act."); *Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 772 (E.D. Pa. 2016) ("Moreover, substantial compensation to named plaintiffs above and beyond the amount recovered by class members risks modifying the substantive law under which the class action arises.").

### C.  Incentive awards are inappropriate based on the facts presented in this case.

Courts and commentators have articulated three rationales that may justify a service award: "[1] to compensate class representatives for work done on behalf of the class, [2] to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, [3] to recognize their willingness to act as a private attorney general."  Newberg & Rubenstein on Class Actions § 17:3 (quoting *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)); *see also*

*Cobell v. Jewell*, 29 F. Supp. 3d 17, 25 (D.D.C. 2014), *aff'd in part, vacated in part on other grounds*, 802 F.3d 12 (D.C. Cir. 2015) (same criteria).  None of these rationales supports an award in this case

      **i.**      **Compensation for Time:**  Plaintiffs' primary justification for incentive awards is their claim to compensation for work performed in this case.  But Plaintiffs' description of their work indicates that they have performed essentially the minimum required of any represented client in any litigation: retaining counsel, communicating with counsel, providing and preserving relevant information to their counsel, reviewing pleadings. and approving the settlement.  *See* Girard Dec. ⁋ 65, ECF No. 198, at 24.  All parties have the obligation to preserve relevant evidence. *See, e.g.*, *Fujitsu Ltd v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) ("The obligation to preserve evidence arises when the party has notice that the evidence is relevant to ligation or when a party should have known that the evidence is relevant to future litigation.").  A client must communicate key facts to their counsel so that counsel may sign pleadings on their behalf.  *See, e.g.*, Fed. R. Civ. P. 11(b)(3) ("By presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Attorneys have the ethical obligation to keep their clients informed about the case.  *See* ABA Model Rule of Professional Conduct 1.4(a)(3).  Clients must approve settlement.  *See* ABA Model Rule of Professional Conduct 1.2(a).

      Notably, unlike in many other cases where incentive awards have been granted, Plaintiffs here were *not* subject to "intrusive discovery" (or, indeed, any formal discovery), *see In re Toys*

*R. Us.-Del., Inc.- Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 471 (N.D. Cal. 2014), and were not required to sit for depositions, or to attend court hearings or mediation sessions.  *See Garner v. State Farm Mu.t Auto. Ins. Co.*, No. 08-cv-1365 (EMC), 2010 WL 1687832, at *17 (N.D. Cal. Apr. 22, 2010) (plaintiffs sat for depositions, attended meetings with class counsel and court hearings, and provided responses to written depositions).  Nor have they provided declarations detailing how much time they spent working on the case, or otherwise identified the basis of their contribution.  *See, e.g.*, *Radosti*, 760 F. Supp. 3d at 79-80 (awarding $2,500 to class representatives who spent "over 20 hours" on the litigation).

An award is not appropriate in this case, notwithstanding that some courts have reflexively awarded such payments, *see, e.g.*, *In re APA Assessment Fee Litig.*, 311 F.R.D. 8, 22 (D.D.C. 2015) (approving incentive award of $5,000, though noting that "the named plaintiffs' level of participation does not seem extensive here"), because courts "cannot approve inventive awards based on run-of-the-mill assistance," *Rougvie v. Ascena Retail Grp.*, No. 15-cv-724, 2016 WL 4111320, at *36 (E.D. Pa. July 26, 2016).  Courts have concluded that incentive awards are appropriate "when the class representatives' efforts are greater than the typical class representative's efforts and/or greater than the efforts a class representative would have incurred if his or her action were an individual action and not a class action."  *Robles*, 2011 WL 9717448, at *13 (citing *UCFW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Mining Corp.*, 352 F. App'x 232 (10th Cir. 2009)); *see also Parker v. Time Warner Entertainment Co.*, 631 F. Supp. 2d 242, 279 (E.D.N.Y. 2009) ("The amount of the incentive awards is related to the personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit") (citing *Park v. Thomson Corp.*, 633 F. Supp. 2d 8, 14 (S.D.N.Y. 2009)).

