**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN RE: U.S. OFFICE OF PERSONNEL
MANAGEMENT DATA SECURITY
BREACH LITIGATION

_____

This Document Relates To:

ALL CASES

Misc. Action No. 15-1394 (ABJ)
MDL Docket No. 2664

**REPLY IN SUPPORT OF PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF**
**CLASS ACTION AND FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

ARGUMENT ....................................................................................................................3

    I.      THE SETTLEMENT SHOULD BE GIVEN FINAL APPROVAL. .......................3

    II.     THE COURT SHOULD GRANT SERVICE AWARDS TO PLAINTIFFS. ..........7

          A.     The Service Awards Are Not a Bounty But Instead Compensation for Valuable Services Provided for Over Seven Years. .....................................8

          B.     The Service Awards Do Not Compromise the Adequacy of Plaintiffs' Representation. ..........................................................................................13

          C.     The Relevant Factors Weigh in Favor of Approving the Awards. ..............15

               1.     Plaintiffs Should Be Compensated for Their Efforts......................15

               2.     The Risks Plaintiffs Faced Further Support a Service Award. ........16

               3.     The Privacy Act Does Not Sufficiently Incentivize Individuals to Bring Suit. ...............................................................................18

          D.     The Requested Awards Are Reasonable and Should Be Granted. ..............20

               1.     $5,000 Is a Reasonable Award. .....................................................20

               2.     All Plaintiffs Should Receive a Service Award. ............................22

CONCLUSION ...............................................................................................................24

# TABLE OF AUTHORITIES

## Cases

*Avila v. Cold Spring Granite Co.*,
  2018 WL 400315 (E.D. Cal. Jan. 12, 2018) ............................................................... 11

*Azar v. Blount Int'l, Inc.*,
  2019 WL 7372658 (D. Or. Dec. 31, 2019) ................................................................. 20

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) ........................................................................ 9, 12

*Berry v. Schulman*,
  807 F.3d 600 (4th Cir. 2015) ............................................................................... 13

*Braud v. Transp. Serv. Co. of Ill.*,
  2010 WL 3283398 (E.D. La. Aug. 17, 2010) .............................................................. 12

*Brinkmann v. ABM Onsite Servs. – W., Inc.*,
  2021 WL 3932040 (D. Or. Sept. 2, 2021) ................................................................. 22

*Cabiness v. Educ. Fin. Sols., LLC*,
  2019 WL 1369929 (N.D. Cal. Mar. 26, 2019) ............................................................ 12

*Caligiuri v. Symantec Corp.*,
  855 F.3d 860 (8th Cir. 2017) ......................................................................... 9, 16, 21

*Campbell v. Facebook Inc.*,
  2017 WL 3581179 (N.D. Cal. Aug. 18, 2017) ............................................................ 23

*Castillo v. Noodles & Co.*,
  2016 WL 7451626 (N.D. Ill. Dec. 23, 2016) .............................................................. 11

*Central Railroad & Banking Co. v. Pettus*,
  113 U.S. 116 (1885) ........................................................................................... 10

*Chakejian v. Equifax Info. Servs., LLC*,
  275 F.R.D. 201 (E.D. Pa. 2011) ............................................................................. 19

*Chambers v. Whirlpool Corp.*,
  980 F.3d 645 (9th Cir. 2020) ................................................................................ 23

*Cobell v. Jewell*,
  802 F.3d 12 (D.C. Cir. 2015) .............................................................................. 7, 9

* *Cobell v. Salazar*,
  679 F.3d 922 (D.C. Cir. 2012) ........................................................................... 8, 13

*Cook v. Niedert,*
    142 F.3d 1004 (7th Cir. 1998) ................................................................ 10, 16

*Decohen v. Abbasi, LLC,*
    299 F.R.D. 469 (D. Md. 2014) ...................................................................... 22

*Deem v. Ames True Temper, Inc.,*
    2013 WL 2285972 (S.D.W. Va. May 23, 2013) ............................................. 21

*Douglas v. W. Union Co.,*
    328 F.R.D. 204 (N.D. Ill. 2018) .................................................................... 19

*Enterprise Energy Corp. v. Columbia Gas Transmission,*
    137 F.R.D. 240 (S.D. Ohio 1991) ................................................................... 9

*Espenscheid v. DirectSat USA, LLC,*
    688 F.3d 872 (7th Cir. 2012) ......................................................................... 9

*Esslinger v. HSBC Bank Nev., N.A.,*
    2012 WL 5866074 (E.D. Pa. Nov. 20, 2012) ................................................. 11

*FAA v. Cooper,*
    566 U.S. 284 (2012) ...................................................................................... 4, 6

*Gaudin v. Saxon Mortg. Servs., Inc.,*
    2015 WL 7454183 (N.D. Cal. Nov. 23, 2015) ............................................... 21

*Gehrich v. Chase Bank USA, N.A.,*
    316 F.R.D. 215 (N.D. Ill. 2016) .................................................................... 12

*Grays Harbor Adventist Christian Sch. v. Carrier Corp.,*
    2008 WL 1901988 (W.D. Wash. Apr. 24, 2008) ............................................ 16

*Grice v. Pepsi Bevs. Co.,*
    363 F. Supp. 3d 401 (S.D.N.Y. 2019) ........................................................... 19

*Hadix v. Johnson,*
    322 F.3d 895 (6th Cir. 2003) .......................................................................... 8

*Hashw v. Dep't Stores Nat'l Bank,*
    182 F. Supp. 3d 935 (D. Minn. 2016) ...................................................... 11, 18

*Hopson v. Hanesbrands Inc.,*
    2009 WL 928133 (N.D. Cal. Apr. 3, 2009) ................................................ 7, 12

*Hyland v. Navient Corp.,*
    2022 WL 4088061 (2d Cir. Sept. 7, 2022) .................................................... 10

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.,*
    792 F. Supp. 2d 1028 (N.D. Ill. 2011) .......................................................... 12

iii

*In re Cap. One Tel. Consumer Prot. Act Litig.*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015) ................................................................ 19

*In re Domestic Airline Travel Antitrust Litig.*,
    378 F. Supp. 3d 10 (D.D.C. 2019) .................................................................... 3

*In re Dry Max Pampers Litigation*,
    724 F.3d 713 (6th Cir. 2013) ........................................................................... 14

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
    130 F.R.D. 366 (S.D. Ohio 1990) .................................................................... 19

*In re Facebook Biometric Info. Priv. Litig.*,
    2022 WL 822923 (9th Cir. Mar. 17, 2022) ...................................................... 21

*In re Fed. Nat'l Mortg. Ass'n Sec., Deriv., & "ERISA" Litig.*,
    4 F. Supp. 3d 94 (D.D.C. 2013) ....................................................................... 4

*In re Gen. Motors LLC Ignition Switch Litig.*,
    339 F. Supp. 3d 262 (S.D.N.Y. 2018) .............................................................. 5

*In re Linkedin User Priv. Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015) ..................................................................... 12

*In re Lithium Ion Batteries Antitrust Litig.*,
    853 F. App'x 56 (9th Cir. 2021) ....................................................................... 15

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    2003 WL 22037741 (D.D.C. June 16, 2003) .................................................... 15

*In re MetLife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ............................................................. 20

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ........................................................................... 15

*In re Polyurethane Foam Antitrust Litig.*,
    168 F. Supp. 3d 985 (N.D. Ohio 2016) ....................................................... 15, 22

*In re Remeron End-Payor Antitrust Litig.*,
    2005 WL 2230314 (D.N.J. Sept. 13, 2005) ..................................................... 22

*In re Toys R Us-Delaware, Inc. – Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
    295 F.R.D. 438 (C.D. Cal. 2014) ..................................................................... 16

*In re U.S. Bancorp Litig.*,
    291 F.3d 1035 (8th Cir. 2002) ......................................................................... 10