This principle—that incentive awards are appropriate only when the class representative does something more than if they were an individual litigant—recognizes the fact that, "when a person joins in bringing an action as a class action . . . he has disclaimed any right to a preferred position in the settlement." *Staton*, 327 F.3d at 976 (citation omitted).  It also minimizes the possibility that an incentive award be considered a "bounty for bringing suit." *Hadix*, 322 F.3d at 897.  And it does not compensate a plaintiff simply for doing the minimum required in any lawsuit.  Indeed, this is particularly true given the volume of plaintiffs seeking incentive awards—thirty-six separate plaintiffs, none of whom identify any unique actions or contributions on behalf of the class—where that volume, plus the fact that at least twenty-two separate actions were consolidated into this MDL, suggests that incentive awards were not necessary to kick-start this MDL litigation. *See, e.g.*, *In re Synthroid Marketing Litig.*, 264 F.3d 712, 723 (7th Cir. 2001) ("if at least one [plaintiff] would have stepped forward without the lure of an 'incentive award,' there is no need for such additional compensation [in the form of an incentive award]").

In light of the limited and non-differentiated contribution by a large number of plaintiffs, and in accord with the authority that has expressed significant concern over the use of incentive awards as a bounty simply for plaintiffs who bring class actions, the Government respectfully submits that this factor counsels against the award of incentive fees or, at most, is neutral.

**ii.    Compensation for Expenses:** The D.C. Circuit has recognized that "incentive awards often have been used to compensate a class representative for incurring expenses." *Cobell*, 802 F.3d at 25 (citing *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94-cv-5587 (PKL), 2003 WL 21136726, at *2 (S.D.N.Y. May 15, 2003)).  Here, plaintiffs claim no expenses that they have incurred in prosecuting this suit.  This factor thus cuts against the award of incentive fees.

      **iii.**     **Risks:**  Incentive awards may also be appropriate when the class representatives "face the risk of retaliation or other personal risks." *In re Wells Fargo & Co. Shareholder Derivative Litig.*, 445 F. Supp. 3d 508, 534 (N.D. Cal. 2020); *see also Singelton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 691 (D. Md. 2013) (plaintiffs articulated fear that "their decision to litigate against Domino's, their former employer, will adversely affect their future job prospects"); *Little v. WMATA*, 313 F. Supp. 3d 27, 35 (D.D.C. 2018) (identifying risks as a relevant factor).

      Here, while Lead Counsel's declaration includes a conclusory statement that the plaintiffs "took a risk by standing up to serve the class after a breach of their sensitive information," Girard Dec. ⁋ 65, ECF No. 198, at 24, at no point do Plaintiffs suggest any threat of retaliation, future injury (of any sort) or financial risks caused by their participation in this litigation, as opposed to the breaches at issue.  Nor do they indicate any "notoriety and personal difficulty." *Mancini v. Ticketmaster*, No. 07-cv-1459 (DSF), 2013 WL 3995269, at *2 (C.D. Cal. 2013) (quoting *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)).  Nor, for that matter, do they identify any fee-shifting provision that could make *them* liable for the Government's fees if the Government prevailed at trial, such that they might be subject to potential financial risk.  *See, e.g.*, *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 947 n.13 (N.D. Cal. 2013) (suggesting potential plaintiff liability for fees could be a basis for incentive awards).  Absent any indication of any risks engendered by the plaintiffs for bringing this suit, this rationale cuts against incentive awards.

## III.   EVEN IF THIS COURT DETERMINES THAT INCENTIVE AWARDS ARE APPROPRIATE IN SOME FORM, IT SHOULD NOT AWARD THEM AS REQUESTED.

      Even if this Court does determine that the award of some incentive awards are appropriate, the Government urges that it should not award the requested amount, $5,000 per plaintiff, nor should it grant such awards to two categories of plaintiffs: (1) plaintiffs who are *not* class members,

and (2) plaintiffs who are proceeding under a pseudonym, and thus have not opened themselves up to any potential risks related to public exposure.

**A.   Incentive awards of $5,000 per plaintiff is too high.**

As explained above, Plaintiffs do not claim to have spent significant time conducting this litigation, or to have incurred any risks caused by their bringing suit.  *See supra.*  Moreover, the fact that plaintiffs seek award for thirty-six individuals without attempting to differentiate between those plaintiffs suggests that there was little to no unique contribution provided by such plaintiffs that could justify an award of this scale, nor any concern that no plaintiff would volunteer to bring suit.