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
    928 F.3d 42 (D.C. Cir. 2019) ....................................................................... 5, 17

*In re Vitamins Antitrust Litig.*,
2000 WL 1737867 (D.D.C. Mar. 31, 2000) ............................................................. 4

*In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. &
Prod. Liab. Litig.*,
952 F.3d 471 (4th Cir. 2020) ................................................................................ 20

*Johnson v. NPAS Solutions*, LLC,
975 F.3d 1244 (11th Cir. 2020) ........................................................................... 10

*Karraker v. Rent-A-Ctr., Inc.*,
492 F.3d 896 (7th Cir. 2007) ............................................................................... 23

*Keegan v. Am. Honda Motor Co, Inc.*,
2014 WL 12551213 (C.D. Cal. Jan. 21, 2014) ...................................................... 4

*Keepseagle v. Perdue*,
856 F.3d 1039 (D.C. Cir. 2017) ......................................................................... 7, 9

*Kifafi v. Hilton Hotels Ret. Plan*,
999 F. Supp. 2d 88 (D.D.C. 2013) ...................................................................... 15

*Kinard v. E. Capitol Fam. Rental, L.P.*,
331 F.R.D. 206 (D.D.C. 2019) ............................................................................ 11

*Kolinek v. Walgreen Co.*,
311 F.R.D. 483 (N.D. Ill. 2015) .......................................................................... 12

*Koszyk v. Country Fin. a/k/a CC Servs., Inc.*,
2016 WL 5109196 (N.D. Ill. Sept. 16, 2016) ....................................................... 9

*Lauture v. A.C. Moore Arts & Crafts*, Inc.,
2017 WL 6460244 (D. Mass. June 8, 2017) .......................................................... 9

*Manuel v. Wells Fargo Bank, N.A.*,
2016 WL 1070819 (E.D. Va. Mar. 15, 2016) ...................................................... 21

*Marshall v. Northrop Grumman Corp.*,
2020 WL 5668935 (C.D. Cal. Sept. 18, 2020) ..................................................... 17

*McMorrow v. Mondelez Int'l, Inc.*,
2022 WL 1056098 (S.D. Cal. Apr. 8, 2022) ........................................................ 21

*Melito v. Experian Mktg. Sols., Inc.*,
923 F.3d 85 (2d Cir. 2019) ................................................................................. 10

*Morlan v. Universal Guar. Life Ins*.,
2003 WL 22764868 (S.D. Ill. Nov. 20, 2003) ..................................................... 21

*O'Bryant v. ABC Phones of N.C., Inc.*,
　2021 WL 5016872 (W.D. Tenn. Oct. 28, 2021) ....................................................... 21

*Osher v. SCA Realty I, Inc.*,
　945 F. Supp. 298 (D.D.C. 1996) ............................................................................... 3

*Pelletz v. Weyerhaeuser Co.*,
　592 F. Supp. 2d 1322 (W.D. Wash. 2009) ............................................................... 21

*Pena v. Taylor Farms Pac., Inc.*,
　2021 WL 916257 (E.D. Cal. Mar. 10, 2021) ............................................................ 11

*Perry v. FleetBoston Fin. Corp.*,
　229 F.R.D. 105 (E.D. Pa. 2005) ................................................................ 16, 17, 19

*Pike v. Cnty. of San Bernardino*,
　2020 WL 1049912 (C.D. Cal. Jan. 27, 2020) .......................................................... 23

*Radcliffe v. Experian Info. Sols. Inc.*,
　715 F.3d 1157 (9th Cir. 2013) ........................................................................... 14, 15

*Radosti v. Envision EMI, LLC*,
　760 F. Supp. 2d 73 (D.D.C. 2011) ........................................................................... 21

*Richardson v. L'Oreal USA, Inc.*,
　951 F. Supp. 2d 104 (D.D.C. 2013) ......................................................................... 20

*Rodriguez v. W. Publ'g Corp.*,
　563 F.3d 948 (9th Cir. 2009) ............................................................................. 14, 18

*Rougvie v. Ascena Retail Grp., Inc.*,
　2016 WL 4111320 (E.D. Pa. July 29, 2016) ............................................................ 10

*Savani v. URS Pro. Sols. LLC*,
　121 F. Supp. 3d 564 (D.S.C. 2015) ......................................................................... 13

*Schuler v. Medicines Co.*,
　2016 WL 3457218 (D.N.J. June 24, 2016) .............................................................. 10

*Scovil v. FedEx Ground Package Sys., Inc.*,
　2014 WL 1057079 (D. Me. Mar. 14, 2014) ............................................................. 16

*Shane Grp. Inc v. Blue Cross Blue Shield of Mich.*,
　833 F. App'x 430 (6th Cir. 2021) ............................................................................ 12

*Singleton v. Domino's Pizza, LLC*,
　976 F. Supp. 2d 665 (D. Md. 2013) ......................................................................... 19

*Skochin v. Genworth Fin., Inc.*,
　2020 WL 6536140 (E.D. Va. Nov. 5, 2020) ............................................................ 12

*Smith v. Toyota Motor Credit Corp.*,
   2014 WL 4953751 (D. Md. Oct. 2, 2014) ........................................................... 22

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016) ....................................................................... 14

*Spicer v. Chi. Bd. Options Exchange, Inc.*,
   844 F. Supp. 1226 (N.D. Ill. 1993) .................................................................... 21

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ............................................................................. 10

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) ................................................................................. 9

*Taylor v. FAA*,
   2019 WL 3767512 (D.D.C. Aug. 9, 2019) ........................................................... 5

*Thomas v. Dun & Bradstreet Credibility Corp.*,
   2017 WL 11633508 (C.D. Cal. Mar. 22, 2017) .................................................. 22

*Torres v. Pet Extreme*,
   2015 WL 224752 (E.D. Cal. Jan. 15, 2015) ....................................................... 22

*Trustees v. Greenough*,
   105 U.S. 527 (1882) ........................................................................................... 10

*Weeks v. Kellogg Co.*,
   2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) .................................................... 16

*Westley v. CCK Pizza Co., LLC*,
   2019 WL 5653403 (E.D. Mich. Oct. 31, 2019) .................................................. 13

*Williams v. Costco Wholesale Corp.*,
   2010 WL 2721452 (S.D. Cal. July 7, 2010) ....................................................... 16

*Wright v. Nationstar Mortgage LLC*,
   2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ....................................................... 7

*Wright v. Stern*,
   553 F. Supp. 2d 337 (S.D.N.Y. 2008) ............................................................... 21

*Yanez v. HL Welding, Inc.*,
   2021 WL 3054986 (S.D. Cal. July 20, 2021) ..................................................... 11

*Yedlowski v. Roka Bioscience, Inc.*,
   2016 WL 6661336 (D.N.J. Nov. 10, 2016) ........................................................ 20

*Zilhaver v. UnitedHealth Grp., Inc.*,
   646 F. Supp. 2d 1075 (D. Minn. 2009) .............................................................. 22

**Rules**

Fed. R. Civ. P. 23 ................................................................................................ 20, 23

Fed. R. Civ. P. 23(a) .................................................................................................. 23

Fed. R. Civ. P. 23(e)(3) ............................................................................................... 4

**Regulations**

12 C.F.R. § 1005.6(b)(3) ............................................................................................. 5

12 C.F.R. § 1026.13(b)(1) ........................................................................................... 5

**Other Authorities**

Consolidated Appropriations Act of 2017,
    Pub. L. 115-31, tit. VI, sec. 633 (May 5, 2017) .......................................... 7

Manual for Complex Litigation, Fourth, § 21.66 .......................................... 4

Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*,
    53 UCLA L. Rev. 1303 (2006) .................................................................... 9

## INTRODUCTION

Plaintiffs respectfully submit this reply in further support of approval of their settlement that provides for substantial payments to individuals who lost money or compensable time because of the OPM data breaches. Since the Court granted preliminary approval, the Class members' response to the settlement has been overwhelmingly positive: out of 22 million potential Class members, there have been 17,632 claims, 221 exclusion requests, and just 14 objections. *See* Declaration of Cameron R. Azari, ¶¶ 49-51 ("Azari Decl."); Third Declaration of Michelle M. LaCount (Dkt. # 202). Several of the objections are procedurally deficient, and none has merit. The settlement before the Court is the product of months of negotiations among experienced attorneys, overseen by two respected judges, and meets Plaintiffs' litigation goals by securing significant recoveries for breach victims with viable claims against the Government. The Objectors offer no alternative.