Under such circumstances, courts often award far less than $5,000 to successful fee applicants.  *See, e.g.*, *Torres v. Pet Extreme*, No. 13-cv-1778  (LJO-SAB), 2015 WL 224752, at *14-15 (E.D. Cal. Jan. 15, 2015) (awarding plaintiffs $2,500 in incentive awards given the "actual time Plaintiff devoted to this action" and collecting comparable cases); *Radosti*, 760 F. Supp. 2d at 79-80 (awarding $2,500 to class representatives who spent "over 20 hours" working on the litigation); *Richardson v. L'Oreal USA, Inc.*, 951 F. Supp. 104, 108 (D.D.C. 2013) (finding $1,000 for the lead plaintiffs in incentive awards reasonable); *Wolph v. Acer Am. Corp.*, No. 09-cv-01314 (JSW), 2013 WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013) (reducing incentive award to $2,000 where named representatives did not demonstrate any great risk to either finances or reputation in bringing the class action).  If the Court decides incentive awards are warranted, it should do the same here.

**B.   Incentive awards to non-class members are not permitted.**

Nine plaintiffs who are *not* class members also seek incentive awards.  *See* ECF No. 197-1, at 45.  There is no authority supporting such an award—and what authority does exist indicates

that they are improper.  The granting of such an award would also raise questions about inequitable treatment of persons subject to the OPM data breaches.

The legal basis for incentive awards is generally viewed to be the premise that class members are entitled to a portion of the common fund created by the settlement; that is why incentive awards always go to class members.  *See, e.g.*, Newberg & Rubenstein on Class Actions § 17:4 ("An incentive award is paid out of the class's common fund and the class representative, as a member of the class, is, by definition, entitled to a portion of the common fund."); *id.* ("the legal entitlement to an award from the fund *is* the representative's membership in the class"); *id.* § 17:6 ("As all of these candidates for incentive awards are class members, each is eligible for some recovery from the common fund.").  But here, nine plaintiffs are not part of the class, and thus have no claim to the fund that is the source and basis for any incentive awards.

Plaintiffs "cite[] no authority for the highly questionable proposition that a non-class member can recover fees and an incentive award under Rule 23."  *Douglas v. W. Union Co.*, No. 14-cv-1741, 2019 WL 10820634, at *1 (N.D. Ill. Apr. 24, 2019); *see also Mancini*, 2013 WL 3995269, at *2 ("the Court is not aware of cases holding that incentive awards may be made to named plaintiffs who are not approved as class representatives, or who have been found not to be appropriate class representatives.")  Plaintiffs rely on three cases. *See* ECF No. 197-1, at 45 (citing authority).  None applies.  *Karraker v. Rent-A-Center*, 492 F.3d 896, 899-90 (7th Cir. 2007) concerned whether the plaintiffs were "prevailing parties and thus entitled to attorney fees under the [Americans With Disabilities Act]"; the named plaintiff received a "fee for being a class representative," but there is no suggestion that non-class members received payment.  *In re Ductile Iron Pipe Fittings ("DIPF") Direct Purchaser Antitrust Litig.*, No. 12-cv-711 (AET)(LHG), 2018 WL 2722458, at *2 (D.N.J. May 10, 2018), involves a largely unreasoned order that does not

indicate whether the "former named plaintiffs" were part of the Settlement Classes).  And in *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1316-17 (S.D. Cal. 2017), the court notes that the awards are "class representative incentive awards" that are paid to "[e]ach Class Representative." None of these cases holds that non-class representatives can receive incentive awards; indeed, none of these cases even clearly awards incentive awards to non-class representatives.

Nor would a ruling that non-class members can receive incentive awards comport with Rule 23.  Rule 23(e)(2)(D) requires that any proposal "treats class member equitably relative to each other."  But a settlement that would potentially divert funds from class members to pay non-class members would not comport with these objectives.[2]  Nor would it be fair to persons who were originally part of the class when this action was filed, but are no longer part of the class when the definition was narrowed following the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021).  Those persons receive nothing, and appropriately so, given their lack of actual injury.  But named plaintiffs with the same lack of injury will receive something— an incentive award.  That is not equitable, and to allow incentive awards under such circumstances will create a risk that plaintiffs will agree to settlement terms, even those that exclude them from the class they were originally proposed to be part of, based on the hope of future incentive awards. *See, e.g.*, *In re Dry Max Pampers Litig.*, 724 F.3d at 722 ("[W]e have expressed a sensible fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain.") (internal citation omitted).