The settlement is excellent as compared with the potential outcomes of continued litigation. Even if Plaintiffs could have overcome the Government's state secrets and causation defenses, to recover after any verdict, individual Class members would have had to demonstrate their actual damages under the Privacy Act. The settlement avoids the challenges Plaintiffs would have faced in proving liability and causation where the breach was attributed to a foreign state actor, and the minimum payments of $700 represent only a modest discount from the statutory minimum damages and are available under a more lenient standard of proof. The settlement's requirement of a documented loss, including a showing of time off work for claims based on lost time, approximates the proof requirements that would have applied after a trial. Even one eligible loss supports the $700 minimum payment now available to Class members, and the settlement extinguishes only the claims of those who suffered one of the cognizable forms of harm and who therefore can make a claim under the Privacy Act. While Plaintiffs acknowledge Objectors' concern over the loss of their

1

personal information, the Objectors propose no alternative and their arguments ignore the Privacy Act's limitation to actual damages. By contrast, the recoveries and class definition under the settlement correspond to the lines of immunity set by the Supreme Court. All victims of the breach remain eligible for free identity theft protection services, which Congress may further extend. The settlement claim period will remain open until December 23, and any claimant can benefit from the presumption that self-protection costs incurred in the wake of the Government's announcement— through January 1, 2016—qualify for a $700 payment. Thus, all the information before the Court points to the conclusion that the settlement is fair, reasonable, and adequate for this Class.

With respect to attorneys' fees and cost reimbursements, Class Counsel at the Court's suggestion (6/3/22 Hr'g Tr. at 19:11-13) negotiated an agreement with the Government, and Class Counsel join the portion of the Government's brief that addresses attorneys' fees (Dkt. # 201 at 3-6). The Court should also approve the requested service awards for the individual Plaintiffs, whose commitment to the Class was essential to bringing this case to a successful conclusion. Despite acknowledging service awards are routinely granted in class action settlements, the Government would deny these awards to the deserving Plaintiffs who, in a uniquely challenging case, dedicated time and effort to the Class for more than seven years. Whatever may explain the Government's opposition, the awards will be paid out of *Peraton's* contribution, not the Government's. The Government's suggestion that the Plaintiffs didn't do enough is misplaced, particularly when the Government itself demanded detailed questionnaire responses on each Plaintiff's individual circumstances and what support they could muster for their allegations. Each Plaintiff spent many hours on the phone with counsel—courts routinely award $5,000 or more for *less* work. Plaintiffs not only committed their time for many years but risked reputational and other harm by taking on a public controversy for the others whose highly sensitive information was hacked. Nor do the

2

Government's legal arguments divest the Court of its discretion to approve these awards. The Government fails to distinguish the decisions awarding similar service awards in non-common fund cases and to former plaintiffs who were no longer class members. All Plaintiffs here were similarly situated throughout the litigation and negotiations, and respectfully submit that the equitable result is for the Court to grant $5,000 to each Plaintiff out of the settlement consideration.

Therefore, for the reasons stated below and in Plaintiffs' other settlement briefing, the Court should grant these pending motions and bring this matter to a conclusion.

## ARGUMENT

### I.      THE SETTLEMENT SHOULD BE GIVEN FINAL APPROVAL.

As discussed in Plaintiffs' motion for final approval, each of the factors used to evaluate a proposed class action settlement supports the fairness and adequacy of the proposed settlement of this case. (Dkt. # 196-1 at 8-11.) The information now available about how the class responded to the notice of the settlement further supports its approval. *See In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 16, 23 (D.D.C. 2019). "In evaluating the Class' own reaction . . . courts look to the number and vociferousness of the objectors." *Osher v. SCA Realty I, Inc.*, 945 F. Supp. 298, 305 (D.D.C. 1996). Out of the many thousands of Class members—almost 20,000 have now made a claim—only 14 objected. Azari Decl. ¶ 50. Thus "the objectors are but a tiny fraction of the class." *In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d at 23. Especially given the prominence of the case, the very low percentage of objections reflects the care the parties devoted to crafting a fair and reasonable agreement.

Several of the objections can be rejected as procedurally infirm. *See* Prelim. Approval Order ¶ 19 (Dkt. # 193 at 9) ("Any Class Member who does not make their objection in the time and manner provided for herein shall be deemed to have waived any objection . . . ."). One Class member, Gary Rouse, requested that his objection be withdrawn (Dkt. # 202-9); Plaintiffs do not oppose the

3

request.[1] Two purported objectors—Michelle Stolpa-Bradshaw (Dkt. # 202-3) and Robert Wildin (Dkt. # 202-12)—opted out of the Class, which eliminates their standing to object. *In re Vitamins Antitrust Litig.*, No. 99-197 TFH, 2000 WL 1737867, at *5 (D.D.C. Mar. 31, 2000). Other putative Objectors did not comply with the Court's requirement of a signed statement that they experienced one of the forms of loss recognized in the class definition, meaning they too lack standing. *In re Fed. Nat'l Mortg. Ass'n Sec., Deriv., & "ERISA" Litig.*, 4 F. Supp. 3d 94, 101 n.10 (D.D.C. 2013).

The substance of most of these objections was anticipated and already addressed in Plaintiffs' brief in support of preliminary approval. (Dkt. # 188-1.) Requiring that documentation be provided to support a claim of loss is routine, and appropriate here, considering the need to limit recoveries to eligible Privacy Act claimants. *See* Manual for Complex Litigation, Fourth, § 21.66 (class members "must usually file claims forms providing details about their claims and other information needed to administer the settlement."); *Keegan v. Am. Honda Motor Co, Inc.*, No. 10-cv-09508 MMM (AJWx), 2014 WL 12551213, at *15 (C.D. Cal. Jan. 21, 2014). For Privacy Act purposes, the Supreme Court "adopt[ed] an interpretation of 'actual damages' limited to *proven* pecuniary or economic harm." *FAA v. Cooper*, 566 U.S. 284, 299 (2012) (emphasis added). The Government would not agree to make $700 payments from the U.S. Treasury without some proof, and permitting other claims would invite fraud. Thus, objections based on the need to retrieve and submit records should be overruled.[2]

While the settlement allows claims for lost time as well as for out-of-pocket losses, a few

---

[1] Mr. Rouse elected on his own initiative to withdraw his objection after discussing the litigation with Lead Class Counsel. There is no agreement to disclose in connection with Mr. Rouse's decision to withdraw his objection. *See* Fed. R. Civ. P. 23(e)(3).