To be clear, the Government does not believe that the interests of non-class members were compromised here, particularly given that no plaintiff was assured of any incentive awards.  But

---

[2] Under the Settlement Agreement, if the sum total of Valid Claims plus Incentive Awards exceeds $63 million, the Valid Claims—but not the Incentive Awards—would be reduced *pro rata*.

because the incentives of non-class members receiving incentive awards are particularly unaligned here, *see id.*, the Government respectfully urges that this Court not sanction this novel and challenging practice

### C. Incentive awards to class members proceeding under a pseudonym are not reasonable.

Three plaintiffs, Jane Doe, Jane Doe II, and John Doe III, continue to proceed in this matter under a pseudonym. *E.g.*, ECF No. 193, at 1. As discussed above, one of the key purposes of incentive awards is to compensate the plaintiffs for the risks of litigation, including "risk[ing] their employment reputation," *Blofstein v. Michael's Family Restaurant, Inc.*, No. 17-cv-5578, 2019 WL 3288048, at *9 (E.D. Pa. July 19, 2019), to "compensate named plaintiffs for their reasonable fear of workplace retaliation," *Chun-Hoon v. McKeee Food Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010), or "the notoriety and personal difficulties encountered by the class representative," *Van Vranken.*, 901 F. Supp. at 299. Critical to all of these harms, however, is that the identity of the class representative be public: he or she cannot be retaliated against, suffer reputational risks, or even suffer notoriety and its associated annoyances if their identify is never known to a third-party. *Cf. TransUnion*, 141 S. Ct. at 2209-10 ("A letter that is not sent does not harm anyone, no matter how insulting the letter is.").

Plaintiffs sought pseudonymous status based on a claimed "substantial risk—including direct threats to their physical safety—if they are identified publicly." ECF No. 159-1, at 4. Even accepting such a perceived threat, proceeding anonymously resolved that risk, and any other perceived risk, based on their identity becoming public. Having sought such protection, they cannot then claim an entitlement to an incentive award based on a purported risk that they themselves previously mitigated.

IV.   **THE STRUCTURE OF THE SETTLEMENT AGREEMENT AVOIDS ANY POTENTIAL CONFLICT THAT WOULD IMPLICATE FINAL APPROVAL OF THE SETTLEMENT AGREEMENT.**

While the Government may disagree with Plaintiffs over their entitlement to incentive awards, that disagreement in no way implicates the overall approval of the Settlement, which the Government unequivocally supports.  This is so because of how the Settlement Agreement is structured.

The Settlement Agreement makes no promises and no guarantees to Plaintiffs regarding incentive awards.  It makes clear that "Class Counsel, on behalf of Named Plaintiffs may petition the Court for incentive awards," and that "Defendants reserve their right to oppose such motion or petition."  Settlement Agreement ¶ VI(B, ECF No. 188-2, at 19.  It further makes clear that "[a]ny Order or proceeding related [to incentive awards] . . . will not operate to terminate or cancel this Settlement Agreement and will not affect or delay the Effective Date."  *Id.* ¶ VI(C), ECF No. 188-2, at 19.  In other words, Plaintiffs have a right to ask—nothing more.  And if the Court says no, in whole or in part, the Settlement is unaffected.

In *Cobell v. Salazar*, 679 F.3d 909 (D.C. Cir. 2012), the D.C. Circuit rejected an argument that "the district court's award of incentive payments to class representatives create[d] an impermissible conflict."  *Id.* at 922.  Instead, "the class settlement agreement provided no guarantee that the class representatives would receive incentive payments; it left that decision and the amount of such payments to the discretion of the district court."  Indeed, the Government's "opposition to the magnitude of the class representatives' proposed incentive payments highlighted the uncertain status of such payments at the time of the settlement."  *Id.*  Accordingly, the Court held that the district court had not erred in finding that the named plaintiff had not "improperly colluded with the [Government] to settle prematurely in order to collect a fee."  So too here.

## CONCLUSION

For the aforementioned reasons, this Court should approve an award of attorneys' fees, costs, and expenses at the agreed-upon amount.  This Court should also deny Plaintiffs' requests for incentive awards.

Dated: September 9, 2022                                Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

/s/ Joseph E. Boson
JOSEPH E. BORSON (Va. Bar No. 85519)
Trial Attorney, U. S. Dept. of Justice
Civil Division, Federal Programs Branch
1100 L St., NW
Washington, D.C. 20005
Tel.    (202) 514-1944
Joseph.Borson@usdoj.gov

*Counsel for Federal Defendant OPM*