[2] *See* Kelmenson Obj. (Dkt. # 202-14); Cruse Obj. (Dkt. # 202-4); Chritton Obj. (Dkt. # 202-8). The claim form does not ask people to fill in the PIN they received with the original 2015 offer of credit monitoring, despite Mr. Wildin's assumption. (Dkt. # 202-12.)

objectors contend that more categories of time should be compensable. For instance, Steve Porter argues that "[l]eisure time is just as valuable as work time" (Dkt. # 202-1), and Andrew Gilman Chritton writes, "my personal time is VALUABLE, including my 'free' time since retirement" (Dkt. # 202-8).[3] Lost time with pecuniary value under the Privacy Act, however, is "time lost from work." *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 66 (D.C. Cir. 2019); *see, e.g.*, *Taylor v. FAA*, No. 18-CV-00035 (APM), 2019 WL 3767512, at *2-3, *6 (D.D.C. Aug. 9, 2019) (dismissing Privacy Act claim that asserted compensable harm due to "lost time value" from plaintiff's ability to invest registration fee paid to federal agency in connection with alleged improper collection of his information). In the GM ignition-switch MDL, the court conducted a survey and reported it could find "no . . . case law" "suggesting that a plaintiff may recover for lost *personal* time," concluding instead that courts "have traditionally treated lost time as lost income" and "the vast majority of states limit lost-time damages to lost earnings or income." *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 309, 327 (S.D.N.Y. 2018) (emphasis in original). As for time spent keeping track of accounts and credit, federal regulations presume that all consumers are engaging in these basic self-protection measures. *See* 12 C.F.R. § 1005.6(b)(3) (Regulation E under Dodd-Frank requires that a consumer report a fraudulent transfer of electronic funds within 60 days after receiving the account statement, to avoid liability); 12 C.F.R. § 1026.13(b)(1) (under Regulation Z, a credit card holder must notify the creditor of a billing error within 60 days after transmission of the first statement reflecting the error). Hence the settlement reasonably treats time monitoring personal accounts and credit as non-compensable, except if the claimant can document the time and establish lost earnings or income. Some of the lost-time objections also describe potentially compensable activity, giving these Objectors the option of making a claim even if they

---

[3] *See also* Wildin Obj. (Dkt. # 202-12); Bendle Obj. (Dkt. # 202-5).

did not take time off work—an option Class Counsel have pointed out when contacted by claimants. *E.g.*, Porter Obj. (Dkt. # 202-1) (identifying time devoted to "freezing and unfreezing credit reports" for a fee); Wildin Obj. (Dkt. # 202-12) (noting "time to handle identity theft incidents" which may entail postage, gas, or other costs).

Several Objectors note their fear for themselves and their families and suggest no amount of money could ever be enough to compensate them. Felicia Cruse writes that "because of this breach someone has been provided information to COMPLETELY assume my identity and somehow $700 and extremely ridiculous stipulations in order to even be eligible to receive the $700 is supposed to be fair." (Dkt. # 202-4.) Yet up to $10,000 in actual damages can be claimed (Dkt. # 188-2, Settlement Agreement, § V.C.7), and the $700 minimum is 70% of the statutory damages set by Congress. Also, what Ms. Cruse perceives as "ridiculous stipulations" are subparts of the class definition that objectively describe the three types of scenarios in which a breach victim could have experienced pecuniary harm as needed to maintain a Privacy Act claim under *FAA v. Cooper*, 566 U.S. at 298-99. Christine Markomanolakis writes that "damages could still be unknown and unknown into the future and the data breach is and has been a major cause of stress and concern for everyone in the class, including their families."[4] (Dkt. # 202-6.)[5] Plaintiffs agree—but litigation cannot go on forever, and the stress and concern that Plaintiffs alleged is not cognizable harm that can support a claim against the Government. No objection denies that the settlement is reasonably structured according to the immunity limits defined by the Supreme Court.

Other Objectors argue there should be an extension on the free credit monitoring services set

---

[4] James Deon Pearson challenges the notice, arguing "I certainly have contact information for my father, sister, et. al." (Dkt. # 202-2) but does not suggest how family members of breach victims could be notified in an efficient, workable manner or how their claims could be verified.

[5] *See also* Dellelo Obj. (Dkt. # 200); Bendle Obj. (Dkt. # 202-5); Petty Obj. (Dkt. # 202-13).

to expire in fall 2026.[6] It is Congress, however, rather than OPM, that is responsible for funding and extending that protective program. *See* Consolidated Appropriations Act of 2017, Pub. L. 115-31, tit. VI, sec. 633 (May 5, 2017). For these reasons, the objections are without any merit.

## II.    THE COURT SHOULD GRANT SERVICE AWARDS TO PLAINTIFFS.

Plaintiffs respectfully request that the Court exercise its discretion to approve $5,000 awards to be paid out of Peraton's contribution to the settlement as compensation for their service to the Class during this lengthy litigation. *See* Settlement Agreement ("SA") § III.B, Dkt. # 188-2. The D.C. Circuit has upheld the payment of such awards. *See Keepseagle v. Perdue*, 856 F.3d 1039, 1056 (D.C. Cir. 2017); *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015). The amount requested is reasonable in relation to the typical Class member recovery and consistent with awards courts have approved across the country, including in cases that required less commitment. *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) ("In general, courts have found that $5,000 incentive payments are reasonable."); *Wright v. Nationstar Mortgage LLC*, No. 14 C 10457, 2016 WL 4505169, at *17 (N.D. Ill. Aug. 29, 2016) (noting in case that "settled before the first phases of discovery were complete" that "$5,000 is in line with other cases where there were similar levels of participation by class representatives").

The Government's suggestions that service award payments will "reduce the payments to class members" (Opp. at 1) or "divert funds from class members" (Opp. at 16) are speculative, given the present claims rate. While the Government also raises the specter of a conflict of interest, it acknowledges that the D.C. Circuit has rejected the notion that granting service awards creates an impermissible conflict when, as here, the matter is reserved to the Court's discretion. Opp. at 18

---

[6] Stolpa-Bradshaw Obj. (Dkt. # 202-3); Lipman Obj. (Dkt. # 202-7); Diane Rafalko Obj. (Dkt. # 202-11); Gerald Rafalko Obj. (Dkt. # 202-10).

(citing *Cobell v. Salazar*, 679 F.3d 922 (D.C. Cir. 2012)). While not disputing such awards are routinely granted, the Government asserts that they amount to a bounty Plaintiffs expect for simply bringing suit. But there is no evidence of that here, and in fact each Plaintiff approved the settlement benefiting the Class regardless of any service award payments. Moreover, the Government's opposition ignores the lengthy service Plaintiffs have provided to this Class and the cash benefits for Class members made possible by their work. Each Plaintiff also risked reputational and other harm by coming forward in a case involving a major hack affecting 22 million Americans, and each spent many hours being interviewed, gathering records, filling out questionnaires regarding their relevant facts, and communicating with counsel about case progress, settlement negotiations, and the ultimate settlement of this litigation. As the Government's various challenges to service awards do not stand up to scrutiny, the Court should approve these awards in full.

**A.     The Service Awards Are Not a Bounty But Instead Compensation for Valuable Services Provided for Over Seven Years.**

The Government claims that no service payments should be approved in this case because they amount to a "bounty" for bringing suit. Opp. at 12 (citing, *inter alia*, *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). Yet no Plaintiff's participation in the litigation or approval of the settlement is conditioned on payment of such an award. Plaintiffs sued on behalf of the Class when it was far from certain that there would be any recovery at all given the unprecedented nature of the Data Breaches, including their national security implications and the narrow avenues of obtaining relief against the Government. Plaintiffs have since fulfilled all of their responsibilities to the Class over seven years—far longer than the typical class action—and their efforts were instrumental in achieving a substantial benefit for Class members. Thus, instead of conferring a windfall, $5,000 service awards will compensate these Plaintiffs for their time and commitment and should be approved. *See* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action*

*Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1310 (2006) (finding "little evidence of systematic abuse of incentive awards"); *Enterprise Energy Corp. v. Columbia Gas Transmission*, 137 F.R.D. 240, 251 (S.D. Ohio 1991) (approving service awards totaling $300,000, or 0.56% of a $56.6 million settlement).

As the D.C. Circuit has recognized, service or "incentive awards have often been used to compensate a class representative[.]" *Keepseagle*, 856 F.3d at 1056 (quoting *Cobell*, 802 F.3d at 25). Service awards "serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, the public nature of a collective action filing, and any other burdens they sustain." *Lauture v. A.C. Moore Arts & Crafts*, Inc., No. 17-CV-10219-JGD, 2017 WL 6460244, at *2 (D. Mass. June 8, 2017); *see Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 CIV. 3571, 2016 WL 5109196, at *2 (N.D. Ill. Sept. 16, 2016) (same); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 483 (S.D.N.Y. 2013) ("It is important to compensate plaintiffs for the time they spend and the risks they take."). Service awards help "promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits." *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017) (citation omitted); *see also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011) (service awards compensate plaintiffs for their service to the class, the risks taken by serving, and "the public service of contributing to the enforcement of mandatory laws") (citation omitted). A service award also compensates for the risk that a plaintiff will be ordered to pay the defendant in the event the suit is found to be frivolous. *See Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876 (7th Cir. 2012).[7]

---

[7] The Eleventh Circuit's holding that service awards are categorically precluded rests on an interpretation of two Supreme Court decisions from the 1880s. *See Johnson v. NPAS Solutions*,

Recognizing Plaintiffs' efforts in this case is consistent with the compensatory rationale of service awards. The Government's contention that service awards are a "bounty" for filing suit is inconsistent with its opposition on the grounds that such awards "were not necessary to kick-start" this MDL. Opp. at 12. Although the Government maintains it is not "diminishing the role of the plaintiffs in this lawsuit" (Opp. at 6), it also asserts that Plaintiffs "performed essentially the minimum required" of any plaintiff in a class action (*id.* at 10). On the contrary, Plaintiffs fulfilled all of their obligations as class representatives over the entire course of this seven-year case. *Cf., e.g.*, *Rougvie v. Ascena Retail Grp., Inc.*, No. CV 15-724, 2016 WL 4111320, at *6 (E.D. Pa. July 29, 2016) (in case cited by the Government, the court declined to approve service awards because the plaintiffs "were involved in the case for a limited time of several months, but not years" and the requested awards were hundreds of times the size of the recovery for individual class members).

The duties Plaintiffs performed here "are the types of activities courts have found to support reimbursement to class representatives." *Schuler v. Medicines Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218, at *11 (D.N.J. June 24, 2016) ("Lead Plaintiff reviewed filings, gathered transaction records, conferred with Lead Counsel about the litigation, and remained apprised about the progress of the case and the Company generally."). In addition to regularly communicating with counsel, each

---

LLC, 975 F.3d 1244, 1255-62 (11th Cir. 2020) (citing *Trustees v. Greenough*, 105 U.S. 527 (1882); *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885)). As noted in footnote 20 of Plaintiffs' opening brief, the Eleventh Circuit is an outlier as the D.C. Circuit and other circuits have upheld the use of service awards. *See, e.g.*, *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002); *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). What's more, the "allowances" at issue in those nineteenth century cases are not similar to the awards requested here. In *Greenough*, the Court rejected the payment of "an allowance of $2,500 a year for ten years of personal service" which was tantamount to a "salary for their time[.]" 105 U.S. at 530-31, 537-38. Those cases were "decided decades before the adoption of Rule 23," which does not preclude awarding service awards to representative plaintiffs. *Hyland v. Navient Corp.*, — F.4th —, 2022 WL 4088061, at *9 (2d Cir. Sept. 7, 2022) (citing *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 96 (2d Cir. 2019)).

Plaintiff searched for and provided documents related to the breach, reviewed and commented on the pleadings, stayed abreast of the status of the case and settlement negotiations, and reviewed and approved the settlement. Girard Decl. ¶ 65, Dkt. # 198. Moreover, each Plaintiff played a key role in assisting the parties in reaching a settlement during the lengthy mediation efforts by providing detailed information in follow-up interviews with Class Counsel and through written answers on questionnaires supplied by OPM—again years after the case began.[8] Plaintiffs should be compensated for these efforts. *See, e.g.*, *Castillo v. Noodles & Co.*, No. 16-CV-03036, 2016 WL 7451626, at *3 (N.D. Ill. Dec. 23, 2016) (approving $10,000 in service awards where plaintiffs "participated in an extensive pre-suit investigation, provided documents crucial to establishing Plaintiffs' claims, and assisted Plaintiffs' counsel in analyzing documents during the informal discovery process."); *Kinard v. E. Capitol Fam. Rental, L.P.*, 331 F.R.D. 206, 217 (D.D.C. 2019) (granting $5,000 service awards to plaintiffs who "participate[d] in a lengthy mediation process"); *Esslinger v. HSBC Bank Nev., N.A.*, No. CIV.A. 10-3213, 2012 WL 5866074, at *16 (E.D. Pa. Nov. 20, 2012) (noting that success in case was attributable in part to the plaintiffs "spending significant time searching" their records); *Avila v. Cold Spring Granite Co.*, No. 1:16-CV-001533-AWI-SKO, 2018 WL 400315, at *13 (E.D. Cal. Jan. 12, 2018) (approving $5,000 for gathering documents and information and discussing case with counsel).

---

[8] "[A]ttempting to differentiate" between Plaintiffs would be artificial because all performed these same critical tasks. Opp. at 14. The Government also faults Plaintiffs for not providing detailed declarations (Opp. at 11), but a precise accounting of the number of hours each Plaintiff spent is unnecessary when their efforts are reflected in the record and the results of the case. *See Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 952 (D. Minn. 2016) (approving $15,000 incentive award "even though [the plaintiff] was not deposed and there has been no specific accounting in the record . . . of the time he devoted to this case."); *Pena v. Taylor Farms Pac., Inc.*, No. 2:13-CV-01282-KJM-AC, 2021 WL 916257, at *6 (E.D. Cal. Mar. 10, 2021) ("[A]lthough the named plaintiffs have not submitted declarations describing their efforts in this litigation, the court is familiar with the record and is persuaded their efforts were substantial."); *Yanez v. HL Welding, Inc.*, No. 20CV1789-MDD, 2021 WL 3054986, at *7 (S.D. Cal. July 20, 2021) (similar).

The Government's effort to downplay Plaintiffs' contributions is unconvincing. Opp. at 10-11. Formal discovery is not required for a plaintiff to receive a service award. *See, e.g.*, *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1041 (N.D. Ill. 2011) (granting $5,000 in awards even though "the parties undertook no formal discovery"); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 239 (N.D. Ill. 2016) (noting the case "did not proceed past the earliest phases of formal discovery before it settled."); *Beckman*, 293 F.R.D. at 483 (awarding $7,500 after informal discovery); *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 592 (N.D. Cal. 2015) (granting $5,000 service award to a plaintiff who was never served with discovery). While sitting for a deposition might justify a larger award, *see, e.g.*, *Skochin v. Genworth Fin., Inc.*, No. 3:19-CV-49, 2020 WL 6536140, at *11 (E.D. Va. Nov. 5, 2020) ($25,000 service award), service awards of $5,000 are typical for plaintiffs who were not deposed. *See, e.g.*, *Hopson*, 2009 WL 928133, at *10 (awarding $5,000 where plaintiff provided documents, communicated with counsel, and provided information); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015) (similar); *Cabiness v. Educ. Fin. Sols., LLC*, No. 16-CV-01109-JST, 2019 WL 1369929, at *8 (N.D. Cal. Mar. 26, 2019) (similar). And while ultimately unnecessary, Plaintiffs' willingness "to submit to depositions on behalf of the class" also supports granting these awards. *Braud v. Transp. Serv. Co. of Ill.*, No. CIV.A. 05-1898, 2010 WL 3283398, at *14 (E.D. La. Aug. 17, 2010).

In light of Plaintiffs' contributions and seven-year commitment to the Class, the service awards will provide fair compensation for their work as representatives. *See Shane Grp. Inc v. Blue Cross Blue Shield of Mich.*, 833 F. App'x 430, 431 (6th Cir. 2021) (rejecting argument that service awards "amount to a bounty" because the "payments correlate to the substantial amount of time that the named plaintiffs actually spent producing documents and otherwise advancing the litigation of the case."); *Westley v. CCK Pizza Co., LLC*, No. 18-13627, 2019 WL 5653403, at *3 (E.D. Mich.

Oct. 31, 2019) (noting "bounty" concern and granting $5,000 service award for working with counsel and ensuring the settlement was fair); *see also Savani v. URS Pro. Sols. LLC*, 121 F. Supp. 3d 564, 577 (D.S.C. 2015) (concluding that "without class representatives, the entire class would receive nothing" and approving $15,000 service award) (citation omitted).

**B.     The Service Awards Do Not Compromise the Adequacy of Plaintiffs' Representation.**

The Government points out that some courts have expressed concern that a service award may cause plaintiffs to compromise the interests of the class for their own personal gain. Mot. at 7-8. But in *Cobell*, the D.C. Circuit rejected the argument that service awards create an "impermissible conflict" where the settlement does not guarantee any payments to the class representatives. 679 F.3d at 922-23. The Government claims that courts that have examined service awards "in depth have often expressed skepticism over their propriety" (Opp. at 7) but ignores that this case presents none of the potential signs of a conflict derived from service awards: (1) "when a settlement gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members"; (2) "when incentive agreements are entered into at the onset of litigation" or "conditioned on class representative support for a settlement"; or (3) when the size of the award "may raise concerns about whether named plaintiffs might 'compromise the interest of the class for personal gain[.]'" *Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015) (citations omitted). The record here shows the contrary: the Plaintiffs put the Class's interest *ahead* of their own, by agreeing to proceed with a settlement that did not guarantee them a service award.

First, the Settlement provides far more than "perfunctory relief" to the Class. In the case the Government cites, *In re Dry Max Pampers Litigation*, the Sixth Circuit took issue with the fact that "[t]he named plaintiffs (i.e., the class representatives) . . . receive an award of $1000 per child in return; the unnamed members are barred from exercising those same rights and receive nothing but

illusory injunctive relief." 724 F.3d 713, 722 (6th Cir. 2013). In contrast, the settlement here provides for substantial recoveries and Class members who have experienced the most harm as a result of the Data Breaches will receive the greatest compensation under the Settlement. The awards sought are thus proportional both to the Plaintiffs' contributions and to the Class members' recoveries.

Second, no Plaintiff made an incentive agreement "as part of the initial retention of counsel in this case" that "t[ied] their compensation—in advance—to a sliding scale based on the amount recovered[.]" *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 959 (9th Cir. 2009). The incentive agreement with counsel in *Rodriguez* meant that "once the threshold cash settlement was met, the agreements created a disincentive to go to trial; going to trial would put their $75,000 at risk in return for only a marginal individual gain even if the verdict were significantly greater than the settlement." *Id.* But there is no danger that these Plaintiffs had a disincentive to pursue the best possible deal for the Class, because "[t]he Settlement Agreement makes no promises and no guarantees to Plaintiffs regarding incentive awards." Opp. at 18. Neither are the awards conditioned on Plaintiffs' support for the settlement. *Cf. Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013) ("With the prospect of receiving $5,000 incentive awards only if they supported the settlement, Settling Plaintiffs had very different interests than the rest of the class."). Plaintiffs support the Settlement "regardless of whether . . . the Court approves any service awards." Girard Decl. ¶ 32, Dkt. # 198. Therefore, "because the parties agree that the Settlement Agreement shall remain in force regardless of any service awards, the awards here are unlikely to create a conflict of interest between the named plaintiffs and absent class members." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 328 (C.D. Cal. 2016).

Third, the requested service awards are not disproportionate to the Class recovery. *E.g.*, Opp. at 7-8. If approved, the $180,000 in service awards will represent only 0.28% of the $63,000,000

Class members are eligible to receive. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015) (total service awards constituting 0.17% of settlement found not disproportionate); *In re Lithium Ion Batteries Antitrust Litig.*, 853 F. App'x 56, 58 (9th Cir. 2021) ("[T]he service awards of $10,000 for individual named plaintiffs and $25,000 for the two governmental entities were not disproportionate to the $49 million settlement"). As such, "[t]here is no unfair disparity" between what Plaintiffs would receive for their services and what Class members will recover. *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1000 (N.D. Ohio 2016). Other courts in this district have found that requests for similar amounts relative to the total settlement weigh in favor of granting the awards. *See Kifafi v. Hilton Hotels Ret. Plan*, 999 F. Supp. 2d 88, 105 (D.D.C. 2013) ("The requested incentive award amounts to only approximately .035% of the substantial common fund that will benefit the class as a result of this litigation."); *In re Lorazepam & Clorazepate Antitrust Litig.*, No. 99MS276(TFH), 2003 WL 22037741, at *11 (D.D.C. June 16, 2003) (granting service awards amounting "to only about 0.2%" of the fund).

### C.      The Relevant Factors Weigh in Favor of Approving the Awards.

Rather than "reflexively award[ing]" service awards as the Government argues (Opp. at 1), courts "scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives" by applying a comprehensive set of factors. *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). The Government claims that none of these "three rationales" for service awards—compensating plaintiffs for their work, for the risks of bringing and pursuing the action, and for their willingness to serve as private attorneys general—justifies the awards that Plaintiffs request. Opp. at 9. With respect to each rationale, the Government is mistaken.

#### 1.      Plaintiffs Should Be Compensated for Their Efforts.

As to the first factor, the Government's effort to diminish Plaintiffs' contributions should be rejected for the reasons discussed above. Furthermore, the Government's argument ignores that the

key consideration under this factor is "the degree to which the class has benefitted" from Plaintiffs' efforts. *Cook*, 142 F.3d at 1016; *Caligiuri*, 855 F.3d at 867. The Class members will receive substantial benefits as a result of Plaintiffs' dedication to this case, and the duration of the litigation also strongly supports granting the requested awards. "When litigation has been particularly protracted, an incentive award is especially appropriate." *Weeks v. Kellogg Co.*, No. CV 09-08102 MMM RZx, 2013 WL 6531177, at *36 (C.D. Cal. Nov. 23, 2013); *see Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, No. 05-05437 RBL, 2008 WL 1901988, at *6 (W.D. Wash. Apr. 24, 2008) (same). Even the Government's authorities recognize the value of a class plaintiff's longtime commitment. *See, e.g.*, *In re Toys R Us-Delaware, Inc. – Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 471 (C.D. Cal. 2014) (granting each plaintiff a $5,000 service award and explaining in part that the case had "been pending for almost seven years.").

The "compensation" factor therefore favors approving the awards. *See Williams v. Costco Wholesale Corp.*, No. 02CV-2003 IEG(AJB), 2010 WL 2721452, at *7 (S.D. Cal. July 7, 2010) ($5,000 award justified in part based on eight-year duration of litigation).

### 2. The Risks Plaintiffs Faced Further Support a Service Award.

The Government disputes whether Plaintiffs faced a risk with this case that would support a service award. Opp. at 13, 17. Contrary to the Government's argument, courts do not construe this "risk" factor as being limited to adverse financial consequences and damage to personal reputation or employment prospects, but instead consider "any negative effects that [the named plaintiffs] have risked." *Scovil v. FedEx Ground Package Sys., Inc.*, No. 1:10-CV-515-DBH, 2014 WL 1057079, at *6 (D. Me. Mar. 14, 2014); *see Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 118 (E.D. Pa. 2005) (relevant factors include "the risk to the plaintiff in commencing suit, both financially and otherwise"). By coming forward early on as lead plaintiffs in a case that drew widespread attention

16

following a massive hack that disclosed highly personal information,[9] Plaintiffs effectively offered themselves up as targets, assuming a risk not only to their reputations but also of being harmed by cyber criminals or foreign adversaries, including for reprisal. *See Marshall v. Northrop Grumman Corp.*, No. 16-CV-6794 AB (JCX), 2020 WL 5668935, at *10 (C.D. Cal. Sept. 18, 2020) (noting that "[t]his case has garnered media attention since filing" which weighed in favor of service award); *cf. Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 118 (E.D. Pa. 2005) (approving $5,000 award in one-year-old case that did not generate significant news coverage).

The Government opposes granting service awards to the three Plaintiffs who moved to proceed under a pseudonym (Jane Doe, Jane Doe II, and John Doe III), arguing they faced no risk. Opp. at 17. But even if that were true, these Plaintiffs performed all the same duties and work for the Class as all the other Plaintiffs. Moreover, while the Government insists there was no chance that these Plaintiffs would suffer any adverse consequences "based on their identity becoming public," the Court could have denied their motion to proceed anonymously—the motion is still pending (Doc. # 149)—as some courts have deemed this practice "aberrant from the perspective of core constitutional and rule of law norms, not to mention the federal rules of civil procedure." *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 81 (D.C. Cir. 2019) (Williams, J., concurring in part and dissenting in part). The Government also unduly minimizes the risks its employees faced in standing up for the interests of the Class, suggesting that the Plaintiffs who sought pseudonymous status did so based on nothing more than a "perceived threat" (Opp. at 17). In fact, the threat was credible in every instance: each of these Plaintiffs reasonably feared that criminals could use information obtained from this lawsuit to gain further information about them from cyber

---

[9] *See, e.g.*, https://www.washingtonpost.com/news/federal-eye/wp/2015/07/09/hack-of-security-clearance-system-affected-21-5-million-people-federal-authorities-say/ (noting that two class actions had already been filed).

criminals, potentially jeopardizing their or their family members' well-being and even compromising national security. Specifically: (1) terrorist groups might use the publication of Jane Doe's name not only to threaten her but also to undermine U.S. national security, given her position; (2) Jane Doe II's husband has received death threats because of his work against international drug cartels and has had death contracts placed on him by cartels; and (3) John Doe II confronted retaliation from drug cartels, domestic terrorists, and other violent criminal organizations after a long career in law enforcement investigating such groups. (Dkt. # 149.) That these concerns were legitimate is reflected in the fact that the FBI informed Jane Doe that the Islamic State of Iraq and al-Sham had acquired her personal information, and Jane Doe II's husband was previously the target of a federal courthouse bombing. Put simply, every Plaintiff in this case incurred risks that well justify a service award.

### 3. The Privacy Act Does Not Sufficiently Incentivize Individuals to Bring Suit.

"[S]ervice awards are sometimes" awarded "to recognize [a plaintiff's] willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 959. According to the Government, a service award is unnecessary to motivate individuals to bring Privacy Act cases because the Act provides for statutory damages of $1,000 as well as for a reasonable attorney's fee to a prevailing party. Opp. at 8-9. But, setting aside that incentive to act as a private attorney general is but one factor, the relatively low amount of statutory damages under the Act may not be sufficient to induce members of the public to vindicate their rights in a case of this nature. *See Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 952 (D. Minn. 2016) (granting $15,000 service award even absent indication the plaintiff "needed to be incentivized to file suit").

The Government stretches to claim there were "so many lawsuits" filed (Opp. at 9), when in reality, out of 22 million current, former, and prospective federal employees affected by the Data Breaches, only a few dozen people were willing to serve as named plaintiffs. That only a few

individuals out of millions of people acted undermines the Government's position that the Act's statutory damages suffice to encourage such cases against the federal government. While the Government argues plaintiffs would not "recover a small payout . . . if they won" (Opp. at 9), courts have held that other laws providing for similar statutory damages are unlikely to adequately motivate aggrieved individuals to bring suit. For example, the Fair Credit Reporting Act also provides for statutory damages of up to $1,000 per willful violation, 15 U.S.C. § 1681n, which courts have found is *not* enough for most individuals to bring suit. *See, e.g.*, *Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 211 (E.D. Pa. 2011) (noting in FCRA case that "the statutory claims of each plaintiff are relatively small, with the result that individuals may lack the incentive to bring suit."); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 678 (D. Md. 2013) (similar). As such, even when statutory damages are available, courts commonly grant service awards. *See, e.g.*, *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 809 (N.D. Ill. 2015) (awarding $5,000 in Telephone Consumer Protection Act case upon finding it "necessary" to induce participation); *Douglas v. W. Union Co.*, 328 F.R.D. 204, 219 (N.D. Ill. 2018) (same); *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 118 (E.D. Pa. 2005) ($5,000 in FCRA case); *Grice v. Pepsi Bevs. Co.*, 363 F. Supp. 3d 401, 412 (S.D.N.Y. 2019) (same).

The Government also argues that the private attorney general rationale does not support the requested awards because Congress created an enforcement mechanism and granting these awards would be to second guess Congress. Opp. at 9. The Government does not explain how an incentive for plaintiffs to bring a case enforcing the Privacy Act would undermine the purpose or substance of the Act. Just the opposite is true. In reality, even though service awards began gaining widespread acceptance in the early 1980s, *see In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373 (S.D. Ohio 1990), Congress has *not* acted to prohibit service awards for class plaintiffs as

part of its class action reform legislation. *See In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 488 (4th Cir. 2020) (discussing Class Action Fairness Act of 2005). Instead, Congress has only precluded service awards for securities fraud plaintiffs, *see Azar v. Blount Int'l, Inc.*, No. 3:16-CV-0483-SI, 2019 WL 7372658, at *13 (D. Or. Dec. 31, 2019), and even in securities cases, courts routinely allow compensation to named plaintiffs for their time dedicated to the lawsuit. *See, e.g.*, *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 369-73 (E.D.N.Y. 2010); *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *23 (D.N.J. Nov. 10, 2016) (awarding "nominal award" of $3,000 to securities plaintiff who "(a) reviewed pleadings; (b) discussed the case with Lead Counsel; (c) approved settlement authority for and made himself available at the Mediation; and (d) independently followed developments"). Congressional inaction in the face of consistent judicial approval of service awards demonstrates that granting such awards fits with both congressional intent and Rule 23. Opp. at 9.

### D.   The Requested Awards Are Reasonable and Should Be Granted.

The Government argues that if the Court is inclined to grant a service award in this case, (1) $5,000 is too high and (2) the nine non-settlement Class member Plaintiffs should not receive an award. These arguments also lack merit.

### 1.   $5,000 Is a Reasonable Award.

As described above, Plaintiffs made themselves available to counsel and fulfilled their obligations to the Class for over seven years. The length of their service alone makes their efforts "greater" than most in class cases. Opp. at 11.[10] Although the Government maintains that $5,000 is

---

[10] The duration of this case far exceeds the durations of cases relied on by the Government. *See, e.g.*, *Richardson v. L'Oreal USA, Inc.*, 951 F. Supp. 2d 104, 105 (D.D.C. 2013) (approving service awards of $1,000 even though the parties moved for preliminary approval almost immediately

too much, this amount is regarded by many courts as a presumptively reasonable service award, even for class plaintiffs who served for a shorter period of time. *See Gaudin v. Saxon Mortg. Servs., Inc.*, 2015 WL 7454183, at *10 (N.D. Cal. Nov. 23, 2015) (collecting cases); *In re Facebook Biometric Info. Priv. Litig.*, No. 21-15553, 2022 WL 822923, at *2 (9th Cir. Mar. 17, 2022) ("Finally, we hold that the $5,000 incentive awards to Named Plaintiffs were not an abuse of discretion. We regularly uphold incentive awards of this size"). Courts frequently have approved greater awards. *See Caligiuri*, 855 F.3d at 867 ("Caligiuri argues that the district court abused its discretion in awarding service awards of $10,000 to each of the named plaintiffs because the awards are excessive and unfair to the class. To the contrary, courts in this circuit regularly grant service awards of $10,000 or greater."); *see, e.g.*, *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) (awarding $50,000 for 10-year case); *O'Bryant v. ABC Phones of N.C., Inc.*, No. 19-CV-02378-SHM-TMP, 2021 WL 5016872, at *7 (W.D. Tenn. Oct. 28, 2021) ($10,000); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1329 (W.D. Wash. 2009) ($7,500); *McMorrow v. Mondelez Int'l, Inc.*, No. 17-CV-02327-BAS-JLB, 2022 WL 1056098, at *9 (S.D. Cal. Apr. 8, 2022) ($7,500); *Deem v. Ames True Temper, Inc.*, No. 6:10-CV-01339, 2013 WL 2285972, at *7 (S.D.W. Va. May 23, 2013) ($7,500); *Manuel v. Wells Fargo Bank, N.A.*, No. 3:14CV238(DJN), 2016 WL 1070819, at *6 (E.D. Va. Mar. 15, 2016) ($10,000); *Morlan v. Universal Guar. Life Ins.*, No. 99-274-GPM, 2003 WL 22764868, at *2 (S.D. Ill. Nov. 20, 2003) (awarding $25,000, $20,000, $20,000 and $5,000, respectively, to named plaintiffs); *Spicer v. Chi. Bd. Options Exchange, Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving service awards ranging from $5,000 to $100,000, and awarding $10,000

_____

after the case was filed); *Radosti v. Envision EMI, LLC*, 760 F. Supp. 2d 73, 79 (D.D.C. 2011) (case settled in less than a year).

to each named plaintiff).[11]

None of the cases that the Government cites suggests that $5,000 is unreasonable for the service Plaintiffs provided. For example, *Torres v. Pet Extreme* "was litigated for a period of less than one year" and the value of the requested $5,000 awards dwarfed that of the $45 gift cards that class members were entitled to receive. No. 1:13-CV-01778-LJO, 2015 WL 224752, at *15 (E.D. Cal. Jan. 15, 2015). In contrast to the nominal recovery in *Torres*, Class members who suffered actual damages in this case are eligible to receive minimum payments of $700 and up to $10,000.

### 2.   All Plaintiffs Should Receive a Service Award.

The Plaintiffs requesting service awards consist of the 27 designated settlement Class representatives and the nine Plaintiffs in the earlier Consolidated Amended Complaint who are not members of the settlement Class. *See* SA § II.B.14, Dkt. # 188-2. The Government argues that even though these nine Plaintiffs made the same contributions as the settlement Class representatives, they should not be compensated for their efforts because they are not part of the settlement Class. Mot. at 14-17. But the purposes and policies of service awards apply no differently to them. They should be compensated for their efforts like all the other Plaintiffs.

The Government contends that the "legal basis" for service awards is that "class members are entitled to a portion of the common fund" and that these nine Plaintiffs have no claim because they are not part of the Class. But as discussed above, service awards compensate representative

---

[11] *See also, e.g.*, *In re Remeron End-Payor Antitrust Litig.*, No. CIV. 02-2007 FSH, 2005 WL 2230314, at *32 (D.N.J. Sept. 13, 2005) ($5,000 to $30,000); *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1000 (N.D. Ohio 2016) ($10,000 to $35,000); *Thomas v. Dun & Bradstreet Credibility Corp.*, No. CV15-03194-BRO-GJSx, 2017 WL 11633508, at *25 (C.D. Cal. Mar. 22, 2017) ($10,000); *Brinkmann v. ABM Onsite Servs. – W., Inc.*, No. 3:17-CV-275-SI, 2021 WL 3932040, at *20 (D. Or. Sept. 2, 2021) ($10,000); *Smith v. Toyota Motor Credit Corp.*, No. CIV. WDQ-12-2029, 2014 WL 4953751, at *2 (D. Md. Oct. 2, 2014) ($5,000); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 483 (D. Md. 2014) ($10,000); *Zilhaver v. UnitedHealth Grp., Inc.*, 646 F. Supp. 2d 1075, 1085 (D. Minn. 2009) ($15,000).

plaintiffs for their *work* on behalf of a class, and courts have therefore approved of service awards even when there is no common fund. *See, e.g.*, *Pike v. Cnty. of San Bernardino*, No. ED-CV-17-1680-JGB-KKx, 2020 WL 1049912, at *4-7 (C.D. Cal. Jan. 27, 2020) (granting service awards in the absence of a common fund); *Campbell v. Facebook Inc.*, No. 13-CV-05996-PJH, 2017 WL 3581179, at *8 (N.D. Cal. Aug. 18, 2017) (approving $5,000 service award when the settlement only provided injunctive and declaratory relief); *Karraker v. Rent-A-Ctr., Inc.*, 492 F.3d 896, 900 (7th Cir. 2007) (plaintiff in fee-shifting case received $5,000 service award).

The Government also argues that compensating these Plaintiffs for their contributions to the Settlement would not comport with Rule 23. Opp. at 16. The Ninth Circuit rejected a similar argument in *Chambers v. Whirlpool Corp.*, 980 F.3d 645 (9th Cir. 2020), where the district court had awarded $4,000 in service awards to several non-class member plaintiffs. Disagreeing with an objector who claimed such payments violate Rule 23, the court held that "[b]ecause the non-class members receiving service awards are not considered class representatives under the settlement, their receipt of payments is irrelevant to the Rule 23(a) typicality and adequacy analyses." *Id*. at 670. As in *Chambers*, the nine Plaintiffs are not currently serving as Class representatives and their receipt of a service award likewise does not implicate Rule 23.

The Government further posits that it would be inequitable to non-Class members if these nine Plaintiffs receive service awards when the Settlement had to be narrowed following the Supreme Court's *TransUnion* decision. Opp. at 16. Again, receiving a service award as compensation for assisting the class in obtaining a substantial recovery is not the same as recovering damages out of the settlement itself. These nine Plaintiffs made significant contributions on behalf of the Class, just like all the other Plaintiffs. If anything, therefore, it would be inequitable to exclude these Plaintiffs from receiving service awards simply because they agreed to the narrow release of

liability, placing the interests of the Class over their own interest by forgoing the ability to make a claim.

The Court should therefore approve the requested service awards for all Plaintiffs.

**CONCLUSION**

Plaintiffs respectfully request that the Court grant final approval of the Settlement and award attorneys' fees in the amount of $6,977,347.55, reimbursement of litigation expenses in the amount of $133,333.06, and service awards of $5,000 to each of the Named Plaintiffs.

DATED: September 23, 2022                    Respectfully submitted,

**GIRARD SHARP LLP**

/s/ *Daniel C. Girard*

Daniel C. Girard
Jordan Elias
Simon S. Grille
601 California Street
Suite 1400
San Francisco, CA 94108
(415) 981-4800
dgirard@girardsharp.com

*Lead Class Counsel*

David H. Thompson
Peter A. Patterson
**COOPER & KIRK, PLLC**
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036

Tina Wolfson
Theodore Maya
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue
Suite 500
Burbank, CA 91505

John Yanchunis
Marcio W. Valladares
Patrick A. Barthle II
**MORGAN & MORGAN COMPLEX**
 **LITIGATION GROUP**
201 North Franklin Street
7th Floor
Tampa, FL 33602

*Plaintiffs' Steering Committee*

Gary E. Mason
**MASON LLP**
5101 Wisconsin Avenue, N.W.
Suite 305
Washington, D.C. 20016

*Liaison Counsel*

Norman E. Siegel
Austin Moore
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road
Suite 200
Kansas City, MO 64112

*Additional Plaintiffs' Counsel*